IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. |
| Petitioner, | ) | |
| | ) | **PETITION TO ENFORCE** |
| v. | ) | **INTERNAL REVENUE SERVICE** |
| | ) | **SUMMONS** |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The United States of America, through undersigned counsel, hereby petitions this Court for an order enforcing an Internal Revenue Service ("IRS") designated summons served on respondent Microsoft Corporation and includible subsidiaries ("Microsoft"), pursuant to 26 U.S.C. § 7602.  In support of this petition, the United States alleges as follows:

1.      This is a proceeding brought pursuant to Sections 7402(b) and 7604(a) of the Internal Revenue Code (Title 26, United States Code) for judicial enforcement of the Internal Revenue Service summons described below.

2.      Microsoft's principal place of business is in Redmond, Washington.

Petition to Enforce
Internal Revenue Service Summons

1    3.    The Court has jurisdiction over this proceeding pursuant to Sections 7402(b) and

2    7604(a) of the Internal Revenue Code and 28 U.S.C. §§ 1340 and 1345.  Venue properly lies

3    within this district.

4    4.    The IRS is conducting an examination of the federal income tax liabilities of

5    Microsoft for the taxable periods ending June 30, 2004, June 30, 2005, and June 30, 2006 (the

6    "2004-2006 Examination").  (Declaration of Senior International Advisor Eli Hoory ("Hoory

7    Decl."), at ¶ 2).

8    5.    Eli Hoory is a Senior International Advisor assigned to advise the 2004-2006

9    Examination on transfer pricing issues under 26 U.S.C § 482.  (Hoory Decl., ¶¶ 1, 4).

10   6.    Douglas M. Odell is a Revenue Agent employed in the Large Business and

11   International Division of the IRS and is authorized to issue administrative summonses pursuant

12   to 26 U.S.C. § 7602, 26 C.F.R. § 301.7602-1, and IRS Delegation Order No. 25-1.  Revenue

13   Agent Odell is an International Examiner assigned to the 2004-2006 Examination.  (Hoory Decl.,

14   ¶¶ 5-7).

15   7.    In furtherance of the 2004-2006 Examination and in accordance with 26 U.S.C.

16   §§ 7602 and 6503(j), on October 30, 2014, Revenue Agent Odell issued an IRS designated

17   summons to Microsoft.  The summons directed Microsoft to appear on November 20, 2014, and

18   to produce for examination books, records, papers, and other data as described in the summons.

19   (Hoory Decl., ¶ 8), Exhibit A.

20   8.    On October 30, 2014, in accordance with 26 U.S.C. § 7603, Revenue Agent Odell

21   served an attested copy of the summons on Microsoft by personally delivering it to corporate

22   officer Brad Smith, Executive Vice President and General Counsel for Microsoft.  (Hoory Decl.,

23   Petition to Enforce                                    **U.S. Department of Justice**
     Internal Revenue Service Summons                      Ben Franklin Station
                                                           P.O. Box 683
                                                           Washington, D.C. 20044-0683

1  ¶ 9), Exhibit A.

2        9.     On November 20, 2014, the date scheduled for compliance with the summons,

3  Microsoft appeared and provided a partial response to the summons but did not fully comply by

4  producing all the books, records, papers, and other data as demanded in the summons.

5  Microsoft's partial response included some documents and a letter dated November 20, 2014.

6  (Hoory Decl., ¶ 10), Exhibit B.

7        10.    The 2004-2006 Examination involves several unagreed international tax issues.

8  The primary remaining areas on which the IRS needs additional information, and the focus of the

9  designated summons, are transfer pricing issues involving intangibles and relating to two

10  regional cost sharing arrangements between Microsoft and its affiliates.  (Hoory Decl., ¶ 19).

11        11.    Transfer pricing generally, and as embodied in 26 U.S.C. § 482, refers to the

12  prices that related parties charge one another for goods and services transferred between them.

13  The most common application of the transfer pricing rules is the determination of the correct

14  price for transfers between related entities.

15        12.    The IRS is authorized to allocate income and deductions among commonly

16  controlled or owned entities as necessary to prevent tax avoidance or to clearly reflect the

17  income of such entities.  26 U.S.C. § 482.  In particular, when rights to intangible property are

18  transferred or licensed between related entities, "the income with respect to such transfer or

19  license shall be commensurate with the income attributable to the intangible."  *Id*.  "[T]he

20  standard to be applied in every case is that of a taxpayer dealing at arm's length with an

21  uncontrolled taxpayer."  Treas. Reg. § 1.482-1(b)(1).  Non-arm's length prices can be used to

22  shift income, and thus the incidence of tax, to tax-favored jurisdictions.

23  Petition to Enforce                                    **U.S. Department of Justice**
      Internal Revenue Service Summons                     Ben Franklin Station
                                                       P.O. Box 683
                                                       Washington, D.C. 20044-0683

13.     Microsoft divides its worldwide business operations into three geographic regions: (1) Europe, Middle-East & Africa ("EMEA"); (2) Asia-Pacific ("APAC"); and (3) the United States, Canada & Latin America ("Americas").  In each region it has entered into a cost sharing arrangement with an affiliate.  (Hoory Decl., ¶ 20).

14.     Through a number of intercompany agreements, Microsoft entered into a cost sharing arrangement with its Puerto Rican affiliate, Microsoft Operations Puerto Rico, LLC ("MOPR"), effective July 1, 2005 (the "Americas cost sharing arrangement").  Under this arrangement, Microsoft divided rights to technology intangibles (e.g., software code) from rights to non-technology intangibles (everything other than technology intangibles, such as brands, trademarks and customer/partner relationships) supporting its Americas retail business.  This division is distinct from Microsoft's other cost sharing arrangements; Microsoft did not divide technology and non-technology intangible rights in its cost sharing arrangements for APAC and EMEA.  Microsoft transferred to MOPR various rights to technology intangibles used in its Americas retail business, while retaining rights to all non-technology intangibles.  (Hoory Decl., ¶ 21).

15.     As a result of the Americas cost sharing arrangement, Microsoft treated MOPR, for transfer pricing purposes, as the economic owner of all technology intangibles supporting its Americas retail business and paid MOPR a share of the revenues from that business, based on the relative shares of profit that Microsoft allocated to technology intangibles and to non-technology intangibles.  (Hoory Decl., ¶ 22).

16.     To value the technology intangible rights that were transferred, and also to set the compensation that Microsoft would pay MOPR as the deemed owner of technology intangibles

Petition to Enforce
Internal Revenue Service Summons

**U.S. Department of Justice**
Ben Franklin Station
P.O. Box 683
Washington, D.C. 20044-0683

4

1  after the transfer, Microsoft relied on certain assumptions about both historical and forecasted

2  revenues and expenses.  The valuation methodology adopted by Microsoft used research and

3  development expenses and a subset of sales and marketing expenses to estimate the relative

4  values of technology and non-technology intangibles to its Americas retail business.  (Hoory

5  Decl., ¶ 23).

6          17.      Through a number of intercompany agreements, Microsoft entered into a cost

7  sharing arrangement with its affiliate, Microsoft Asia Island Limited ("MAIL"), a Bermuda

8  corporation, effective April 3, 2004 (the "APAC cost sharing arrangement").  Under this

9  arrangement (and in contrast to the Americas cost sharing arrangement), Microsoft transferred to

10  MAIL various rights to both technology and non-technology intangibles used in its APAC retail

11  business.  (Hoory Decl., ¶ 24).

12          18.      As the result of the APAC cost sharing arrangement, Microsoft treated MAIL, for

13  transfer pricing purposes, as the economic owner of all intangibles supporting its APAC retail

14  business.  In valuing the intangible rights transferred to MAIL, however, Microsoft took the

15  position that, immediately prior to entering into the arrangement, Microsoft had owned only a

16  fraction of the non-technology intangibles used in its APAC retail business, thus limiting the

17  amount of compensation that MAIL would pay Microsoft for transferred non-technology

18  intangible rights.  (Hoory Decl., ¶ 25).

19          19.      To value the intangible rights transferred to MAIL, Microsoft relied on certain

20  assumptions about both historical and forecasted revenues and expenses.  The valuation

21  methodology adopted by Microsoft used research and development expenses and a subset of

22  sales and marketing expenses to estimate the relative values of technology and non-technology

23  Petition to Enforce                                    **U.S. Department of Justice**
   Internal Revenue Service Summons                       Ben Franklin Station
                                                          P.O. Box 683
                                                          Washington, D.C. 20044-0683

1    intangibles to its APAC retail business.  (Hoory Decl., ¶ 26).

2         20.    For transfer pricing purposes under 26 U.S.C. § 482, the Americas and APAC

3    cost sharing arrangements both require valuing the intangible rights that were transferred.  In

4    addition, because only technology intangible rights were transferred in the Americas cost sharing

5    arrangement, that arrangement also requires an ongoing valuation of the relative contribution of

6    technology intangibles and non-technology intangibles to the Americas retail business.  (Hoory

7    Decl., ¶ 27).

8         21.    The valuation methodologies Microsoft applied to its APAC and Americas cost

9    sharing arrangements and the relative values that Microsoft adopted for the technology and non-

10   technology intangibles used in its Americas and APAC retail businesses have billions of dollars

11   of impact on Microsoft's taxable income in 2004, 2005, and 2006.  (Hoory Decl., ¶ 28).

12        22.    The information sought in the designated summons issued to Microsoft may be

13   relevant to the IRS's consideration of whether the transfer pricing Microsoft adopted for its

14   APAC and Americas cost sharing arrangements satisfies the arm's length pricing standard under

15   26 U.S.C. § 482 and the regulations thereunder.  This includes, but is not limited to, evaluating

16   the relative values of the technology and non-technology intangibles that support those

17   businesses and evaluating the historical and forecasted revenues and expenses, including the

18   underlying assumptions on which Microsoft based its valuations.  (Hoory Decl., ¶ 29).

19        23.    Microsoft's refusal to fully comply with the summons continues to this date.

20   (Hoory Decl., ¶ 11).

21        24.    Except for responsive documents produced on November 20, December 8, and

22   December 9, 2014, the books, records, papers, or other data sought by the summons are not

23   Petition to Enforce                                    **U.S. Department of Justice**
     Internal Revenue Service Summons                      Ben Franklin Station
                                                           P.O. Box 683
                                                           Washington, D.C. 20044-0683

1    already in the IRS's possession. (Hoory Decl., ¶ 12).

2        25.      All administrative steps as required by the Internal Revenue Code for issuance

3    and service of a designated summons have been followed.  (Hoory Decl., ¶¶ 9, 13).

4        26.      The books, records, papers, and other data sought by the summons may be

5    relevant to determine Microsoft's correct federal tax liabilities for tax years ending June 30,

6    2004, June 30, 2005, and June 30, 2006.  (Hoory Decl., ¶ 14).

7        27.      There is no "Justice Department referral," as that term is described in Section

8    7602(d)(2) of the Internal Revenue Code, in effect with respect to Microsoft for the taxable years

9    ending June 30, 2004, June 30, 2005, and June 30, 2006.  (Hoory Decl., ¶ 15).

10        28.      In  order to obtain enforcement of a summons, the petitioner must establish that

11    the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that

12    purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies

13    all administrative steps required by the Internal Revenue Code.  *United States v. Powell*, 379

14    U.S. 48, 57-58, (1964).

15        29.      In further support of this Petition and incorporated herein by reference, the United

16    States submits the Declaration of Senior International Advisor Eli Hoory.  The United States has

17    met the *Powell* factors through this document.

18        WHEREFORE, petitioner, the United States of America, seeks the following relief:

19        A. That this Court enter an order directing Microsoft Corporation and includible

20            subsidiaries, to show cause in writing why it should not fully comply with and obey

21            the aforementioned Internal Revenue Service designated summons and every

22            requirement thereof as enumerated in the Declaration of Senior International Advisor

23

Petition to Enforce
Internal Revenue Service Summons

**U.S. Department of Justice**
Ben Franklin Station
P.O. Box 683
Washington, D.C. 20044-0683

1          Eli Hoory;

2      B.  That this Court enter an order directing Microsoft Corporation and includible

3          subsidiaries, to fully obey the aforementioned designated summons and every

4          requirement thereof as enumerated in the Declaration of Senior International Advisor

5          Eli Hoory by producing all summoned books, records, papers, and other data

6          (including meta data) to Revenue Agent Odell, or any other proper officer or

7          employee of the Internal Revenue Service, at such time and place as may be fixed by

8          Revenue Agent Odell or any other proper officer or employee of the Internal Revenue

9          Service;

10     C.  That the United States of America recover its costs in this action; and,

11

12

13

14

15

16

17

18

19

20

21

22

23     Petition to Enforce                                    **U.S. Department of Justice**
       Internal Revenue Service Summons                       Ben Franklin Station
                                                              P.O. Box 683
                                                              Washington, D.C. 20044-0683

1    D.  That the Court grant such other further relief as it deems just and proper.

2    Dated this 11th day of December, 2014.

3                                                   TAMARA W. ASHFORD
                                                    Acting Assistant Attorney General
4
                                                    */s Noreene Stehlik*
5                                                   NOREENE STEHLIK
                                                    Senior Litigation Counsel, Tax Division
6                                                   JEREMY HENDON
                                                    AMY MATCHISON
7                                                   Trial Attorneys, Tax Division
                                                    U.S. Department of Justice
8                                                   P.O. Box 683, Ben Franklin Station
                                                    Washington, DC 20044-0683
9                                                   Email:  Noreene.C.Stehlik@usdoj.gov
                                                            Jeremy.Hendon@usdoj.gov
10                                                          Amy.T.Matchison@usdoj.gov
                                                            Western.TaxCivil@usdoj.gov
11                                                  Telephone:     (202) 514-6489
                                                                   (202) 353-2466
12                                                                 (202) 307-6422

13                                                  ANNETTE L. HAYES
                                                    Acting United States Attorney
14                                                  Western District of Washington
                                                    *Attorneys for the United States of America*
15

16

17

18

19

20

21

22

23   Petition to Enforce                              **U.S. Department of Justice**
     Internal Revenue Service Summons                 Ben Franklin Station
                                                      P.O. Box 683
                                                      Washington, D.C. 20044-0683