THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Petitioner,<br><br>     vs.<br><br>MICROSOFT CORPORATION, et al.,<br><br>                              Respondents. | NO.  2:15-cv-00102 RSM<br><br>MEMORANDUM OF EVIDENCE AND AUTHORITY<br><br>NOTE ON MOTION CALENDAR:<br>April 24, 2015 |

## INTRODUCTION

The direct and circumstantial evidence shows that the IRS has improperly delegated (and intends to further delegate) the conducting of Microsoft's tax audit, including the taking of sworn testimony, to Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), commercial litigation attorneys. The involvement of Quinn Emanuel in the Microsoft audit and investigation violates the Internal Revenue Code, relies upon an invalid regulation, and is an impermissible delegation of an inherently governmental function. The IRS's attempt to seek the Court's assistance in this improper effort is an abuse of process. In elucidating the above facts and legal issues, this Memorandum of Evidence and Authority ("Memorandum") presents

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 1

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

1  "some credible evidence" "plausibly raising an inference" of abuse required to obtain an
2  evidentiary hearing, *see United States v. Clarke*, 134 S. Ct. 2361, 2367-68 (2014), and further
3  makes a "substantial preliminary showing of abuse or wrongdoing" warranting discovery in aid
4  of Microsoft's response to the Court's show-cause order, *see United States v. Stuckey*, 646 F.2d
5  1369, 1374 (9th Cir. 1981).

6  In support of this Memorandum, Microsoft submits the Declarations of Michael J.
7  Bernard ("Bernard Decl.") and James M. O'Brien ("O'Brien Decl."), together with exhibits.

## SUMMARY OF EVIDENCE

### I. The 2004-2006 Audit.

In 2007, over eight years ago, the IRS began auditing Microsoft's 2004-2006 tax years. Bernard Decl. ¶ 4. This audit has focused on two cost sharing arrangements that Microsoft entered into with subsidiaries roughly a decade ago. *Id*. ¶ 3. Although the statute of limitations on any tax liability is three years, Microsoft agreed to extend the statute on multiple occasions, ultimately until December 2014, eight years after the audit period began. *Id*. ¶ 4. From 2007 through 2013, Microsoft voluntarily produced over 1.2 million pages of documents and arranged for 31 consensual interviews in response to IRS information requests. *Id*. ¶¶ 5, 10. In May 2011, the IRS made its first audit determination. *Id.* ¶ 6. In early 2014, the IRS presented its second audit determination. *Id*. ¶¶ 8-9, 11. Then it issued five "wrap up" information requests between January and May 2014, to which Microsoft also responded. *Id*. ¶ 12.

Beginning in July 2014, the IRS unleashed a flood of new requests. *Id*. ¶ 14, 23. In the fall of 2014, Microsoft voluntarily produced 31,150 pages and submitted to an additional 23 interviews. *Id*. ¶ 14. Despite Microsoft's substantial and comprehensive effort to voluntarily comply, the IRS issued a "designated" summons seeking more documents, and "related"

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 2

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

document and testimonial summonses.[1]  *Id*. ¶ 24.  The issuance of the "designated" summons unilaterally extended the statute of limitations still further and resulted in this action.

## II.    The IRS Engages Outside Counsel.

On May 19, 2014, unbeknownst to Microsoft, the IRS engaged Quinn Emanuel in the Microsoft 2004-06 tax audit as an "expert in commercial litigation" and agreed to pay the firm $2,185,500.[2]  Bernard Decl. ¶ 13, 20; O'Brien Decl. ¶ 12, Ex. D at Microsoft-FOIA-00173-174.  The IRS did not reveal this engagement to Microsoft until late August 2014.  O'Brien Decl. ¶ 5; Bernard Decl. ¶ 16, Ex. B.  By all indications, this case is the first time that the IRS has engaged civil litigators as "experts" in a U.S. income tax audit.  Marie Sapirie, *News Analysis: The Trouble With Outside Contractors at Summons Interviews*, 146 Tax Notes 1180 (Mar. 9, 2015);[3] O'Brien Decl. ¶ 6.  Based on information acquired since the engagement, it appears that the IRS did not engage Quinn Emanuel as an ordinary "expert," but rather to outsource key aspects of the tax audit and investigation. O'Brien Decl. ¶¶ 12, 14.

Under the contract, Quinn Emanuel's first task was to review the case record and present its "findings, assessment, and recommendation with respect to the factual and legal state of the case, identifying strengths, weakness, and areas for further development" including "*identifying additional information deemed necessary* to develop clearly defensible positions, including any necessary data, documents, *or interviews*."  O'Brien Decl. ¶ 12(c), Ex. D at Microsoft-FOIA-00176-00177 (emphasis added).  Quinn Emanuel is also expressly responsible for "*preparing for and participating in interviews*[.]"  *Id*. at Microsoft-OIA-00177 (emphasis

---

[1] *See* 26 U.S.C. § 6503(j).

[2] Quinn Emanuel bills itself as "a 700-lawyer business litigation firm with 18 offices around the globe, each devoted solely to business litigation and arbitration." *Quinn Emanuel: Overview*, http://www.quinnemanuel.com/#4 (last visited Mar. 18, 2015).

[3] Microsoft intends to provide the Court with a copy of this and other non-case law authority cited in the Memorandum.

MEMORANDUM OF EVIDENCE AND AUTHORITY - 3

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

added).  Its second task was to provide legal services in developing the IRS case.  *Id*. at Microsoft-FOIA-00177.

### III. The IRS Issues a Temporary Regulation that Purports to Authorize the Outsourcing of the Taking of Testimony.

Approximately three weeks after engaging Quinn Emanuel, on June 9, 2014, the Treasury Department and the IRS approved 26 C.F.R. § 301.7602-1T(b).  This temporary regulation purports to allow third party contractors such as Quinn Emanuel to "participate fully in the interview of the witness summoned by the IRS to provide testimony under oath," including "questioning the person providing testimony under oath" and "asking a summoned person's representative to clarify an objection or an assertion of privilege."[4]  O'Brien Decl. ¶ 7.

The temporary regulation was published in the Federal Register on June 18, 2014—without prior notice and comment—and went into immediate effect on that date.  The preamble to the temporary regulation summarizes the effect of the regulation as follows:

> These temporary regulations make clear that persons described in section 6103(n) and Treas. Reg. § 301.6103(n)–1(a) with whom the IRS or Chief Counsel contracts for services may receive books, papers, records, or other data summoned by the IRS and *take testimony of a person who the IRS has summoned as a witness to provide testimony under oath*.

Participation of a Person Described in Section 6103(n) in a Summons Interview Under Section 7602(a)(2) of the Internal Revenue Code, 79 Fed. Reg. 34,625 (June 18, 2014) (emphasis added).  Thus, the temporary regulation purports to authorize third-party contractors to take compulsory, sworn testimony of summoned persons.  *See also id*. ("[T]hese temporary regulations expressly provide that ... an outside person hired by the IRS or Chief Counsel . . . may . . . take the testimony of the witness under oath.").

---

[4] A proposed regulation with the same language was issued on the same date.  The Texas Bar Association Tax Section submitted the only comments in response to the proposed regulations, questioning the validity of the regulation as "exceed[ing] the statutory authority under Section 7602(a)."  O'Brien Decl. ¶ 8, Ex. A.

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 4

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

Within two months of retaining Quinn Emanuel, the IRS issued new Information Document Requests ("IDRs") insisting on recorded, sworn interviews of approximately 30 employees or former employees of Microsoft.  Bernard Decl. ¶¶ 14-15.  The IRS's insistence on recorded, sworn interviews was an abrupt departure from its prior practice in the audits of Microsoft.[5]  *Id.* ¶ 15.  The IRS has acknowledged in writing that it intends to have Quinn Emanuel "fully participate" in taking the testimony required by the summonses.  O'Brien Decl. ¶ 11, Ex. C.

### IV.    The IRS Delayed Disclosure of Quinn Emanuel's Involvement in the Microsoft Audit.

The IRS first disclosed to Microsoft that it had retained "outside counsel from Quinn Emanuel[,]" and demanded that Quinn Emanuel "participate" in the upcoming consensual interviews, on August 28, 2014, months after the contract was signed.  Bernard Decl. ¶ 16.  On September 3, 2014, Microsoft requested a "complete unredacted copy of the IRS engagement letter with Quinn Emanuel."  *Id.* ¶ 17, Ex. C.  On September 9, 2014, the IRS responded that "[t]he IRS does not have an engagement letter with [Quinn Emanuel]."  *Id.* ¶ 18, Ex. D at 3.  Microsoft subsequently unearthed a summary disclosure of an IRS contract with Quinn Emanuel, relating to purported "Professional Expert Witness" services, on the Office of Management and Budget's website, www.usaspending.gov.  *Id.* ¶ 20.  The next day, on September 10, Microsoft sent a letter to the IRS requesting a complete copy of the IRS's contract with Quinn Emanuel.  *Id.* ¶ 20, Ex. E.  The IRS produced Section C of the contract, the "Performance Work Statement," but otherwise refused to disclose the remainder of the contract.  *Id.* ¶ 21, Ex. F.  Only after Microsoft filed a FOIA lawsuit did the Department of Justice produce the complete contract, on January 14, 2015.  O'Brien Decl. ¶¶ 9-10, 12.

---

[5] Prior to Quinn Emanuel's engagement, the IRS and Microsoft had conducted over 130 informal interviews (*i.e.*, none of them were taken under oath nor subject to stenographic or audio recording) during the 2000-2003 and 2004-2006 audits of buy-in issues under 26 U.S.C. § 482.  Bernard Decl. ¶ 15.

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 5

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

**V.    The Quinn Emanuel Contract.**

The contract describes Quinn Emanuel's expertise as "commercial litigation" and characterizes Quinn Emanuel services as "'expert' services." O'Brien Decl. ¶ 12(b), Ex. D at Microsoft-FOIA-00174. The contract identifies John Quinn and John Gordon as the "Key Experts/Contractors," billable at the firm's normal hourly rates of $1,120 for Mr. Quinn and $1,075 for Mr. Gordon. *Id*. ¶ 12(a), Ex. D at Microsoft-FOIA-00171. The contract refers to "four phases" of Quinn Emanuel's services (although only covering "Phase I"), and describes the performance period as "dependent on the litigation schedule of the government, the Court's scheduling order, Settlement and/or final disposition of the Taxpayer case, not to exceed five years, whichever is later." *Id*. ¶ 12(d), Ex. D at Microsoft-FOIA-00175, 191. During the litigation, the contract envisions Messrs. Quinn and Gordon becoming special governmental employees. *Id*. at Microsoft-FOIA-00212.

On October 28, 2014, the IRS and Quinn Emanuel modified their contract, so as to loan John Gordon, John Quinn, Jeremy Anderson, Noah Helpern, Jack Baumann, and Carol O'Connor, all of Quinn Emanuel, "Six (6) Government owned laptops with USB Air Cards, at no cost to the vendor [Quinn Emanuel] . . . for the duration of the contract." O'Brien Decl. ¶¶ 13-14, Ex. E.

**VI.   IRS Information Requests Following Retention of Quinn Emanuel.**

Between the IRS's engagement of Quinn Emanuel on May 19, 2014, and December 31, 2014, the IRS propounded 120 document production requests and sought 36 witness interviews via IDRs, a "designated" summons, and 18 "related" summonses. Bernard Decl. ¶¶ 23-24. With respect to the testimonial summons, the IRS stated in a letter dated November, 26, 2014, that the IRS's third-party contractors (including Quinn Emanuel) would "participate fully" in taking testimony pursuant to summons, citing 26 C.F.R. § 301.7602-1T(b) as legal authority. O'Brien Decl. ¶ 11, Ex. C.

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 6

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

### VII. Microsoft Seeks Information About Quinn Emanuel's Involvement Through Multiple FOIA Requests.

To date, Microsoft has sought relevant documents from the IRS via Freedom of Information Act ("FOIA") requests, none of which have been answered by the IRS voluntarily. As a result, Microsoft filed a FOIA lawsuit on November 24, 2014, in the United States District Court for the District of Columbia, seeking production of a copy of the Quinn Emanuel contract and related documents. *Microsoft Corp. v. IRS*, 14-cv-01982-RBW (D.D.C. Nov. 24, 2014). That lawsuit was dismissed by stipulation of the parties after the IRS finally produced the requested documents. *Id.* (Feb. 25, 2015). On March 11, 2015, Microsoft filed a second FOIA complaint in the United States District Court for the Western District of Washington, seeking a variety of documents which were the subject of FOIA requests submitted after service of the summonses at issue. *Microsoft Corp. v. IRS*, No. 2:15-cv-00369-RSM (W.D. Wash.); O'Brien Decl. ¶¶ 15-16. As relevant to these summons enforcement proceedings, the latter FOIA lawsuit seeks documents relating to the IRS's promulgation of 26 C.F.R. § 301.7602-1T(b)(3) and communications within the IRS and between the IRS and the contractors regarding the temporary regulation. On March 13, 2014, Microsoft filed two additional FOIA requests with the IRS, one of which seeks additional documents relating to Quinn Emanuel's retention by the IRS and the role it has played, is playing, and is intended to play in this matter. O'Brien Decl. ¶ 17, Ex. H.

As of the date of this motion, other than the document sought in the D.C. FOIA action, none of the requested documents have been produced. *Id.* ¶¶ 12, 15, 17.

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF EVIDENCE AND AUTHORITY - 7

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# ARGUMENT

Microsoft is entitled to an evidentiary hearing because it has submitted "some credible evidence" "plausibly raising an inference" of abuse. It is entitled to targeted discovery regarding Quinn Emanuel's involvement in the tax audit and investigation as it has made a substantial preliminary showing that enforcement of these summonses constitute an abuse of process.

## I. Abuse of the Court's Process is a Defense to Summons Enforcement.

District courts have authority to quash an IRS summons if its issuance is an abuse of process. Indeed, district courts play a key due process role in the IRS investigation process as IRS summons are not self-enforcing. Because of the potential for the IRS to abuse its power, Congress interposed the courts as a check, requiring the IRS to file suit to seek judicial enforcement of the summonses at issue. *See* 26 U.S.C. § 7604; *see also United States v. Bisceglia*, 420 U.S. 141, 146 (1975) ("[T]he authority vested in tax collectors may be abused, as all power is subject to abuse . . . [but] protection is afforded by the provision that an Internal Revenue Service summons can be enforced only by the courts.").

In *United States v. Powell*, the Supreme Court recognized that a summons will not be enforced if its enforcement would result in an abuse of the Court's process:

> It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

379 U.S. 48, 58 (1964). Although *Powell* focused upon improper purpose and bad faith, the Supreme Court has since made clear that these abuse-of-process indicia are illustrative, not exclusive. *See United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 318 n.20 (1978) ("Future cases may well reveal the need to prevent other forms of agency abuse of congressional

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 8

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

authority and judicial process."); *Clarke*, 134 S. Ct. at 2365 (recognizing a taxpayer's right "to challenge that affidavit, and to urge the court to quash the summons 'on any appropriate ground'" that would result in an abuse of a court's process).

Consistent with *Powell* and *LaSalle*, courts have held that administrative agencies, including the IRS, cannot enlist the judiciary to enforce a summons if the court's process itself would be thereby abused. *See, e.g., United States v. Monsey*, 429 F.2d 1348, 1351 (7th Cir. 1970) (improper use of summons to obtain criminal discovery). "The parameters of abuse of process must remain flexible in order to prevent other forms of agency abuse of congressional authority and judicial process." *United States v. Caltex Petroleum Corp.,* 12 F. Supp. 2d 545, 554 (N.D. Tex. 1998); *see also SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 314 (5th Cir. Unit B May 1981) (noting that the Supreme Court has neither dictated a complete list of "appropriate grounds" on which a summons may be challenged nor "rigidly defined" abuse of process). As the Third Circuit held in *SEC v. Wheeling-Pittsburgh Steel Corp.*:

> In our view, the inquiries in an adversary enforcement proceeding are limited: a determination that the court's process would or would not be abused by enforcement of the subpoena, and the conclusion that enforcement will be denied or granted. In the case before us, the presence of SEC bad faith is only one of several possible reasons for the ultimate conclusion; a determination that the court's process would be abused if the subpoena were to be enforced is the ultimate conclusion . . . [t]he distinction between the abuse of the SEC's process and abuse of the court's process must always be recognized.

648 F.2d 118, 125 (3d Cir. 1981).

**II.     The IRS's Attempt to Secure the Court's Enforcement of the Summonses Would Constitute an Abuse of Its Process.**

The summonses present two issues of first impression as to whether enforcement would result in an abuse of court process.

*First*, contrary to the statute and in violation of the APA, the IRS is attempting to outsource an inherently governmental function—interrogating a taxpayer and its employees—

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 9

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

to third-party contractors, and has enlisted the Court's process to that end.  In the unambiguous terms of the governing statute, Congress granted the authority to take summoned testimony solely to the Treasury "Secretary."  26 U.S.C. §§ 7602(a)(3).  The term "Secretary" is defined to mean "the Secretary of the Treasury or his delegate."  26 U.S.C. § 7701(a)(11).  The statute further defines the phrase "or his delegate" to mean or "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority."  26 U.S.C. §§ 7701(a)(12)(A)(i).  Because Quinn Emanuel's attorneys are not duly authorized "officers, employees, or agencies of the Treasury Department," the statute does not authorize them to question witnesses under oath in a tax audit.

Congress, by statute, has enabled federal agencies to hire contractors as "special Government employees" and thereby conduct inherently governmental functions, subject to the same limited pay schedules as other government employees.  *See* 18 U.S.C. § 202(a) (restricting employment of "special government employees" to 130 days out of any consecutive 365 days).  It is undisputed that none of the Quinn Emanuel lawyers are government employees, "special" or otherwise.  The IRS-Quinn Emanuel contract seeks to effectively skirt these limits, by mis-characterizing Messrs. Quinn, Gordon and the other Quinn Emanuel lawyers as providing "expert" services, all while drawing their hourly billing rates and expenses as contractors.

Sections 7602 and 7701 are consistent with long-standing prohibitions against delegation of inherently governmental functions.  *See* 31 U.S.C. § 501 note, at § 5(2)(A); Pub. L. 109-115 § 840 (amending 31 U.S.C. § 501 notes); *see also* Congressional Research Service, *Definitions of "Inherently Governmental Function" in Federal Procurement Law and Guidance*, at 3 & n.14 (Dec. 23, 2014), *available at* http://fas.org/sgp/crs/misc/R42325.pdf (citing to statutory definition of "inherently governmental function" and providing further

MEMORANDUM OF EVIDENCE AND AUTHORITY - 10

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

background); *Office of Management and Budget, Office of Federal Procurement Policy Letter 11-01, Performance of Inherently Governmental and Critical Functions* ("Policy Letter 11-01"), 76 Fed. Reg., 56,227, 56,236 (Sept. 12, 2011) (defining an "inherently governmental function" as "a function that is so intimately related to the public interest as to require performance by Federal Government employees," including "the interpretation *and execution* of the laws of the United States") (emphasis added); *id*. at 56,241 (functions considered to be inherently governmental include "representation of the government before administrative and judicial tribunals, unless a *statute* expressly authorizes the use of attorneys whose services are procured through contract") (emphasis added).[6]

      It is expected that the IRS will argue that Quinn Emanuel may participate because of a temporary regulation allowing contractors to take compulsory, sworn testimony.  *See* 26 C.F.R. § 301.7602-1T(b).  That reliance is misplaced.  Most importantly, the temporary regulation is invalid because it contravenes the unambiguous language of the statute (which, as discussed above, prohibits delegation of testimony-taking authority outside the Treasury Department) and is therefore unenforceable under the principles of *Chevron v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).  *See* 5 U.S.C. § 706(2)(A) and (C) (requiring courts to set aside regulations found to be "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"); *see also United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843 (2012) ("The fact that a statute is unambiguous means that there is no gap for the agency to fill and thus no room for agency discretion.") (internal

---

[6] Indeed, the IRS itself has acknowledged that it may not delegate inherently governmental functions associated with 26 U.S.C. § 7602.  *See* Participation of a Person Described in Section 6103(n) in a Summons Interview Under Section 7602(a)(2) of the Internal Revenue Code, 79 Fed. Reg. 34,625-626 (June 18, 2014).  In promulgating a temporary regulation authorizing the use of outside contractors to take testimony, the IRS temporary regulation takes the conclusory and largely circular position that such efforts are not "inherently governmental functions."  Microsoft disagrees.

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 11

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

1  citations omitted).  Indeed, since 1959, the governing regulation had allowed only an IRS

2  "officer or employee" to take compulsory, sworn testimony pursuant to a summons.[7]

3       In addition, the hastily-issued temporary regulation was promulgated without following

4  notice-and-comment procedures, thereby violating the requirements of the Administrative

5  Procedure Act ("APA").  Agencies must adhere to notice-and-comment requirements unless

6  the agency can establish one of the exceptions to the rulemaking procedures set forth in section

7  553, none of which are applicable here.  *See Alcaraz v. Block*, 746 F.2d 593, 612 (9th Cir.

8  1984).  The temporary regulation is also arbitrary and capricious in that it relies on factors that

9  Congress did not intend the IRS to consider and, generally, does not rely on reasoned decision

10 making.  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.

11 Co.*, 463 U.S. 29, 42-43 (1983) (holding that agency action is arbitrary or capricious if "the

12 agency has relied on factors which Congress has not intended it to consider, entirely failed to

13 consider an important aspect of the problem, offered an explanation for its decision that runs

14 counter to the evidence before the agency, or is so implausible that it could not be ascribed to a

15 difference in view or the product of agency expertise").  Congress requires agencies to consider

16 whether the delegation to a private contractor amounts to an improper delegation of an

17 "inherently governmental function."  *See* 31 U.S.C. § 501 note, at § 5(2)(A).  Though the

18 temporary regulation's Preamble characterizes the contractors' interrogation as not inherently

19 governmental, this characterization runs afoul of policy guidance showing that the compelling

20 of testimony pursuant to a summons is an inherently governmental function that is substantially

21 the same as "[r]epresentation of the government before administrative and judicial tribunals."

22 *See* Policy Letter 11-01, at 56,241.  The temporary regulation therefore provides no basis for

23 Quinn Emanuel's interrogation of the summoned witnesses.

24

25 [7] *See* Ajay Gupta, *News Analysis: Why Has the IRS Outsourced Microsoft's Transfer Pricing Audit*, p. 5 (Dec. 1, 2014).

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 12

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Second*, the facts and circumstances raise a plausible inference that the IRS has impermissibly outsourced to the Quinn Emanuel trial lawyers other key aspects of the tax audit. The Internal Revenue Code prohibits the IRS from outsourcing an audit to private lawyers, as the power to audit (like the power to take testimony pursuant to summons) is an inherently governmental function expressly reserved to IRS officers and employees.  26 U.S.C. §§ 7602(a)(3) and 7701(a)(11)-(12); *OMB Policy Letter 11-01*.  Yet, the IRS contract describes Quinn Emanuel's current services related to the audit to include "*identifying additional information deemed necessary* to develop clearly defensible positions, including any necessary data, documents, or *interviews, . . .* [and] *preparing for or participating in interviews*[.]" O'Brien Decl. ¶ 12(c), Ex. D at Microsoft-FOIA-00177 (emphasis added).  Presumably, and as evidenced by their timing and content, Quinn Emanuel proposed or prepared the summonses at issue.

The improper involvement of Quinn Emanuel in these proceedings is further substantiated by the fact that the IRS has failed to provide Microsoft the documents to which it is entitled under the FOIA. O'Brien Decl. ¶¶ 9, 12, 15, 17.  It is concerning that the IRS did not produce the documents relating to the Quinn Emanuel contract until a lawsuit was filed in federal court in the District of Columbia.

Given the procedural posture of this motion, the Court need only decide at this time whether Microsoft has presented (1) "some credible evidence" "plausibly raising an inference" of abuse; and (2) a "substantial preliminary showing of abuse or wrongdoing" warranting discovery.  At this juncture, the Court need *not* decide any of the substantive legal issues that go to Microsoft's challenge to enforcement of the summons.  Microsoft intends to more fully brief its defenses during the show cause hearing and after reviewing the sought-after discovery.

/ / /

*/ / /*

MEMORANDUM OF EVIDENCE AND AUTHORITY - 13

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

### III. The Court Should Order Limited Discovery in the Form of Document Production.

Although discovery in a summons enforcement action is the exception rather than the rule, the Ninth Circuit allows limited discovery prior to the show cause hearing "if the taxpayer can make a substantial preliminary showing of abuse or wrongdoing" at an evidentiary hearing. *Stuckey*, 646 F.2d at 1374.  As discussed above, direct and circumstantial evidence shows that the IRS has improperly delegated (and intends to further delegate) the conduct of a tax audit and the taking of testimony to Quinn Emanuel.  Microsoft's submission of evidence here is sufficient to meet the necessary threshold, and testimony of live witnesses is not necessary.

Because Microsoft has met its burden, the Court should allow Microsoft to conduct limited document discovery that precisely tracks a subset of the information Microsoft has already sought through recent FOIA requests to the IRS.  These requests go to the heart of Quinn Emanuel's involvement, seeking, among other things:

- Documents maintained by the IRS regarding the regulatory history of Prop. Treas. Reg. § 301.7602-1, REG-121542-14, published in the Federal Register at 79 Fed. Reg. 34668 (Jun. 18, 2014).

- Documents maintained by the IRS regarding the regulatory history of Temp. Treas. Reg. § 301-7602-1T, RIN 1545-BM25, contained in Treasury Decision 9669, published in the Federal Register at 79 Fed. Reg. 34625 (Jun. 18, 2014).

- Documents exchanged between or among the IRS and Quinn Emanuel, relating to, referencing, or addressing the issues covered by the temporary and proposed regulations described above.

- Documents sent to or sent by the following current and former IRS personnel, relating to, referencing, or addressing the issues covered by the temporary and proposed regulations described above:  Cheryl Claybough, Eli Hoory, Heather Maloy, Michael Danilack and Samuel Maruca.

- Documents referencing Microsoft that also relate to, reference, or address the temporary and proposed regulations described above.

MEMORANDUM OF EVIDENCE AND AUTHORITY - 14

Case No.:  2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717

- Documents exchanged between Quinn Emanuel and the IRS on or prior to May 19, 2014, in connection with the IRS's examination of Microsoft for any or all of Microsoft's tax years ended June 30, 2004 through June 30, 2006.

- Documents exchanged between or among any or all the following individuals, on or prior to May 19, 2014, relating to or referencing the potential engagement of Quinn Emanuel in connection with the IRS examination of Microsoft for any or all of Microsoft's tax years ended June 30, 2004 through June 30, 2006: Cheryl Claybough, Eli Hoory, Heather Maloy, Michael Danilack, Samuel Maruca, Thomas Vidano and William Wilkins.

- Documents exchanged between Quinn Emanuel and the IRS in connection with TIRNE-14-C-00013.

- Documents created or maintained by Quinn Emanuel in connection with TIRNE-14-C-00013.

Microsoft believes that documents responsive to these requests will provide further evidence that enforcement of the summonses would result in an abuse of the Court's process. For example, background documents and audit communications regarding the temporary regulation may establish a clear linkage between the regulation and the IRS's use of Quinn Emanuel in this audit. Audit communications about the engagement or use of Quinn Emanuel may establish that Quinn Emanuel has been driving the audit and summons activities since May 2014. These materials will support Microsoft's abuse of process argument in response to the show cause order.

**CONCLUSION**

For the reasons stated, the Court should find that Microsoft has made the requisite showings for an evidentiary hearing and to obtain discovery. The Court should order limited document discovery so that Microsoft may present this and other documentary evidence in support of its reply to the show cause order.

DATED this 18th day of March, 2015.

/ / /

/ / /

MEMORANDUM OF EVIDENCE AND AUTHORITY - 15

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

|     |                                                    |
| --- | -------------------------------------------------- |
| 1   | CALFO HARRIGAN LEYH & EAKES LLP                    |
| 2   | By    *s/ Patricia A. Eakes*                       |
| 3   |                                                    |
| 4   | By    *s/ Andrea D. Ostrovsky*                     |
|     | Patricia A. Eakes, WSBA #18888                     |
|     | Andrea D. Ostrovsky, WSBA #37749                   |

CALFO HARRIGAN LEYH & EAKES LLP

By    *s/ Patricia A. Eakes*

By    *s/ Andrea D. Ostrovsky*
   Patricia A. Eakes, WSBA #18888
   Andrea D. Ostrovsky, WSBA #37749
   999 Third Avenue, Suite 4400
   Seattle, WA 98104
   Phone: (206) 623-1700
   Fax: (206) 623-8717
   Email: pattye@calfoharrigan.com
          andreao@calfoharrigan.com


BAKER & McKENZIE LLP

By    *s/ Daniel A. Rosen*
   Daniel A. Rosen, *Pro Hac Vice*
   452 Fifth Avenue
   New York, NY 10018
   Phone: (212) 626-4272
   Fax: (212) 310-1600
   Email: daniel.rosen@bakermckenzie.com


By    *s/ James M. O'Brien*
   James M. O'Brien, *Pro Hac Vice*
   300 E. Randolph Drive, Suite 5000
   Chicago, IL 60601
   Phone: (312) 861-8602
   Fax: (312) 861-2899
   Email: james.m.o'brien@bakermckenzie.com

   *Attorneys for Respondent / Intervenor*
   *Microsoft Corporation*

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 16

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  <u>Amy Matchison, Jeremy N. Henson, Noreene C. Stehlik and the U.S. Department of Justice; Daniel A. Rosen, James M. O'Brien and Baker & McKenzie LLP; Robert B. Mitchell, Hugh Frederick Bangasser and K&L Gates LLP; George E. Greer and Orrick Herrington & Sutcliffe; Stephen M. Rummage and Davis Wright Tremaine</u>, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  <u>N/A</u>.

*s/ D. Yvette Chambers*
D. Yvette Chambers

MEMORANDUM OF EVIDENCE AND
AUTHORITY - 17

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL  (206) 623-1700   FAX  (206) 623-8717