UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

UNITED STATES OF AMERICA,          )
                                   )
              Petitioner,          ) CASE NO. C15-00102RSM
                                   )
v.                                 ) SEATTLE, WASHINGTON
                                   ) July 7, 2015
MICROSOFT CORPORATION, et al.,     )
                                   ) TELEPHONE CONFERENCE
              Respondents.         )
                                   )
_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE
_____


APPEARANCES:

 For the Petitioner:     JAMES WEAVER
                         NOREENE STEHLIK
                         JEREMY HENDON
                         AMY MATCHISON



 For the Respondents:    PATRICIA EAKES
                         BRIAN PRESTES
                         DANIEL ROSEN


 Reported by:            NANCY L. BAUER, CCR, RPR
                         Federal Court Reporter
                         700 Stewart Street, Suite 17205
                         Seattle, WA 98101
                         (206) 370-8506
                         nancy_bauer@wawd.uscourts.gov

```
 1   July 7, 2015                                    2:00 p.m.
                          PROCEEDINGS
 2   _____

 3          THE CLERK:  This is Laurie, with Judge Martinez.

 4          MS. EAKES:  Hi Laurie.  This is Patty Eakes on behalf

 5   of Microsoft.

 6          THE CLERK:  We have a court reporter here, along with

 7   Judge Martinez, and we're going to need all counsel that are

 8   participating to make an appearance for the record; and

 9   during the call, when you're speaking, we need you to

10   identify yourself before you begin speaking.

11          MS. EAKES:  Okay.

12          THE CLERK:  Patty, if you would like to start.

13          MS. EAKES:  Sure.  This is Patty Eakes on behalf of

14   Microsoft.

15          MR. ROSEN:  This is Daniel Rosen on behalf of

16   Microsoft.

17          MR. PRESTES:  Good afternoon.  Brian Prestes on

18   behalf of Microsoft.

19          MS. EAKES:  I think that's all from Microsoft.

20          MR. WEAVER:  This is James Weaver for the United

21   States.

22          MS. STEHLIK:  Noreene Stehlik for the United States.

23          MR. HENDON:  Jeremy Hendon for the United States.

24          MS. MATCHISON:  And Amy Matchison for the United

25   States.
```

1            THE COURT:  Counsel, good afternoon.  As you just

2   heard from Ms. Cuaresma, we are in chambers, in my conference

3   room, with our court reporter present, and my in-court clerk,

4   Ms. Cuaresma, and my law clerk assigned to this particular

5   case, Mr. Blair.

6       So the court has received the materials that were

7   submitted by both sides.  As I understand it, there are

8   probably three different issues that we need to go over.  The

9   first one is the request by Microsoft to have the IRS make

10   Commissioner Heather Maloy available either for a deposition

11   or a special session of the evidentiary hearing that is

12   scheduled for the 21st.

13       My understanding, from looking at the material submitted

14   by the parties, is that Ms. Maloy will be leaving the

15   employment with the IRS on the 10th, which, I believe, is

16   this Friday.  So let's take up that matter first.

17       And I guess what I need to know from looking at this -- I

18   mean, what I've got, basically, is Microsoft saying we

19   believe she is an essential witness.  We've got the IRS

20   saying no, she's not; she basically just handled ministerial

21   duties and signed off on things but has no, really,

22   information that would be valuable, that would be something

23   that Microsoft would want.

24       So I guess the question that I have for Microsoft is, what

25   evidence can you give me now, or what makes you believe that

1    Commissioner Maloy can provide testimony on this particular

2    investigation or the decision to retain a private firm, Quinn

3    Emanuel, or to pass the temporary regulations?  What makes

4    you think that Ms. Maloy is the one that's necessary versus

5    the witness that the IRS has proffered, which I believe is

6    Eli Hoory?

7         So let me hear from Microsoft.  And as you heard

8    Ms. Cuaresma indicate, because we are recording everything,

9    for the purposes of our court reporter we need you to

10   identify yourself before you speak.

11             MS. EAKES:  Your Honor, this is Patty Eakes on behalf

12   of Microsoft.  I'll respond to the court's question with

13   respect to Ms. Maloy.

14        We believe Ms. Maloy has information on three different

15   topics:  First of all, the temporary regulation that the

16   court has said is at issue; second, the designated summons,

17   she was required to sign off on it; and third, the decision

18   to actually hire Quinn Emanuel.

19        Ms. Maloy is the head of the large business and the

20   international group, the LB&I group, which is the group that

21   is directly overseeing the Microsoft audit.

22        We know, with respect to the temporary regulation,

23   Ms. Maloy is the person who actually signed off on the

24   regulation, the temporary regulation, and that's one of the

25   issues that the court has identified as subject to the

1   factual finding at the evidentiary hearing.

2        With respect to -- we also note from other documents that

3   we recently received last Thursday in response to a FOIA

4   request that the LB&I division, the one that Ms. Maloy is the

5   head of, was also involved in the promulgation of that

6   temporary regulation.  So it's not a situation, in which it

7   was suggested by the IRS, that Ms. Maloy was simply covering

8   for somebody for a few days.  In fact, that division was

9   involved in, and some might say the driving force behind the

10  temporary regulation.

11       As the court identified in your order, at page 7, one of

12  the issues with respect to the temporary regulation was

13  whether or not it was arbitrary and capricious and whether or

14  not it was enacted without reasonable analysis or

15  explanation.

16       In the role that Ms. Maloy played, she's the person who

17  can speak to the institutional purposes and the motive of the

18  IRS in enacting this very significant temporary regulation,

19  which really changed the way things had been done in the

20  past.

21       So, you know, this is an issue in which really we're

22  examining the highest levels of the IRS in terms of

23  instituting a temporary regulation of this nature, and we

24  have reason to believe Ms. Maloy was involved in it, not only

25  because she sign it, but because of the other documents that

```
 1    suggest that her group was, in fact, involved in pushing

 2    forward on the temporary regulation.

 3        With respect to the designated summons issue, we know from

 4    a declaration that was provided by the IRS from Mr. Hoory --

 5    it was not filed with the court, but it was provided to Baker

 6    and McKenzie several months ago -- that Ms. Maloy was, in

 7    fact, briefed on and approved the issuance of the designated

 8    summons.  And, again, that's a significant issue in terms of

 9    the evidentiary hearing that the court has ordered.  So we

10    believe she has personal knowledge, based on what Mr. Hoory

11    has said about his involving her in that process.

12        And the third issue is with respect to the hiring of Quinn

13    Emanuel.  And, you know, based on what Microsoft knows, the

14    hiring of Quinn Emanuel in the involvement of Microsoft's

15    audit was an unprecedented event, and we have reason to

16    believe, based on what we know about the inner workings of

17    the IRS, that Ms. Maloy would have been involved in that

18    decision.  It was a significant departure from past practice,

19    and certainly it's continued to be a significant issue for

20    the IRS, as evidenced by some of the other things that we

21    filed with the court, and so we believe that she has

22    knowledge with respect to that.

23        But, again, it's not a single topic.  It's all three of

24    the issues that we believe she is involved in that the court

25    has identified in the ruling on the evidentiary hearing.
```

1      THE COURT:  Ms. Eakes, before we hear from the other

2  side, let me ask you one other question.

3      All of the arguments that you've made, why would they not

4  apply to Senior Advisor Mr. Hoory?

5      MS. EAKES:  Well, I mean, perhaps Mr. Hoory has some

6  information about all of those topics; however, I think, most

7  importantly, in terms of the decision-making on an

8  institutional level with respect to the temporary regulation,

9  we believe that that's something that Ms. Maloy, in her role

10  as a high-ranking executive, as the IRS has acknowledged,

11  would be most appropriate to speak to that issue, kind of

12  from an institutional standpoint.

13      THE COURT:  All right.  Let me hear from the IRS.

14  Thank you.

15      MR. WEAVER:  This is James Weaver for the United

16  States.

17      First, let me just iterate for the court that what we're

18  looking towards here is an evidentiary -- a limited hearing,

19  an evidentiary hearing to see whether broader discovery is

20  necessary.

21      And so what we intend to do is try and find and produce

22  the person with the most knowledge, not everyone involved.

23  And so with respect to Ms. Maloy, let me just start with the

24  promulgation of this reg.

25      Ms. Maloy signed off on the reg just by coincidence.  She

1   happened to be standing in her role, as we noted in our

2   response, on the particular day that this reg was issued.

3       Now, it is undoubtedly true that all of the IRS divisions

4   are going to have a chance to have input on a regulation, but

5   Ms. Maloy's job is in no way central to the promulgation of

6   this reg.  I'm not saying she doesn't know about it, I'm not

7   saying she didn't have input into it, but we do not believe

8   she would be a material witness on this.  She wouldn't have,

9   by any stretch, the most knowledge of the reg.

10      And I want to revisit the reg issue later in terms of who

11  we can produce.

12      The regs are typically prepared by counsel, and Ms. Maloy

13  was a commissioner.  And moreover, there are very particular

14  issues that Your Honor has identified in your order, and

15  those particular issues are notice and comment and whether it

16  complied with two subsections of -- what is it? -- Section

17  553.  And we can tell you that those two subsections aren't

18  even part of the code that the IRS would rely on for issuance

19  of a reg.  She's not going to have any knowledge of that.

20      In terms of arbitrary and capricious, again, these

21  regs are prepared by counsel.  That's really a question for

22  review of the IRS administrative record, and that's basically

23  what we're going to have to produce for this hearing with

24  respect to that.

25      And with respect to the timing of a Quinn Emanuel

1    contract --

2          THE COURT:  Mr. Weaver, let me interrupt you for just

3    one second.  Our connection with you isn't the best.  I need

4    you to speak up a little bit.  I'm having trouble and I

5    believe our court reporter is having trouble following and

6    tracking your words as well.  Maybe you can slow down a

7    little bit and speak a little better into the receiver.

8          MR. WEAVER:  Yes, Your Honor.  Can you hear me now?

9          THE COURT:  Yes, that's a little better.

10         MR. WEAVER:  Okay.  All right.

11     So in terms of the issuance of a reg, there's just not a

12    lot to be had there.  And at this stage, Your Honor should be

13    making some sort of determination about whether there is

14    enough evidence to go forward, not circling around to all

15    possible witnesses here.  She's a high-level official.  And

16    so that's what I have to say about the reg.

17         Now let's talk about the designated summons.  Contrary to

18    what Ms. Eakes said, that is not a matter for the evidentiary

19    hearing.  You did not identify that in your order as

20    something to take evidence on.

21         Moreover, as we understand it, she was fully briefed on

22    the issuance of the designated summons, as she would have to

23    be.

24         But that's about it.  And as I understand -- now, I just

25    have made an appearance in this case very recently, but I

 1   believe the understanding of our trial team, per Mr. Rosen,

 2   is that that issue is being taken off the table.  Whether

 3   that's the other side's understanding or not, I don't know.

 4       But, again, we've spoken with Ms. Maloy.  And other than

 5   just doing what an executive would do, the person who's going

 6   to have the most knowledge about the whole summons issuance

 7   process is Mr. Hoory, and he will be available for

 8   cross-examination at will for Microsoft.

 9       Finally, with respect to Quinn Emanuel, again, let's take

10   a look at what Your Honor has identified in your order.

11       What's at issue is Quinn Emanuel's role and whether

12   somehow Quinn Emanuel's role, to date, would create some sort

13   of a different process if Your Honor enforces the summons.

14       Mr. Hoory can testify to each of the issues with respect

15   to Quinn Emanuel's role in this.  And, again, surely

16   Ms. Maloy was undoubtedly briefed as an executive.  We're not

17   saying she has no knowledge, but it would be secondhand

18   knowledge.  And here, at this preliminary stage, it ought to

19   suffice for you to hear from Mr. Hoory.

20       And I would add that the same things on that point, like

21   they have reason to believe that Ms. Maloy would be involved,

22   there's no evidence that she would have material testimony as

23   to any purported bad faith here.

24       So she is going to, as we understand it, no longer be

25   employed by the government after July 10th, and at this point

 1  it's our position that Your Honor should hear out what

 2  Mr. Hoory has to say on these issues, and there's really no

 3  need for Ms. Maloy to be involved at this point.

 4          MS. EAKES:  May I respond, Your Honor?

 5          THE COURT:  Yes, in one second, Ms. Eakes.  All

 6  right, Mr. Weaver.  That's your argument as to that issue?

 7          MR. WEAVER:  Yes, Your Honor.  I would just add that

 8  the case law pretty much contemplates, I think, for these

 9  kinds of hearings, that it's the testimony of the revenue

10  agent that matters.  That's the person who can really speak

11  to whether a summons has been issued for the proper person.

12  And so at this stage, before we get to any need for

13  discovery, we believe you ought to evaluate what Mr. Hoory

14  has to say.

15          THE COURT:  All right.  Thank you.

16      Ms. Eakes, now.

17          MS. EAKES:  Thank you, Your Honor.  Patty Eakes.

18      I guess the thing I'd say is that the government is

19  acknowledging that Ms. Maloy has knowledge and that she had

20  input into this issue before the court, including the

21  temporary regulation.  They say she's just not the most

22  knowledgeable person.  However, you know, from Microsoft's

23  position, first of all, she has knowledge.  That's what we'd

24  like to find out about.  And I don't think that Microsoft

25  should be in a situation of simply having to take the IRS's

 1   word for the fact that she's not the person who is most

 2   knowledgeable.

 3        Also, I'd note that we don't know because they haven't

 4   identified who is most knowledgeable about the temporary

 5   regulation, and, in fact, the email communications have

 6   indicated they may or may not be calling additional

 7   witnesses.

 8        So Microsoft is in the position of we have the burden of

 9   proof in this hearing, and we asked for the hearing, and we

10   want to make sure that we're able to examine the people that

11   we believe need to be examined with respect to these issues

12   in order to meet the burden that the court set out for us.

13             MR. WEAVER:  Your Honor, this is James Weaver.  May I

14   briefly add a comment or two?

15             THE COURT:  Very brief.

16             MR. WEAVER:  Well, first, I think what Ms. Eakes is

17   asking for here is discovery.  And a summons enforcement

18   proceeding is an unusual proceeding.  It's not like a regular

19   court case in that Congress set this up just to ensure that

20   there is some protection against abuse of process.

21        But, here, what we're seeking is information.  The idea is

22   to proceed and move along, and then we get to what really is

23   at issue, which is getting information to the IRS so that the

24   IRS can do its job.  And at this stage, I think it's more

25   than sufficient to hear from Mr. Hoory on all these topics.

1    But we will address, when we get to some other issues, who we

2    might be able to produce with respect to some of the

3    regulation issues that Your Honor raises in his order.

4            THE COURT:  All right, counsel.  Thank you.

5        All right.  Let me move to the second issue, the

6    disclosure of anticipated witness testimony.  I don't know

7    who is going to be addressing this from Microsoft's

8    perspective.  Ms. Eakes, is that going to be you?

9            MS. EAKES:  It is, Your Honor.

10           THE COURT:  All right.  Do you have any legal basis

11   for asking for this exchange of -- I'm not sure what you mean

12   by "fairly detailed summaries of testimony."

13           MS. EAKES:  Well, I think that the court has, you

14   know, broad discretion in order to kind of order proceedings

15   and discovery in the context of these kind of cases.  I mean,

16   really all we're asking for is something that makes the

17   process most efficient in terms of moving forward for

18   purposes of the evidentiary hearing.

19       I mean, as the court knows, we've already submitted

20   extensive declarations that, essentially, are serving as what

21   one might call the direct testimony of the witnesses.  And

22   for purposes of the efficiency for the court, we thought the

23   witnesses being produced would, essentially, be subject to

24   cross-examination.

25       So all we want is to have -- is to be prepared so that we

1  can make best use of the court's time, which is why we

2  initially suggested to the IRS that they submit declarations

3  of whoever, if any, additional witnesses they're going to be

4  calling.

5      And, again, we're not asking for discovery.  In order to

6  be efficient in cross-examining people, we need to understand

7  what they're going to say, and whether that's by way of

8  declaration or some sort of a summary, we're flexible, and

9  defer to the court on that.  We're simply looking for

10  something more than what the IRS has said, which is one or

11  two sentences with respect to these witnesses, who, as of

12  this date, remain unidentified.  That puts Microsoft in a

13  very difficult position in order to be prepared and to use

14  the limited time that we have before the court to develop the

15  testimony we think is necessary.  So that's all we're asking

16  for.

17          THE COURT:  All right.  Anything else from the IRS on

18  that?

19          MR. WEAVER:  Yes, Your Honor.  A couple of things.

20  First, I would just add that it's my understanding from my

21  co-counsel here that we were not aware that the court had

22  decided that declarations would be submitted in lieu of live

23  testimony.  As a matter of fact, it is our intention to

24  supplement Mr. Hoory's declaration at the hearing with some

25  additional information that relates to the specific topics

1    Your Honor identified in his order.

2        And I would also note that I believe Microsoft had

3    replied, and raised those issues in the reply, to the 6103

4    issues, confidentiality issues, that Mr. Hoory will have an

5    opportunity to address.  It is our intention to have some

6    direct testimony from Mr. Hoory.

7        Now, with respect to other witnesses, maybe I can

8    alleviate some of Microsoft's concerns here, Your Honor.

9        First, you know, a couple of sentences would be stretching

10   it.  We're happy to provide a short paragraph.  But the short

11   of it is, Mr. Hoory will be the government's witness with

12   respect to all of the issues on page 8, the Quinn Emanuel

13   issues that Your Honor has identified.

14       So now let's turn to the other issues, which, quite

15   frankly, are giving counsel for the government some

16   difficulty in figuring out how we're going to comply with the

17   court's order and with the DOJ procedures, and present and

18   address the topics that Your Honor has raised.

19       So I see three issues for potential testimony here,

20   identified on page 7 of Your Honor's order.  The first one

21   has to do with whether or not the temporary regulations

22   satisfied one of the exceptions in the APA for issuance

23   without notice and comment.  And that's one issue.

24       The second issue is whether it was issued in an arbitrary

25   and capricious manner without reasonable analysis.

1    So, Your Honor, it turns out, and, you know, we're not the

2    experts in the DOJ to do this, but it turns out that

3    challenges to regulations, which occur frequently, are

4    handled by courts -- typically handled by courts and

5    certainly handled here at DOJ via DOJ policy in a manner

6    whereby judicial review of a regulation is made through

7    submission of the administrative record for that regulation

8    or other administrative decision, not on some sort of a new

9    record created through live testimony during a hearing.

10    And so it is our intention, Your Honor, to submit the

11    administrative record.  We've asked the IRS to try to give us

12    that by the end of the week so that opposing counsel would

13    have it.  But that will essentially be -- it will be

14    certified, I believe.  That will be our testimony, and really

15    the only testimony I think that we're permitted to offer on

16    the first two of the regulatory issues identified in Your

17    Honor's order.

18    The third issue has to do with the timing of the issuance

19    of a regulation in contrast to the date of the contract with

20    Quinn Emanuel and whether that raises an inference of

21    improper motive.

22    And, Your Honor, virtually everyone who is involved in the

23    promulgation of a regulation -- I shouldn't say virtually

24    everyone, but the important players are all attorneys, and so

25    we are really struggling to try and figure out if there is a

way where we can tell a very limited story that will
demonstrate to the court, we believe, that the regulation was
not issued with any sort of improper motive or improper
purpose, that it did not go into either a deliberative
process or some sort of attorney-client privilege.

     And so we are still trying to figure out if we can produce
someone.  It is our intention to try and produce someone.
We're going to have that nailed down in a couple of days.
But let me assure Your Honor that if we do produce testimony
on that third point, it would be very limited.  A short
paragraph summary of that testimony, we'll be happy to make
available to Microsoft, succinctly summarized, but it would
not be a very long direct exam at all.  And we might need to
get some sort of protective order from the court or -- and
Microsoft's counsel that somehow having an attorney testify
as to the purpose of the regs and whether there's an
intersection with the audit of Microsoft, that would somehow
waive subject matter privilege over what is being addressed.

     So it is a thorny issue.  If we produce somebody, it will
be a very short examination.  It will not be, like
Mr. Hoory's testimony is expected to be, extensive, and
therefore, Your Honor, we don't believe that anything other
than a short statement will be required.  And we anticipate,
if there are any additional witnesses other than Mr. Hoory,
it will be one person.

 1          THE COURT:  All right, Mr. Weaver.  Thank you.

 2          MS. EAKES:  May I respond, Your Honor, briefly?

 3          THE COURT:  Briefly, Ms. Eakes.

 4          MS. EAKES:  Thank you.

 5      Well, first of all, so the court is aware, this is the

 6   first time that Microsoft has heard of this process and the

 7   way that Mr. Weaver has laid out what he believes is the

 8   proper level of review.  It's my understanding that the

 9   review is not limited to the administrative record when it

10   involves allegations of bad faith or improper purpose.

11      So I just want to make it clear, we don't agree that that

12   is, in fact, the proper level or proper procedure for

13   reviewing this temporary regulation.

14          MR. ROSEN:  Your Honor, this is Mr. Rosen for

15   Microsoft.  May I add one additional point?

16          THE COURT:  Yes.

17          MR. ROSEN:  Thank you, Your Honor.

18      Mr. Weaver said on a couple of occasions that the process

19   of drafting regulations is a process involving lawyers, and

20   IRS examiners, agents, and executives, and I would agree that

21   that is normally the case.  But the documents that the

22   government has produced to us under FOIA last week reflect

23   that.  In fact, Mr. Hoory and others, who are not attorneys

24   in the IRS chief counsel's office, were directly involved in

25   the process giving rise to these regulations.

1    So I think that's an important fact, and a fact that I

2    wanted to bring to the court's attention, and what we intend

3    to put before Your Honor at the evidentiary hearing.

4            MR. WEAVER:  Your Honor, this is James Weaver.  If I

5    could just briefly respond to that?

6            THE COURT:  You may.

7            MR. WEAVER:  If I created any confusion, the process

8    is driven by attorneys.  Certainly the stakeholders, who are

9    going to be governed by the regulations, have input, and

10   certainly I wouldn't deny that.  That's not out of the

11   ordinary.

12           THE COURT:  All right, counsel.  Thank you.

13           MR. WEAVER:  I'm sorry.  They're circulated.

14           THE COURT:  Mr. Weaver, say that again.

15           MR. WEAVER:  Yeah.  The proposed regs are circulated

16   among folks like Mr. Hoory.  That's not unusual.

17           THE COURT:  Certainly.  All right.  Thank you.

18     Counsel, we're going to put you on hold for just about

19   three minutes or so, and then we'll come back and I'll give

20   you exactly the court's ruling on these particular issues,

21   and then also the additional guidance that was requested in

22   terms of the material submitted by the government in this

23   particular case.  And we can talk a little bit about the

24   procedural aspects of how we will -- that we will follow

25   during the hearing itself.  All right?  So bear with us for

1    about three minutes, at most.

2                       (Brief recess.)

3         THE COURT:  All right.  Counsel, we're back in

4    session.  The court reporter is present.

5         All right.  Let me started off by saying that this is an

6    unusual proceeding.  The purpose, if you saw the order that

7    the court produced previously, is basically to make a

8    determination as to whether or not Microsoft can make the

9    necessary showing to convince the court that further

10   discovery is warranted here, and it is a very different type

11   of proceeding that we don't normally engage in.

12        So in terms of the first two issues that we discussed,

13   whether or not Ms. Maloy, or Commissioner Maloy, should be

14   made available as a witness, the court is going to decide

15   that, no, she does not have to be a witness, at least at this

16   particular point in time; that Mr. Hoory, being a live

17   witness present, will be sufficient, at least for now.

18        In terms of the second issue regarding sharing of the

19   substance of the potential testimony in advance, the court is

20   going to rule that the IRS' proposal of exchanging witness

21   lists, with a short description, by July 10th, will be

22   sufficient.

23        All right.  Let's talk about some of the procedural

24   aspects of this.

25        The IRS or the government actually pointed to several

1   areas in which they were asking for guidance from the court,

2   so let me take those exactly as set out in the government's

3   materials that were submitted.

4        The first one is how the court will treat the declarations

5   and the exhibits already filed.  Counsel, the court will look

6   at those exhibits and declarations, and we don't have to have

7   testimony about them, if you don't want to.  If there's

8   anything you want to clarify, that's perfectly fine, but

9   we'll accept those and take a look at them for whatever value

10  there may be in the court making this particular decision,

11  and that, obviously, includes the administrative record, the

12  certified copy of the administrative record.

13       And while I'm thinking about that, I will ask the

14  government to make that available to Microsoft as soon as the

15  government comes into possession of it as well.

16       Whether or not the court anticipates the parties giving

17  opening statements and closing summations, yes, I think it

18  would be helpful.  I would like to know your thinking before

19  we get going into this hearing, because it is such an unusual

20  proceeding in terms of where you intend to go, and at the end

21  I would love to hear what the parties believe the factual

22  testimony has, in fact, shown in view of the issues that the

23  court is going to have to decide in this particular case.

24       So I propose that they be fairly short.  I don't need them

25  to be very long.  I would say no longer than 15 minutes.  15

1    minutes for opening and 15 minutes for closing, for a total

2    of 30 minutes for both.

3        The other question is whether or not the court anticipates

4    the need for post-hearing briefing.  I don't know at this

5    point in time.  I'm not sure.  If you're asking me to guess

6    at this point in time, I would probably say I don't believe

7    so, but based on the testimony that may come out, and based

8    on the factual questions that may be addressed, there may be

9    a need for some sort of legal briefing.  And if so, the court

10   will then advise the parties by further contact later on.

11   Probably -- well, definitely by email.

12       The next issue or question is whether or not the court

13   would relax the rules of evidence for purposes of this

14   summary proceeding.  The response to that is yes, to a

15   limited degree.  By that I mean it's still obvious that

16   Microsoft needs to meet the standard set forth in the order

17   granting the hearing to begin with.  But, yes, in terms of

18   strict adherence to the rules of evidence, no.  So we'll be

19   willing to look at things -- at any other hearing, we'd say,

20   no, you have to have live witnesses on -- for example, on

21   some hearsay issues or anything else like that.

22       And, finally, I think the last area was whether or not the

23   parties should file in the record the witness and exhibit

24   lists by July 10th.  Yes, I think that would help me in my

25   preparation.  We don't need anything extensive, just,

| | |
|---|---|
| 1 | basically, the names and any potential exhibits that you |
| 2 | think you may be presenting. |
| 3 | All right.  Does that answer all of the issues in terms of |
| 4 | the procedural issues? |
| 5 | MR. WEAVER:  Your Honor, James Weaver.  One other |
| 6 | question. |
| 7 | In addition to filing the exhibit list on the 10th, would |
| 8 | it be advisable or useful to set a date for exchanging |
| 9 | exhibits prior to the hearing, with opposing counsel? |
| 10 | THE COURT:  What would you propose, Mr. Weaver? |
| 11 | MR. WEAVER:  The 17th would work for the government, |
| 12 | Your Honor. |
| 13 | THE COURT:  I think Microsoft might want them a |
| 14 | little earlier.  Ms. Eakes, what is your proposal? |
| 15 | MS. EAKES:  Yes.  I say no later than the 13th. |
| 16 | THE COURT:  Madame Clerk? |
| 17 | THE CLERK:  It's the Monday before the hearing.  The |
| 18 | hearing is on the 21st, so Monday the 13th is what she is |
| 19 | proposing, and the hearing is on Tuesday the 21st. |
| 20 | MR. WEAVER:  Your Honor, James Weaver.  Can I make a |
| 21 | suggestion? |
| 22 | THE COURT:  Yes. |
| 23 | MR. WEAVER:  Would it be possible for -- if we go for |
| 24 | an earlier date, at least Tuesday or Wednesday, so that we |
| 25 | would have a chance to FedEx the materials after getting them |

1   together.  We'll put them together on Monday, in terms of

2   copying, all that kind of thing.  Unfortunately, the

3   attorneys do a lot of the work here on that.  So if

4   possible -- the Tuesday or Wednesday would be preferable, if

5   not the 17th, Your Honor.

6           THE COURT:  All right.  Let's go with by the end of

7   the day on Tuesday the 14th.  All right?

8           MR. WEAVER:  Yes, Your Honor.

9           THE COURT:  Anything else we can help you with today?

10          MR. WEAVER:  James Weaver.  No, Your Honor.  I think

11  that covers what we had here.

12          THE COURT:  All right.  And then from Microsoft?

13          MS. EAKES:  Patty Eakes.  No.  Thank you very much,

14  Your Honor.

15          THE COURT:  All right.  Counsel, just to give you a

16  little bit of information as well.

17      We've already had the press contacting us about this

18  particular case, and if that impacts whether or not you wish

19  to have some sort of agreement amongst yourselves, some

20  stipulation regarding exhibits, materials, whatever you're

21  going to present, just be aware the press is quite aware of

22  this, and they've contacted us to make sure that the hearing

23  is still on.  They were concerned about today's contact

24  between the court and the parties.  In fact, they asked if

25  they could be a part of it, and the court said no because

1    it's simply a scheduling issue.  We'll be discussing things

2    that will impact the hearing on the 21st, but nothing that

3    would be open to the public.  But just to let you know, if

4    that raises any issues amongst yourselves, you might want to

5    discuss it prior to our hearing on the 21st.

6         So thank you all very much.  We'll be in recess.

7

8                    (THE PROCEEDINGS CONCLUDED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 8th day of July 2015.

/S/  Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter