# EXHIBIT 13



**Part 1. Organization, Finance, and Management**

**Chapter 2. Servicewide Policies and Authorities**

**Section 13. Policy Statements for the Examining Process**

**1.2.13 Policy Statements for the Examining Process**

- 1.2.13.1  Introduction to Examining Process Related Policy Statements
- Exhibit 1.2.13-1   All Active Policy Statements for the Examining Process

**Manual Transmittal**

March 27, 2014

**Purpose**

(1) This transmits revised IRM 1.2.13, *Servicewide Policies and Authorities, Policy Statements for the Examining Process.*

**Material Changes**

(1) This IRM is revised to include to following new policy statement:

- IRM 1.2.13.1.37. P-4-120, *Policy Regarding Requests for the Content of Email Communications under the Electronic Communications Privacy Act and the Stored Communications Act.*

(2) *IRM 1.2.13.1* has been revised to correct the link to the recently revised policy statements posted on IRS.gov.

(3) *IRM 1.2.13.1.3* has been modified to make the table comply with usability parameters. The content is not altered.

**Effect on Other Documents**

This supercedes IRM 1.2.13 dated July 30, 2012.

**Audience**

All Divisions and Functions

**Effective Date**

(03-27-2014)

Kathryn A. Greene
Director, Servicewide Policy, Directives
and Electronic Research

**1.2.13.1  (03-27-2014)**
**Introduction to Examining Process Related Policy Statements**

1. This IRM contains the Policy Statements of the Examining Process activities. Distribution of the IRM should be to all persons having a need for any of the Policy Statements. Policy Statements apply to all Service personnel involved in the type of program, activity, function, or work process they cover.
2. An initiative is underway to completely overhaul the Commissioner's Policies. Some of them exceed 40 years old and due to changes in IRS climate and technological advancements, no longer serve their original intended purpose. The Office of the Chief Counsel and the Office of Servicewide Policy, Directives, and Electronic Research (SPDER) are working with the division and functional owners of the policy statements to determine which ones are still current, which ones should be cancelled, and which ones need revision.
3. Any Policy Statement approved after this revision of IRM 1.2.13 is posted to IRS.gov and can be accessed through the FOIA Reading Room web site (http://www.irs.gov/uac/Electronic-Reading-Room) under the heading "Recent Delegation Orders and Policy Statements." They will remain on the web until the next revision is made to this IRM.

    **Note:**

    If any Policy Statements have been inadvertently omitted from this Section they are still considered official and in full force and effect. Please send any discrepancies found to spder@irs.gov.

**1.2.13.1.1  (12-21-1984)**
**Policy Statement 4-3**

1. **Cases closed by District Directors or Service Center Directors will not be reopened except under certain circumstances**
2. The Service will not reopen any case closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer unless:

    1. there is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact;

2. the prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or

3. other circumstances exist which indicate failure to reopen would be a serious administrative omission.

3. **Certain contacts not considered as examinations or reopenings**

4. Contacts with a taxpayer to verify or adjust a discrepancy between the taxpayer's tax return and information returns, including late or amended returns, are not examinations or reopenings. For this purpose, information returns include returns and amended returns filed by partnerships, fiduciaries, and small business corporations.

5. A contact to verify a discrepancy disclosed by an information return matching program may include inspection of the taxpayer's books of account, to the extent necessary to resolve the discrepancy, without being considered an inspection within the meaning of section 7605(b) of the Code.

6. A contact with an investor to verify the accuracy of, or the need for, a Tax Shelter Registration number is not an examination within the meaning of Section 7605(b) of the Code. To the extent that the contact is to determine the need for a Tax Shelter Registration number, the information sought would be limited to obtaining the name and address of the promoter.

7. The adjustment of an unallowable item, or an adjustment resulting from other types of service center return correction programs, is not considered an examination. Therefore, a subsequent examination does not constitute a reopening of a case closed after examination.

8. **Authorization of reopenings**

9. All reopenings require prior approval by the Chief, Examination Division (District Director if there is no Chief, Examination Division), Chief, Employee Plans and Exempt Organizations Division, or Chief, Compliance Division, for cases under his/her jurisdiction.

10. **Authorization of additional inspection of books of account**

11. If an additional inspection of the taxpayer's books of account is necessary, the notice to the taxpayer required by section 7605(b) of the Code must be signed by the Chief, Examination Division (District Director if there is no Chief, Examination Division), Chief, Employee Plans and Exempt Organizations Division, or Chief, Compliance Division, for cases under his/her jurisdiction, and may not be redelegated.

**1.2.13.1.2  (01-05-1979)**
**Policy Statement 4-4**

1. **Income tax examination will include consideration of taxpayer's liability for employment tax**

2. Employment tax returns of a business taxpayer will be considered for examination at the same time that his/her income tax return is examined. If the examiner determines a need to examine the employment tax returns, such examination will be made concurrently with the income tax examination and generally will cover the same taxable period.

3. **Every examination to include check for filing of other Federal tax or information returns**

4. Examiners will determine during the examination of any return whether the taxpayer is filing or has filed all of the other Federal tax or information returns he/she is required to file.

**1.2.13.1.3  (02-09-2006)**
**Policy Statement 4-5**

1. **Restrictions on Examiners' and Specialists' Consecutive Survey or Examination Responsibilities**

2. **Restrictions on examiners' (defined as including both domestic and international) and specialists' consecutive examination or survey of taxpayers**

3. An examiner or specialist may not examine or survey a tax return of a taxpayer for more than 5 consecutive years (60 months) from date of assignment. If the examination is in process at the 5 consecutive year point, the examiner or specialist is allowed to complete the examination provided the current cycle or audit has less than 12 months remaining from the 5 consecutive year point. An examiner or specialist will not be reassigned to the same taxpayer for at least 1 intervening examination or 2 intervening surveys.

4. For LMSB and TE/GE taxpayers, an examiner's or specialist's assignment of 25 staff days or less is not considered part of the examination (not to include survey actions) for purposes of application of this Policy Statement. SB/SE Area and Specialty Programs Directors, LMSB Industry Directors, and TE/GE Directors are responsible for approval of any deviation requests in advance, before initiating a new survey or examination. A deviation is 1 examination. The LMSB International Examiner's Industry Director will approve deviation requests for international examiners. In situations that involve LMSB field specialist examiners, the Director, Field Specialists will be the approving official who signs the deviation.

5. **Restrictions on an LMSB Team Manager's and TE/GE Team Examination Manager's engagement on consecutive examinations or surveys of LMSB taxpayer returns or a taxpayer's return included in a TE/GE Team Examination Program**

6. LMSB Team Managers and TE/GE Team Examination Managers should not be engaged in the examination or survey of an LMSB taxpayer or a taxpayer included in a TE/GE Team Examination Program for more than 5 consecutive years (60 months) from date of assignment. If the examination is in process at the 5 consecutive year point, the manager is allowed to be engaged in the examination provided the current cycle has less than 12 months remaining from the 5 consecutive year point. LMSB Team Managers and TE/GE Team Examination Managers will not be reassigned to the same taxpayer for at least 1 intervening examination or 2 intervening surveys.

7. Specialty Team Managers, including International Team Managers, are excluded when they are performing normally recurring responsibilities as specialty managers and international managers. However, if a specialty team manager or international team manager is serving in the capacity as a team case manager, they are subject to the Policy Statement P-4-5 rotation requirements of LMSB team managers.

8. **One Deviation Limit**

9. In the case of LMSB Division-initiated deviations that are described in sections above, there will be a limit of one deviation per employee per case that may be approved by the Industry Director or Director, Field Specialists.

10. In the case of SB/SE and TE/GE Division-initiated deviations that are described in paragraphs (2) and (5) above, there will be a limit of one deviation per employee per case or audit that may be approved by the appropriate SB/SE and TE/GE Director.

11. In the rare instance(s) in which additional deviations are required for the same employee(s) for effective tax administration, those deviations will be approved by the Deputy Commissioner for Services and Enforcement.

12. **Monitoring responsibilities**

13. Group Managers in SB/SE, Team Managers in LMSB, and Team Examination Managers in TE/GE will monitor case or return assignments to examiners to ensure that proper case or return rotation practices are followed. Industry Directors will monitor assignment of Team Managers on LMSB cases. TE/GE Directors will monitor assignment of TE/GE Team Examination Managers on TE/GE Team Examination Program cases. In situations that involve LMSB field specialist examiners as defined in sections (1) and (2) above, the Director, Field Specialists will monitor case assignments to field specialist examiners to ensure that proper case rotation practices are followed.

14. **Restrictions on changes in post of duty of employees solely for case rotation**

15. An employee will not be required to involuntarily transfer from a post of duty solely for case or return rotation purposes unless no reasonable alternative exists. However, changes in posts of duty of an examiner or a specialist may be made when staffing imbalances or other needs of the Service require such action in accordance with applicable IRM and National Agreement provisions.

16. The following table (Approval Authority Matrix) summarizes specific approval authority for deviation requests according to Operating Division (LMSB, SB/SE, and TE/GE).

**Approval Authority Matrix**

|  | LMSB | SB/SE | TE/GE |
|---|---|---|---|
| Domestic | Industry Director | Area Director | Director |
| International | Industry Director | Director, Specialty Programs | Director |
| Field Specialists/Specialty Examiners | Director, Field Specialists | Director, Specialty Programs | Director, Field Specialists (LMSB) |

**1.2.13.1.4  (03-16-1959)**
**Policy Statement 4-6**

1. **Examiner may not examine return if relationship impairs impartiality**
2. Examiners will not examine or survey the returns of taxpayers with whom they have had a business or social relationship of a nature that might impair their impartiality and independence.

**1.2.13.1.5  (12-23-1960)**
**Policy Statement 4-7**

1. **Impartial determination of tax liability**
2. An exaction by the United States Government, which is not based upon law, statutory or otherwise, is a taking of property without due process of law, in violation of the Fifth Amendment to the United States Constitution. Accordingly, a Service representative in his/her conclusions of fact or application of the law, shall hew to the law and the recognized standards of legal construction. It shall be his/her duty to determine the correct amount of the tax, with strict impartiality as between the taxpayer and the Government, and without favoritism or discrimination as between taxpayers.

**1.2.13.1.6  (03-13-1966)**
**Policy Statement 4-8**

1. **Removal of books, records and documents to a Service office**
2. Books, records and other documents may be removed to a Service office for examination when the person furnishing them agrees to such action. A receipt shall be issued for all books, records and other documents so removed and they should be retained only for such time as may be reasonably necessary, under all the circumstances, to effect the purpose for which they were obtained.

**1.2.13.1.7  (05-03-1994)**
**Policy Statement 4-9**

1. **Highest integrity expected**
2. The public expects the highest degree of integrity in tax matters on the part of all Service employees. To this end, the Service has established a comprehensive employee tax compliance program. Employee accounts will be subjected to examination, underreporter, and annual delinquency-check procedures.
3. **Computer screening of employee returns to be part of regular returns classification program**
4. The returns of all Service employees, regardless of grades or position, will undergo the same initial computer screening process and the same classification procedures that are applicable to all individual income tax returns. However, in order to ensure impartiality and independence, the classification of employee returns will not be performed by subordinates, associates or co-workers in the same post of duty.
5. General rules apply in the examination of employee returns. The general rules relating to examinations, proposed changes, appeal rights, etc., will apply to Service employees to the same extent that they apply to all other individual taxpayers.
6. **Survey procedures apply to employee returns**
7. Survey procedures are applicable to service centers, district offices, and the Austin Compliance Center. Once a Service employee's return has been selected for examination and assigned to a group, it can only be surveyed with the written approval of the Chief, Compliance Division, in service centers; and the Chief, Examination Division, or equivalent position, in district offices and the Austin Compliance Center.
8. **Mandatory review**
9. Written surveys and examinations of Service employees' returns will be subject to mandatory review.
10. **Responsible official to oversee program**
11. To ensure the comparability between the treatment of Service employees and tax compliance issues and the treatment of all taxpayers and tax compliance matters, a coordinated effort is required on a national basis by all executives with the responsibility for overall coordination by the Chief Management & Administration. An annual report will be submitted to executive management summarizing the results of the Service's employee tax compliance efforts.

**1.2.13.1.8  (06-08-1960)**
**Policy Statement 4-10**

1. **Service ordinarily will not intervene in litigation in State courts between private litigants; exceptions provided**
2. The Service ordinarily will not intervene in litigation in State courts between private litigants even though the purpose of the parties is to obtain a decree or judgment affecting Federal tax liability of one or the other of the parties to the litigation. In those cases arising in State courts between private litigants, to which officials of the Service have not been made a party but which may be a direct bearing upon the construction of a Federal internal revenue statute or upon the Government's title or right to possession to property which has been seized or distrained upon, the Service may intervene or take other appropriate steps in connection with the proceeding.

**1.2.13.1.9  (06-29-1976)**
**Policy Statement 4-11**

1. **Initiation of examinations may be postponed in certain cases**
2. Where business or personal activities of an individual taxpayer would be adversely affected by the immediate initiation of an examination, such action may be postponed for a reasonable period. Except in unusual cases, as for example where the examiner has knowledge that the taxpayer has suffered a recent personal tragedy, the initial contact should not be deferred since the taxpayer must show that the taxpayer's activities would be adversely affected by an early examination. In addition, if the personal participation of an individual such as a particular employee, attorney or accountant is essential to the examination and business or personal activities of that individual at that particular time would be seriously affected, the examination may be postponed for a reasonable time. However, any postponement beyond 60 days must be approved by the group manager. No postponement will be permitted or continued under this policy if such action would jeopardize the assessment or collection of tax.

**1.2.13.1.10  (06-01-1974)**
**Policy Statement 4-21**

1. **Selection of returns for examination**
2. The primary objective in selecting returns for examination is to promote the highest degree of voluntary compliance on the part of taxpayers. This requires the exercise of professional judgment in selecting sufficient returns of all classes of returns in order to assure all taxpayers of equitable consideration, in utilizing available experience and statistics indicating the probability of substantial error, and in making the most efficient use of examination staffing and other resources.

**1.2.13.1.11  (10-05-2005)**
**Policy Statement 4-26 (Formerly P-4-84)**

1. **Criminal and civil aspects in enforcement**
2. The purpose of criminal and civil tax investigations is to enforce the tax laws and to encourage voluntary compliance. Experience has demonstrated that attempts to pursue both the criminal and the civil aspects of a case concurrently may jeopardize the successful completion of the criminal case. It is, therefore, necessary in the interests of criminal enforcement of the law, to identify those instances when criminal actions generally will take precedence over the civil aspects. To successfully curtail the spread of abusive tax schemes and the incumbent loss of revenue caused by such schemes, it is also necessary to identify those instances where civil and criminal actions should be coordinated to stop abusive promoters and return preparers.
3. **Civil enforcement actions on taxable periods of the same and other types of tax not involved in the criminal investigation**
4. Civil enforcement actions, including enforced collection activity, with respect to taxable periods of the same and other types of tax **not included** in the criminal investigation generally do not imperil successful criminal investigation or subsequent prosecution. Therefore, civil enforcement actions for tax liabilities for such other taxable periods or different types of tax for the same periods will proceed concurrently unless there is agreement between the responsible functions to withhold civil action in whole or part during the pendency of the criminal investigation. The responsible functions must coordinate any proposed enforcement action to minimize any adverse consequences. Coordination meetings should be held as frequently as needed and, at a minimum, quarterly.
5. This section also applies to the income tax examinations of persons participating in a tax scheme promoted by the subject of a criminal investigation. Although the participants' income tax examinations should proceed concurrently with the promoters' criminal investigations, the civil examiners should keep the criminal investigators apprised of anticipated actions . The civil examiners and criminal investigators, through their respective counsel, will discuss any civil actions that they believe may imperil a successful criminal investigation or subsequent prosecution.
6. If Criminal Investigation (CI) , the Division Compliance functions, and their respective Counsel cannot reach agreement to proceed concurrently, resolution will be by elevation to the next level of management. If an executive champion has been assigned to the issue, the champion should also be involved in this process. The first step would be at the Territory Manager and Special Agent in Charge (SAC) level, the second step would be at the Area Director/ Director, Field Operations and the CI Director of Field Operations (DFO) level, and the final step would be at the Compliance Director/ Division Commissioner and the Chief, Criminal Investigation level. If agreement cannot be reached, the Deputy Commissioner, Services and Enforcement, will decide if civil action should be withheld. At each level at which the disagreement is considered, the appropriate Counsel offices will also be involved in the deliberations.
7. **Civil enforcement actions on matters involved in criminal investigation**
8. Civil enforcement actions with respect to the same taxable periods and same types of taxes for those periods included in the criminal investigation may imperil subsequent prosecution. Therefore, the consequences of civil enforcement actions on the criminal investigation and prosecution case should be carefully weighed. If CI, the Division Compliance functions, and their respective Counsel cannot reach agreement on proceeding, resolution will be by elevation to the next level of management using the steps described in the previous section. However, there generally should be no suspension of collection action on assessed amounts of tax liabilities reported on filed returns.
9. **Civil and criminal enforcement actions to stop abusive promoters and return preparers**
10. Civil Promoter Penalty examinations and injunctions against promoters of abusive tax avoidance transactions and tax return preparers should not ordinarily be delayed because of the existence of a criminal investigation or proceeding. The purpose of civil injunctions is to quickly stop promoters and preparers from selling abusive tax avoidance transactions, thus curtailing the spread of illegal tax schemes and the loss of revenue caused by such schemes.
11. Civil and criminal functions of the IRS should consider the appropriate action(s) against the promoter or preparer that will stop the sale of the promotion or return preparation quickly. This may be accomplished by pursuing solely a criminal investigation, solely a civil investigation, or parallel civil and criminal investigations. The mere existence or possibility of a criminal investigation or referral should not automatically delay or forestall either an injunction investigation or an injunction referral to DOJ. Likewise, the existence or possibility of a civil injunction investigation or proceeding should not automatically forestall a criminal investigation.
12. If concerns are raised about the timing of a civil audit, investigation, or proceeding, or other objections to the criminal or civil investigation, those concerns or objections should be resolved by consultation among the civil and criminal agents and their supervisors, Counsel Attorneys and their managers. When the matter has been referred, the Department of Justice (DOJ) and/or United States Attorney's Office should also be included in the decision-making process.
13. When CI and the Division Compliance functions cannot reach agreement on how to proceed on the investigation, separate memoranda will be sent to the respective Territory Manager and Special Agent in Charge. The memoranda should summarize the facts of the open investigation, projected actions, and set forth the specific civil actions identified as roadblocks to a parallel investigation. If the Territory Manager and Special Agent in Charge do not reach agreement, they should involve the SB/SE LDC or LMSB Promoter Program Function and CI Financial Crimes for their assistance in resolution of the dispute. The SBSE LDC or LMSB Promoter Program will work with CI Financial Crimes and their respective operating division counsels to assist in resolution of the dispute.
14. If agreement is not reached, the Area Director/Director Field Operations and CI Director of Field Operations (DFO) will attempt to resolve the case issues. The next elevation level will be the SB/SE Director, Reporting Enforcement or the LMSB Industry Director (in consultation with the Promoter Program executive champion) and the CI Director, Financial Crimes. The Deputy Commissioner, Services and Enforcement is delegated as the final authority for the determination of the appropriate case action. At each level, the appropriate Counsel offices will also be involved in the deliberations.
15. **Operating divisions and functions involved in this process**
16. Although the specific provisions above focus on the cooperation between Criminal Investigation, SB/SE and LMSB operating divisions, this policy also applies to Internal Revenue Service functions not specifically mentioned, including but not limited to W&I, TEGE, and Appeals. All IRS functions will conduct civil/criminal coordination in a manner consistent with this policy statement.

**1.2.13.1.12  (08-13-2004)**
**Policy Statement 4-27 (Formerly P-4-86)**

1. **Rewards determined by value of information furnished and Computation and payment of rewards**

2. The Internal Revenue Service will pay claims for reward applied for on Form 211 commensurately with the value of the information furnished voluntarily and upon the informant's own initiative with respect to taxes, fines, and penalties (but not interest) the Service collects. The Service will pay Form 211 rewards as soon as administratively feasible after the Service collects the additional taxes, fines, and penalties. The Service will determine the amount of reward as follows:

    A. For specific and responsible information that caused the investigation or, in cases already under audit, materially assisted in the development or identification of an issue or issues and resulted in the recovery, or was a direct factor in the recovery, the reward shall be 15 percent of the amounts the Service recovers, with the total reward not exceeding $10 million.

    B. For information that caused the investigation or in cases already under audit, caused an investigation of an issue or issues, and was of value in the determination of tax liabilities although not specific, the reward shall be 10 percent of the amounts the Service recovers, with the total reward not exceeding $10 million.

    C. For general information that caused the investigation or investigation of an issue, but had no direct relationship to the determination of tax liabilities, the reward shall be 1 percent of the amounts recovered, with the total reward not exceeding $10 million.

3. **A combination of reward rates may apply in certain cases**

4. If the recovery is attributable to information that pertains to more than one of the above categories, the Service will apply the respective rates of reward.

5. The Service will not pay any reward if it is less than $100.00: No reward will be paid if the recovery was so small as to call for payment of less than $100.00 under the above formula.

6. **Grounds for rejecting claims:**

    A. Information furnished by informant was of no value

    B. The Service already knew the information or it was available in accessible public records.

    C. Where payment of a reward would be inappropriate; for example, when the informant participated in the evasion scheme or prepared the return for the taxpayer with knowledge that taxes were being evaded.

    D. Informant obtained, or furnished, the information while a Department of Treasury employee.

    E. Informant obtained the information as part of his/her official duties as an employee of any other Federal agency.

    F. Informant obtained or furnished the information while a State officer or member of a State body or commission having access to Federal returns, copies or abstracts.

    G. Payment would be contrary to State or local law.

**1.2.13.1.13  (02-02-1961)**
**Policy Statement 4-34**

1. **Closing of overassessment case to be withheld until deficiency of related taxpayer is established**

2. When adjustments are made which increase the tax liability of one taxpayer and the position taken in support of the adjustments requires as a matter of consistency that the tax liability of another taxpayer be reduced, the closing of the case of the taxpayer whose tax liability will be reduced will be withheld until the taxpayer whose liability has been increased agrees to the adjustments proposed and consents to the closing of the case on that basis, or until action by the United States Tax Court or other courts establishes the correctness of the adjustments.

**1.2.13.1.14  (02-02-1961)**
**Policy Statement 4-35**

1. **Appeals conclusion controlling in adjustment of related cases**

2. A conclusion reached by an Appeals official with respect to adjustment of items of income or deductions, the consistent treatment of which requires corresponding adjustments in the tax liability of another taxpayer, will be controlling upon the District Director having jurisdiction in the case of the other taxpayer.

**1.2.13.1.15  (02-02-1961)**
**Policy Statement 4-36**

1. **Identity of other government agency informants must be protected**

2. The source of income received by a taxpayer as an award for information furnished another Federal government agency will never be revealed in the examining officer's report or elsewhere in the administrative file, and the identity of the informant will be protected at all times.

**1.2.13.1.16  (03-26-1979)**
**Policy Statement 4-40**

1. **Early agreement primary objective**

2. It is the objective of the Service to obtain the greatest possible number of agreements to tax determinations without sacrificing the quality or integrity of those determinations, and to dispose of tax differences at the lowest level.

**1.2.13.1.17  (02-02-1961)**
**Policy Statement 4-41**

1. **Partial overassessments may be allowed in certain contested cases**

2. Except in cases requiring Joint Committee consideration, district Examination function partial overassessments may be allowed in contested cases where there is agreement as to overassessment issues or years, and the allowance of the partial overassessment will not jeopardize the Government's position with respect to other contested issues or years.

3. **Circumstances of allowance**

4. The allowance of a partial overassessment will not be made in every contested case, but only where the facts and circumstances are such that departure from the general practice of not making an overassessment until there has been a final determination of the entire tax liability, is warranted. Generally, partial allowances will be made only in cases falling within the following categories:

A. Cases for a specific year involving two or more tax-reducing issues;

B. Cases for a specific year involving several issues, where the overall result after giving effect to the tax-increasing issues, is a net overassessment; and

C. Cases involving more than one year where the net result is an overassessment.

### 1.2.13.1.18  (02-20-1959)
### Policy Statement 4-52

1. **Establishment of 18-month examination cycle**
2. Examination of estate tax returns will be completed within 18 months from the date the returns are filed. This 18-month cycle contemplates the completion of the examination and other processing by district Examination function, including the issuance of the closing letter.
3. **Estate tax cases must be checked to ensure adherence to time limitation within which examinations of these returns must be completed**
4. It is recognized that there will be instances where an examination cannot be completed within the stated cycle because of circumstances beyond the control of the Service. Such cases, nevertheless, must be periodically checked to ensure that the Service does not become a party to continuing the delay in effecting their disposition.

### 1.2.13.1.19  (02-21-1961)
### Policy Statement 4-63

1. **No unwarranted adjustments in statutory notices**
2. The deficiency asserted in a statutory notice of deficiency should be based on meritorious adjustments. No adjustments should be included for punitive, bargaining, or similar purposes. Estimated amounts to protect the Government's interest may be used only when it is impossible to establish exact amounts.

### 1.2.13.1.20  (07-26-1972)
### Policy Statement 4-65

1. **Voluntary payment of barred deficiency or account shall not be solicited**
2. The Service shall not make any effort, real or implied, to solicit voluntary payments of a deficiency or taxpayer delinquent account barred by statute. However, payments made by the taxpayer completely of his/her own free will shall be accepted.

### 1.2.13.1.21  (04-10-1967)
### Policy Statement 4-75

1. **Usual principles applicable in the examination of claims on their merits**
2. The same policies and standards governing the extent of examination, evaluation of evidence, issuance of preliminary letters and referral of cases to an Appeals Office will be applicable to cases involving claims for refund considered on their merits as would be applicable in comparable cases not involving claims. However, a conclusion previously reached by an Appeals official on a specific issue in a case will not be modified by a District Director as a result of his/her consideration of a claim, without the concurrence of a Regional Director of Appeals.

### 1.2.13.1.22  (04-10-1967)
### Policy Statement 4-76

1. **Disallowed claims may be reconsidered on the merits**
2. The merits of claims previously disallowed upon recommendation of a district Examination function may be reconsidered in appropriate cases upon application of the claimant, unless insufficient time remains within the statutory period for filing suit to permit reconsideration. Where, in such cases, it is concluded that an application for reconsideration should be disallowed, in whole or in part, the claimant will be granted the same opportunities for consideration by an Appeals official as would be appropriate in the case of an original claim being initially considered.

### 1.2.13.1.23  (07-29-1981)
### Policy Statement 4-77

1. **Claims may be allowed without examination**
2. Claims for refund may be allowed without examination or contact with the taxpayer where the examiner concludes, after survey of the case file, that the claim is clearly allowable in full. Any such claim which, if allowed, would produce an overassessment and/or overpayment exceeding $200,000 may be allowed without examination, but only after notification is received from the Joint Committee on Taxation that the Service may proceed with the disposition of the claim as proposed in the report submitted under the provisions of section 6405(a) of the Code.

### 1.2.13.1.24  (02-02-1961)
### Policy Statement 4-80

1. **Depreciation agreements will not extend to property subsequently acquired**
2. The provisions of an agreement as to useful life and rates of depreciation executed in accordance with the law and regulations will not be extended to depreciable property acquired subsequent to the date the agreement is entered into. However, if subsequently acquired property having the same characteristics as the property covered by the agreement is depreciated by the taxpayer consistently with the rates, method and useful life stated in the agreement, such treatment by the taxpayer will generally not be disturbed.
3. **Agreements not to be disturbed except in material circumstances**
4. A proposed modification or change in a depreciation agreement will be undertaken only when newly discovered facts or circumstances are deemed to be of sufficient materiality, substance, and importance to justify a modification or change in the agreement.

### 1.2.13.1.25  (07-25-1967)
### Policy Statement 4-82

1. **Taxpayer may request referral of issue under jurisdiction of District Director to National Office**

2. During the course of an examination the taxpayer or his/her representative may request that an issue be referred by the District Director to the National Office for technical advice on the grounds that a lack of uniformity exists as to the disposition of the issue, or that the issue is so unusual or complex as to warrant consideration by the National Office. If in the opinion of the examining officer, the circumstances do not warrant such action, the taxpayer or his/her representative will be afforded an opportunity to submit for consideration by the Chief, Examination Division, or the District Director in districts which don't have a Chief, Examination Division, a statement of the facts, law, and arguments with respect to the issue and the reasons why it is believed the issue should be referred to the National Office for advice. If the Chief, Examination Division, or the District Director in districts which don't have a Chief, Examination Division, determines that technical advice is not warranted, he/she will inform the taxpayer in writing that he/she proposes to deny the request, and except in unusual situations where such action would be prejudicial to the best interests of the Government he/she will state specifically the reasons for the proposed denial. If the taxpayer does not agree, all data relating to the issue will be submitted for review to the Assistant Commissioner (Examination). The review will be solely on the basis of the written record and no conference will be held in the National Office. During such review the district office will suspend action on the issue except where the delay would prejudice the Government's interests. After review in the National Office, the district will be notified whether the proposed denial is approved or disapproved.

3. **Taxpayer may submit brief and request hearing in Washington in cases under jurisdiction of District Director; exceptions provided**

4. In those cases which are to be referred by a District Director to the National Office for advice, the taxpayer will be advised and afforded an opportunity to submit a statement of his/her understanding of the legal question involved, and to submit a brief of the facts, law, and arguments. Every effort will be made to reach agreement between the taxpayer and the District Director as to the facts and the legal questions involved. If they cannot agree, the areas of disagreement will be clearly stated by the District Director in his/her discussion of the issue. Such comments and brief will accompany the District Director's request for advice. The taxpayer will also be informed that, if he/she so desires, a conference will be granted to him/her in the National Office in the event an adverse decision is indicated. The taxpayer, ordinarily, upon request, will be furnished a copy of the technical memorandum. However, if no definitive guidance is given a District Director, or if the factual submission is such as to indicate that the issue should be decided in the field, or it would not be in the interest of wise tax administration, a copy of the technical memorandum will not be made available to the taxpayer. The policies relating to the referral of issues upon request of taxpayer, advising taxpayers of the referral of issues, and the granting of conferences in the National Office, are not applicable to matters primarily of internal concern or in instances where it would be prejudicial to the interests of the Service, for example, cases involving fraud or jeopardy assessment.

### 1.2.13.1.26  (04-10-1967)
### Policy Statement 4-83

1. **Appeals privileges granted where estimated tax penalty is not agreed**

2. Additions to the tax imposed for failure to pay estimated tax do not constitute deficiencies for which a statutory notice of deficiency must be issued in unagreed cases, except if no return is filed for the taxable year. Nevertheless, in any case under consideration by the district Examination function in which it is proposed to assert such addition, and the taxpayer does not agree to its assertion, he/she will be given the same consideration of the issue by an Appeals official as would be available to him/her in the case of a deficiency resulting from adjustments to tax liability.

### 1.2.13.1.27  (01-06-1999)
### Policy Statement 4-88

1. **Jeopardy assessments to be used sparingly and assessment to be reasonable in amount**

2. Jeopardy assessments should be used sparingly and care should be taken to avoid excessive and unreasonable assessments. They should be limited to amounts which reasonably can be expected to protect the Government. Each jeopardy assessment must receive the personal approval of the District Director, or other delegated official. In addition, prior approval (in writing) by Chief Counsel (or such delegate) is required.

3. (Policy statement 4-84, concerning evaluation of the overall interests of enforcement of the law where both criminal and civil aspects of cases are involved, will be followed.)

4. **Conditions under which jeopardy assessments will be made**

5. A jeopardy assessment will be made by the Service if collection is determined to be in jeopardy because at least one of the following conditions exists:

    A. The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself/herself.

    B. The taxpayer is or appears to be designing quickly to place his/her or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.

    C. The taxpayer's financial solvency is or appears to be imperiled. (This does not include cases where the taxpayer becomes insolvent by virtue of the accrual of the proposed assessment tax, penalty and interest.)

    D. An individual is in physical possession of cash, or its equivalent, in excess of $10,000 who does not claim such cash as his/hers, or as belonging to another person whose identity can be readily ascertained and who acknowledges ownership of such cash, so that the collection of tax on such cash is presumed to be in jeopardy within the meaning of IRC 6867.

6. **Prior National Office notification required in certain cases**

7. Notwithstanding the existence of one or more of the above-cited conditions, in any case which might cause serious inconvenience to the general public, a jeopardy assessment should not be made without prior notification of the appropriate Regional Commissioner. If necessary, the Regional Commissioner will notify the Chief Operations Officer. Examples of such cases include banks, newspapers, insurance companies, hospitals, and public utilities companies.

8. **Taxpayer's request for administrative review of jeopardy assessment actions will be expedited**

9. A taxpayer's written request for administrative review of the Director's decision that collection of the tax was in jeopardy, or that the amount of the assessment was excessive, will be considered immediately. An individual in possession (see (3)d, above) may not request administrative review.

10. **Administrative review provided**

11. The Appeals Office will provide the administrative review requested by a taxpayer. If a case is unagreed, a taxpayer may request a conference with Appeals. The review will be conducted expeditiously. Action to abate all or a part of the tax or to issue a statutory notice of deficiency, if necessary, will be initiated by the office having jurisdiction over the merits of the tax liability.

12. **Jeopardy assessments involving alcohol, tobacco and firearms taxes**

13. Jeopardy assessments involving alcohol, tobacco and firearms will be processed by service centers when requested by a regional director of the Bureau of Alcohol, Tobacco and Firearms.

### 1.2.13.1.28  (01-06-1999)
### Policy Statement 4-89

1. **Termination assessment of income tax to be used sparingly and assessment to be reasonable in amount**

2. Termination assessment of income tax should be used sparingly and care should be taken to avoid excessive and unreasonable assessments. Assessments should be limited to amounts reasonably determined to be the taxpayer's liability for the period in question based on information available at the time. Each termination assessment must receive the personal approval of the District Director, or other delegated official. In addition, prior approval (in writing) by Chief Counsel (or such delegate) is required.

3. (Policy statement 4-84, concerning evaluation of the overall interests of enforcement of the law where both criminal and civil aspects of cases are involved, will be followed.)

4. **Conditions under which termination assessment will be made**

5. A termination assessment will be made if collection is determined to be in jeopardy because at least one of the following conditions exists:

    A. The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself/herself.

    B. The taxpayer is or appears to be designing quickly to place his/her or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.

    C. The taxpayer's financial solvency is or appears to be imperiled. (This does not include cases where the taxpayer becomes insolvent by virtue of the accrual of the proposed assessment of tax, and penalty, if any.)

    D. An individual is in physical possession of cash, or its equivalent, in excess of $10,000 who does not claim such cash as his/hers, or as belonging to another person whose identity can be readily ascertained and who acknowledges ownership of such cash, so that the collection of tax on such cash is presumed to be in jeopardy within the meaning of IRC 6867.

6. **Prior National Office notification required in certain cases**

7. Notwithstanding the existence of one or more of the above-cited conditions, in any case which might cause serious inconvenience to the general public, a termination assessment should not be made without prior notification of the appropriate Regional Commissioner. If necessary, the Regional Commissioner will notify the Chief Operations Officer. Examples of such cases include banks, newspapers, insurance companies, hospitals, and public utility companies.

8. **Taxpayer's request for administrative review of termination assessment actions will be expedited**

9. A taxpayer's written request for administrative review of the Director's decision that termination assessment action was necessary because collection of the tax was in jeopardy, or that the amount of the assessment was excessive, will be considered immediately. An individual in possession (see (3)d, above) may not request administrative review.

10. **Administrative review provided**

11. The Appeals Office will provide the administrative review requested by a taxpayer. The review will be conducted expeditiously. Action to abate all or a part of the tax will be initiated by the office responsible for the final determination.

**1.2.13.1.29  (02-02-1961)**
**Policy Statement 4-101**

1. **Employment tax coverage achieved through package examination**

2. Examination coverage in the employment tax area will be derived principally under the package examination program from original selections of income tax returns for examination.

**1.2.13.1.30  (07-10-1959)**
**Policy Statement 4-102**

1. **Retroactive assertion of uncollected facilities and service taxes for many prior years generally impractical**

2. Where a "collecting agency" such as a club, carrier, etc., is unable to, or upon request refuses to, collect back excise taxes from the actual taxpayers liable therefor, i.e., club members, customers, etc., it is necessary for the Service to proceed directly against the taxpayers to collect the back taxes due. In such cases, it is generally impractical administratively to assert the taxes retroactively for more than a few prior years even though in some cases there is no statutory bar to assessing unpaid taxes for all prior periods.

3. **District Directors have discretion in determining extent of retroactivity**

4. In the interest of sound administration, each District Director has discretion (within any applicable statutory limits on assessments) to determine, on the basis of the facts and circumstances in each individual case, how far back he/she should go in asserting uncollected back taxes against actual taxpayers. Under ordinary circumstances the normal three-year statute may be followed as a guideline. In making determinations as to the extent of retroactivity, District Directors should take into consideration such factors as costs and difficulties of collection and hardship to taxpayers. A compelling reason for adoption of a relatively long period might be evidence that the taxpayers had some knowledge of their liability but had decided to take no steps to ascertain their exact liability, or the responsibility of the collecting agency to collect from them. Considerations which might justify a relatively short period are a case where liability depends upon an unusually narrow or difficult point of interpretation under which the taxpayers may have had a reasonable basis for doubting their liability for tax, and a case where misleading or incorrect advice was given to the taxpayers by an employee of the Internal Revenue Service.

**1.2.13.1.31  (04-10-1967)**
**Policy Statement 4-103**

1. **Abatement claims considered only in exceptional circumstances**

2. Where an assessment of excise or employment tax has been made as a result of examination action, the taxpayer will generally be required to pay the assessment and file claim for refund prior to any further consideration of his/her case on its merits. Claims for abatement will be entertained in such cases only where the taxpayer can establish a meritorious reason warranting consideration of such a claim, such as failure to receive the preliminary letter. If it is determined that a claim for abatement should receive consideration, the taxpayer will be afforded the same opportunities for consideration by the Appeals Office as would be appropriate in the consideration of the merits of a claim for refund.

**1.2.13.1.32  (02-02-1961)**
**Policy Statement 4-104**

1. **Payment from own funds by collecting agency in lieu of uncollected taxes may be accepted**

2. Payment by a collecting agency from its own funds of an amount equal to facilities or service taxes which it failed to collect from its customers, patrons, members, etc., may be accepted in lieu of asserting the taxes directly against the taxpayers, or where applicable, asserting the 100–percent penalty against the collecting agency. As a condition to the acceptance of such payments, the collecting agency will be required to execute a waiver of its rights to claim any refund on the grounds of failure to collect the tax.

**1.2.13.1.33  (09-20-1983)**

**Policy Statement 4-116**

1. **Special Enrollment Examination**
2. User charges will be made to cover part of the cost for administering the Special Enrollment Examination. The charges will be established by the Director of Practice for each person applying to take the Special Enrollment Examination in order to become eligible to practice before the Internal Revenue Service.

**1.2.13.1.34  (03-15-1996)**
**Policy Statement 4-117**

1. **Examination authority to resolve issues**
2. Examination's authority to resolve issues is derived from its authority to make determinations of tax liability under IRC 6201. It has broad authority to consider and weigh conflicting factual information, data, and opinions. Using professional judgement in accordance with auditing standards, it makes findings of fact and applies Service position on issues of law to determine the correct tax liability. Examining agents are encouraged to exercise this authority to obtain the greatest possible number of agreements to tax determinations without sacrificing the quality or integrity of those determinations, and to dispose of tax differences at the lowest level.

**1.2.13.1.35  (11-18-1959)**
**Policy Statement 4-118 (Formerly P-1-34)**

1. **Issues to be referred to Office of Secretary**
2. Illustrations of unintended tax benefits or possible abuse of tax convention provisions and issues arising under such conventions that are likely to produce international controversy will be brought promptly to the attention of the Office of the Secretary.

**1.2.13.1.36  (08-03-1988)**
**Policy Statement 4-119 (Formerly P-7-20)**

1. **Selection and Examination of Returns**
2. The primary objective of the Employee Plans and Exempt Organizations examination program of returns is regulatory, with emphasis on continued qualification of exempt organizations and employee benefit plans. The purpose of selection and examination of returns is to promote the highest degree of voluntary compliance with the statutes governing qualification of plans and exemption of certain types of organizations from tax and to determine the extent of compliance and the causes of noncompliance with the tax laws by plans and organizations. Examination of exempt organizations will be conducted through a review of the purposes, activities and legal structures of such organizations. Employee Plans will be examined to determine in operation whether such plans meet the applicable qualification requirements.

**1.2.13.1.37  (05-03-2013)**
**Policy Statement 4-120**

1. **Policy Regarding Requests for the Content of Email Communications under the Electronic Communications Privacy Act and the Stored Communications Act**
2. The IRS will follow the holding of <u>United States v. Warshak</u>, 631 F.3d 266 (6th Cir. 2010), and obtain a search warrant in all cases when seeking from an internet service provider (ISP) the content of email communications stored by the ISP. Accordingly, such information will not be sought from an ISP in any civil administrative proceeding.
3. Any existing IRS guidance that is not in accord with the foregoing policy statement will be updated.
4. Signed: Steven T. Miller, Deputy Commissioner for Services and Enforcement

**Exhibit 1.2.13-1**
**All Active Policy Statements for the Examining Process**

| New Number | Old Number | Title |
|---|---|---|
| 4-3 | 4-3 | Cases closed by District Directors or Service Center Directors will not be reopened except under certain circumstances |
| 4-4 | 4-4 | Income tax examination will include consideration of taxpayer's liability for employment tax |
| 4-5 | | Restrictions on Examiners' and Specialists' Consecutive Survey or Examination Responsibilities |
| 4-6 | | Examiner may not examine return if relationship impairs impartiality |
| 4-7 | 4-7 | Impartial determination of tax liability |
| 4-8 | 4-8 | Removal of books, records and documents to a Service office |
| 4-9 | 4-9 | Highest integrity expected |
| 4-10 | 4-10 | Service ordinarily will not intervene in litigation in State courts between private litigants; exceptions provided |
| 4-11 | 4-11 | Initiation of examinations may be postponed in certain cases |
| 4-21 | 4-21 | Selection of returns for examination |
| 4-26 | 4-84 | Criminal and civil aspects in enforcement |
| 4-27 | 4-86 | Rewards determined by value of information furnished and Computation and payment of rewards |
| 4-34 | 4-34 | Closing of overassessment case to be withheld until deficiency of related taxpayer is established |
| 4-35 | 4-35 | Appeals conclusion controlling in adjustment of related cases |
| 4-36 | 4-36 | Identity of other government agency informants must be protected |
| 4-40 | 4-40 | Early agreement primary objective |
| 4-41 | 4-41 | Partial overassessments may be allowed in certain contested cases |
| 4-52 | 4-52 | Establishment of 18-month examination cycle |
| 4-52 | 4310-2 (pre-1972) | Establishment of 18-month examination cycle |
| 4-63 | 4-63 | No unwarranted adjustments in statutory notices |
| 4-65 | 4-65 | Voluntary payment of barred deficiency or account shall not be solicited |
| 4-75 | 4-75 | Usual principles applicable in the examination of claims on their merits |
| 4-76 | 4-76 | Disallowed claims may be reconsidered on the merits |
| 4-77 | 4-77 | Claims may be allowed without examination |
| 4-80 | 4-80 | Depreciation agreements will not extend to property subsequently acquired |
| 4-82 | 4-82 | Taxpayer may request referral of issue under jurisdiction of District Director to National Office |
| 4-83 | 4-83 | Appeals privileges granted where estimated tax penalty is not agreed |
| 4-88 | 4-88 | Jeopardy assessments to be used sparingly and assessment to be reasonable in amount |

| New Number | Old Number | Title |
|---|---|---|
| 4-89 | 4-89 | Termination assessment of income tax to be used sparingly and assessment to be reasonable in amount |
| 4-101 | 4-101 | Employment tax coverage achieved through package examination |
| 4-102 | 4-102 | Retroactive assertion of uncollected facilities and service taxes for many prior years generally impractical |
| 4-103 | 4-103 | Abatement claims considered only in exceptional circumstances |
| 4-104 | 4-104 | Payment from own funds by collecting agency in lieu of uncollected taxes may be accepted |
| 4-116 | 4-116 | Special Enrollment Examination |
| 4-117 | 4-117 | Examination authority to resolve issues |
| 4-118 | 1-34 | Issues to be referred to Office of Secretary |
| 4-119 | 7-20 | Selection and Examination of Returns |
| 4-120 | (new) | Policy Regarding Requests for the Content of Email Communications under the Electronic Communications Privacy Act and the Stored Communications Act. |

More Internal Revenue Manual