# EXHIBIT 24



**Part 4. Examining Process**

**Chapter 25. Estate and Gift Tax**

**Section 12. Valuation Assistance**

**4.25.12  Valuation Assistance**

- 4.25.12.1  Valuation Assistance
- 4.25.12.2  Referrals of Artwork to Art Appraisal Services and the Art Advisory Panel
- 4.25.12.3  Referrals to Engineering Services
- 4.25.12.4  Referrals to Economists
- 4.25.12.5  Outside Fee Appraisals

**Manual Transmittal**

August 06, 2015

**Purpose**

(1) This transmits revised IRM 4.25.12, *Estate and Gift Tax, Valuation Assistance.*

**Background**

IRM text pertains to Estate and Gift Tax Examination valuation assistance. This IRM provides direction which is Estate and Gift Tax specific.

**Material Changes**

(1) This transmittal reissues existing procedures. Minor editorial changes have been made throughout this IRM. Web page links, legal references, and IRM references were reviewed and updated as necessary.

(2) The structure of this IRM was reorganized in order to reduce confusion and for ease of navigation. Below is a summary of the reorganized IRM subsections:

   A. IRM 4.25.12.1.1, *Artwork, Art Appraisal Services and the Art Advisory Panel*, was moved in its entirety into a newly created IRM 4.25.12.2. The title was changed from *Artwork, Art Appraisal Services and Art Advisory Panel* to *Referrals of Artwork to Art Appraisal Services and the Art Advisory Panel.*

   B. IRM 4.25.12.1.2, *Art Appraisal Services – Mandatory Referrals and Procedures Applicable to All Referrals*, was moved in its entirety to a newly created IRM 4.25.12.2.1 and retitled as *Art Panel and Art Appraisal Services — Mandatory Referrals and Applicable Procedures.*

   C. IRM 4.25.12.1.3, *Art Appraisal Services—Miscellaneous Matters*, was moved in its entirety to a newly created IRM 4.25.12.2.2.

   D. IRM 4.25.12.1.4, *Referrals for Engineering Services*, was moved in its entirety to a newly created IRM 4.25.12.3.

   E. IRM 4.25.12.1.5, *Referrals for Economists*, was moved in its entirety to a newly created IRM 4.25.12.4.

   F. IRM 4.25.12.1.6, *Outside Experts*, was moved in its entirety to a newly created IRM 4.25.12.5, and renamed *Outside Fee Appraisals.*

(3) IRM 4.25.12.1.1, *Specialist Referral System* is a new section that sets forth the requirements and the unique estate and gift tax requirements for the use of the referral system to obtain internal valuation assistance.

(4) IRM 4.25.12.3(2)(a)-(c) engineering referral examples were edited. This section also reinforces the existing procedure that there are no required dollar thresholds for engineer referrals.

(5) IRM 4.25.12.3(5) the word must was changed to may to reinforce managerial discretion and existing risk analysis techniques.

(6) IRM 4.25.12.3(18) is a new paragraph that encourages the utilization of risk analysis techniques throughout the life-span of the examination and engineering referral process.

(7) IRM 4.25.12.3.1 is a new section that sets forth S-Corp valuation instructions for estate and gift tax examiners making referrals to engineering.

(8) IRM 4.25.12.5 was edited to reflect current roles and responsibilities relating to the outside fee appraisal process.

**Effect on Other Documents**

This material supersedes the January 6, 2014 published version of IRM 4.25.12.

**Audience**

This section contains instructions and guidelines for Small Business/Self-Employed Estate and Gift Tax Specialty Programs employees.

**Effective Date**

(08-06-2015)

Barbara J. Fiebich
Director, Speciality Examination Policy
Small Business/Self-Employed

**4.25.12.1  (08-06-2015)**
**Valuation Assistance**

1. This section provides information for examiners on procedures for obtaining valuation assistance from both internal and external resources.

## 4.25.12.1.1  (08-06-2015)
### Specialist Referral System

1. The Specialist Referral System (SRS) automates the specialist referral process. A referral can be generated online which will automatically notify the appropriate Specialist Manager by e-mail of the request. The manager can evaluate the referral and determine if it will be assigned, rejected or transferred. If assigned, a specialist is then notified by e-mail of the assignment and can initiate communication with the requestor. A conforming copy of the referral will be e-mailed to both the examiner requesting the referral and to the examiner's group manager.

2. Examiners may use SRS to obtain assistance from Art Appraisal Services, LB&I Engineers and Economists.

3. Examiners requesting a Specialist do not need any special permission to access SRS.

## 4.25.12.2  (08-06-2015)
### Referrals of Artwork to Art Appraisal Services and the Art Advisory Panel

1. The Office of Art Appraisal Services (AAS) (under the Chief of Appeals) provides valuation assistance concerning works of art and cultural property. In addition, it administers and provides support staff for the Commissioner's Art Advisory Panel (Art Panel), a group of nationally prominent art museum directors, curators, scholars, art dealers, and auction representatives chosen to assist the Service in the appraisal of works of art. Items appropriate for consideration include paintings, drawings, prints, sculptures, antiques, ceramics, photographs, furniture, textiles, carpets, silver, rare manuscripts and historical memorabilia. AAS processes all requests for art valuation assistance. At its discretion it may submit appraised works of art for review by the Panel; it performs valuation services on those works of art and other collectibles not reviewed by the Panel.

2. IRM 4.48.2.3, *Art Appraisal Services Referral Procedures*, provides procedures for requesting art valuation assistance.

3. All referrals made to AAS must be made using the Specialist Referral System (SRS). The examiner must include a copy of the SRS referral in the IMS case file. The examiner must also include a copy of the SRS referral in the hard copy case file if the case is closed unagreed.

4. Material in support of referrals, such as appraisals, photographs, etc., should be sent using UPS ground to:

   | Internal Revenue Service/Appeals |

   | C:AP:SO:ART |

   | 1111 Constitution Ave, NW, Suite 700 |

   | Washington, DC 20224-0002 |

5. Prior to any formal referral, examiners may contact the AAS for any advice or preliminary assistance. Questions should be submitted using the SRS **Comments** box to facilitate tracking and assignment of questions within AAS. Additional internal resource are available on the Appeals web page.

## 4.25.12.2.1  (08-06-2015)
### Art and Art Appraisal Services—Mandatory Referrals and Procedures Applicable to All Referrals

1. If an examiner has a return under examination that involves a taxpayer's appraisal of a work of art with a claimed value of $50,000 or more, it must be referred to Art Appraisal Services (AAS) for review by the Commissioner's Art Advisory Panel (Panel) when applicable.

2. Exception: Referrals are not required for estate or gift tax cases in which works of art do not form part of the tax base because they pass (or are deemed to pass) to a surviving spouse or to a qualified charity or in matters involving non-taxable returns that are not likely to result in deficiencies. However, where referrals would otherwise be required and, due to the application of these exceptions or other considerations (for example, risk analysis) they are not made, documentation of the applicable exception or analysis must be included in the file with an indication of concurrence by the group manager.

3. In cases with art work or an art appraisal identified on the classification sheet, group managers will assign (or survey before assignment) cases within 45 days of receipt.

4. Examiners will make a referral to AAS within 60 days of receipt of the case from the group manager, if the case will be examined and includes a piece of art with a returned value of $50,000 or more and all required information for the referral is contained in the file. If all required information for the referral is not in the file, a document request must be made within 45 days of assignment and documented in the file.

5. The referral must adhere to the requirements set forth by AAS pursuant to IRM 4.48.2, *Valuation Assistance for Cases Involving Works of Art,* and IRM 8.18.1, *Valuation Assistance Procedures,* including the required use of the Specialist Referral System (SRS). Every effort must be made to obtain all necessary information to adequately support the referral within the 60 day time-frame.

6. When submitting items to AAS for valuation, refer to IRM 4.48.2.3, *Art Appraisal Services Referral Procedures,* for links to a complete listing of required items and information.

7. If agreement cannot be reached with the taxpayer, further assistance may be requested of AAS and/or the Panel. Taxpayers may request an Appraisal Reconsideration of a proposed valuation adjustment by AAS only if they submit a request in writing which includes **substantial evidence which will affect the valuation of the item(s)** to support their fair market value opinion. Further, their request must respond specifically to the report issued by AAS. See IRM 4.48.2.1.1, *Art Advisory Panel* and IRM 8.18.1.9, *Reconsideration and Dispute Procedures*. If the valuation issue is not ultimately resolved between the taxpayer and AAS and the taxpayer chooses to pursue resolution through participation in Fast Track Settlement, AAS will also participate in this process. See IRM 4.25.13.3, *Fast Track Settlement*.

8. In all referred cases as to which a determination of value is rendered by AAS, a Form 8256, *Art Valuation*, will be provided. This form is a feedback loop that AAS partially completes and includes with its closing memorandum and report, and the referring office completes and returns to AAS upon disposition of the case. The AAS appraiser completes Section I of the Form 8256 and attaches it to the AAS closing memorandum and report. The referring office completes Section II of Form 8256 and mails a copy of the updated Form 8256 back to AAS.

9. The referring employee's manager is responsible for ensuring that a copy of the completed Form 8256 is returned to AAS immediately upon disposition of the case.

10. The original Form 8256, along with the AAS closing memorandum and report, should be placed in the case file, after indexing it in the exam planning documents and/or lead sheets and workpapers.

11. To enhance the valuation assistance provided by AAS, examiners are encouraged to include comments and supporting documentation with returned Form 8256. See IRM

4.48.2.4,*Form 8256 Procedures*, and IRM 8.18.1.8.3, *Receiving Office's Closing Procedures*, for additional information.

## 4.25.12.2.2  (08-06-2015)
## Art Appraisal Services -Misc. Matters

1. When Statement of Value reports (pre-filing requests from taxpayer, per Rev. Proc. 96-15,1996-1 C.B. 627) are received from Appeals, they will be logged in by Estate and Gift Tax Headquarters Staff and then forwarded to the Estate and Gift Operations at the Campus (Campus) for suspense. Estate and Gift Headquarters will direct the Campus to take the following actions with respect to the matter:

    A. The account will be monitored quarterly to screen for filed returns.

    B. When a return filing is detected, the return will be pulled from the Files section and reviewed for consistency with the Statement of Value.

    C. If a discrepancy is detected, the file will be forwarded to the Campus examiner for classification and sent to the appropriate Estate and Gift field office for possible examination. If the return is examined, the person to whom the case is assigned will contact AAS to provide information on the disposition of the case.

2. Consultations: In situations where a mandatory referral is not required, examiners may submit a request for assistance using the Specialist Referral System (SRS). It is understood that AAS will not provide an opinion of value in such situations but may provide comparable sales data sufficient to support risk analysis determinations as to whether a full referral should be made.

## 4.25.12.3  (08-06-2015)
## Referrals to Engineering Services

1. Engineering teams have specially educated and trained professionals who can add value to examinations. Many engineers have credentials or certifications in technical and valuation areas beyond their formal education. These credentials or certifications were earned from nationally recognized professional associations such as appraisal societies, and societies of professional scientists, foresters and engineers.

2. IRM 4.48, *Engineering Program*, describes the referral process and requirements for requesting engineering assistance on audits. Engineering referrals are encouraged but not mandatory. Referrals to Engineering should be made to determine if the fair market value of an asset reported on an estate or gift tax return, and any applicable discounts, are reasonable under the circumstances. The referral may include a request for various types of assistance ranging from a consultation to a valuation appraisal report.

    **Note:**

    While IRM 4.48 recommends referrals of real property assets with a minimum fair market value of $500,000, there are no minimum or maximum dollar thresholds requirements for making an engineering referral.

    **Note:**

    For personal property art assets valued on the return, the Art Appraisal guideline referral process in IRM 4.25.12.2 should be followed. All other personal property referrals should be made after conducting a risk analysis.

3. Requests for engineer assistance must be made through the Specialist Referral System (SRS). This includes consultation services for assistance. The SRS is an online automated system that allows for submissions and approvals for specialist assistance. It automates the referral request process. SRS is accessed from the intranet at SRS Referral. When an online request is submitted, SRS automatically notifies the appropriate specialist manager of the request. The system is a web-enabled and can provide management necessary information reports of Engineer resources utilized by Estate and Gift The examiner will include a copy of the SRS referral in both the hard copy and IMS case file.

4. Engineer resources are available on a national basis. The engineer manager will attempt to seek assistance from other engineer teams to provide the needed expertise in situations where the locally available engineer staff does not have a required specialist in a particular field. Therefore, Estate and Gift groups should submit referrals if needed whether or not they believe there are sufficient engineering resources which can be allocated to their cases.

5. During the assignment of a case, the group manager may determine that a valuation issue exists that warrants a referral for engineering assistance. In this situation, the group manager will annotate the case accordingly by providing instructions to the examiner as to the scope of the proposed referral.

6. . Examiners may forgo an engineering referral of a classified valuation issue or managerial selected issue. Documentation of the examiner's decision must be included in the case file. This decision may be based on a number of risk analysis factors.

7. If an examiner makes the determination during the planning phase that a referral is needed, managerial approval must be obtained prior to submitting a request for engineering assistance. The examiner should document the consideration of the referral in the workpapers or lead sheets.

8. If a case is referred, a copy of the referral must be included in the IMS case file. The referral must also be in the hard copy case file if the case is closed unagreed.

9. A Form 3210,*Transmittal Document*, should be used when providing the engineer hardcopy information.

10. When an engineer is involved in a case, the examiner maintains control of the return and its management. The engineer is added as a Team Member on IMS for the issue assigned.

11. Engineer(s) assigned to the case should meet with the examiner to discuss the issue, scope of services to be provided, information required, time-frames for information to be requested, estimated time to be charged to the case, and an estimated date for the completion of the referral. This information is documented and supported by the Engagement Letter, the initial Case Status Report, the engineer's workpapers, correspondence with the engineer, and the engineer's Activity Record.

12. The Engagement Letter will be issued by the engineer no later than 30 days from the assignment of the referral to the engineer and will include the date that the referral was made. The examiner will document receipt of the Engagement Letter on the Activity Record (Form 9984).

13. The examiner will prepare the initial Case Status Report and add it to IMS. The engineer will use the report to provide a monthly status report to the examiner. The Case Status Report template can be accessed via the Estate and Gift and LB&I intranet websites.

14. Continued cooperation with the engineer is required to ensure issues are material to the return and time charged commensurate with the issue. This coordination will be documented on the monthly Case Status Report and the activity record.

15. The engineer will serve as a technical consultant and will be available to assist the examiner in meetings with the taxpayer (when appropriate) for case resolution.

16. Disagreement on proposed adjustments between the examiner and engineer specialist should be elevated to their respective managers for resolution.

17. Estate and Gift group managers/delegated support staff should verify that time spent to work the issue by the engineer (including travel time) is properly accounted for on ERCS.

18. The engineer specialist's examination plan, activity record and work product documentation must be included in the examiner's case file on IMS.

19. Ongoing risk analysis discussions should be held between the examiner and the assigned engineering referral staff. Engineering's process for risk analysis is described at IRM 4.48.1.6.1 , *Pre-Examination Activity*. The examiner will work with the engineer to compare the benefits and prioritize issues. The examiner is responsible for providing clear instructions regarding the scope of the referral and explaining any legal issues that should be taken into consideration as part of the valuation analysis.

### 4.25.12.3.1  (08-06-2015)
### S Corporation Valuation Issues

1. An S Corporation is a domestic business entity that is treated as a corporation for Federal tax purposes. The corporation made an election under IRC 1362(a) to be governed by Subchapter S of the Code.  See IRC 1361 through IRC 1379.  In actual form, such an entity may be a state-chartered corporation or an unincorporated entity, such as a limited liability company.  Subchapter S places limitations on such things as the number and the type of owners (interest holders) and the number of classes of stock. Generally, electing S Corporations pay no entity level Federal taxes on their income.  Instead, the income and deductions of the entity flow through to the interest holders who are responsible for their appropriate share of the entity's Federal income tax liability, in a manner similar to partnership taxation models.  Electing S Corporations may still be responsible for State and/or local income or franchise taxes.

2. Electing S Corporations are subject to the same valuation considerations that are applicable to any closely held business entity.  Valuation guidance is set forth by Rev. Rul. 59-60.  However, given the organizational structure necessary to conform to Subchapter S, as opposed to that of otherwise similar closely-held business entities, potential differences in such things as the cost of capital and the marketability of non-controlling interests must be addressed.

3. Absent a compelling showing that unrelated parties dealing at arms-length would reduce the projected cash flows on an S Corporation by a hypothetical entity level tax, no entity level tax should be applied in determining the cash flows of an electing S Corporation.  The personal income taxes paid by the holder of an interest in an electing S Corporation are not relevant in determining the fair market value of that interest. See Valuation of Non-Controlling Interests in Business Entities Electing to be Treated as S Corporations for Federal Tax Purposes, A Job Aid for IRS Valuation Analysts for additional information regarding the valuation of S Corporation interests.

4. Prior to referring the an S Corporation valuation issue to engineering, the examiner should review the formation and entity governance documentation, previous tax return filings and the taxpayer's appraisal(s) to determine the taxpayer's valuation method. Upon completion of this review, the examiner is responsible for setting the scope of the valuation referral and providing instructions to the engineering regarding what entity level taxation should be applied, if any. See *Gross v. Commissioner*, T.C. Memo 1999-254, aff'd 272 F.3d 333 (6th Cir. 2001), cert. denied, 537 US 827 (2002); *Wall v. Commissioner*, T.C. Memo 2001-75; *Estate of Heck v. Commissioner*, T.C. Memo 2002-34; *Estate of Adams v. Commissioner*, T.C. Memo 2002-80, and *Dallas v. Commissioner*, T.C. Memo. 2006-212.

### 4.25.12.4  (08-06-2015)
### Referrals to Economists

1. The economists provide economic assistance on a broad range of tax issues. Economists can assist with issues of fair market value of stock and closely held businesses and the ever growing development of various tax avoidance schemes involving business transactions such as family limited partnerships.

2. IRM 4.49,*Economist Program*, describes the referral process and requirements for economist assistance on audits. However, to make the most efficient use of the limited number of economists, requests should be restricted to cases in which:

    A. The potential deficiency is substantial in amount, or

    B. The resolution of the issue will have significant precedential value.

3. Examiners are encouraged to discuss potential issues on cases with an Economist Team Manager prior to submitting requests for an economist.

4. Requests should be submitted as soon as it is determined that an economist is needed. Examiners must obtain approval from their manager prior to submitting a request for economist assistance.

5. All requests for an economist should be made on the Specialist Referral System (SRS). The request for an economist will be acknowledged, accepted or rejected within 10 workdays after receipt by the Economist Team Manager via SRS. The economist resources are available on a national basis. The economist manager will seek assistance from other economist teams or outside experts in situations where the locally available economist staff does not have the required expertise in a particular field.

6. Documentation of consideration of referrals must be in the workpaper file. If a case is not referred, the reasons for not referring it should be documented in the workpapers or the activity record.

7. When an economist is involved in a case, the examiner maintains control of the return and its management.

8. Disagreement on proposed adjustments between the examiner and the economist specialist should be elevated to their respective managers for resolution.

9. Estate and Gift group managers/delegated support staff should verify that time spent to work the issue by the economist (including travel time) is properly accounted for on ERCS.

10. The economist specialist's examination plan, activity record and work product documentation must be included in the examiner's case file.

### 4.25.12.5  (08-06-2015)
### Outside Fee Appraisals

1. The Outside Fee Appraisal (OFA) process provides access to outside services on a contract fee basis for Estate and/or Gift Tax cases.

2. The Territory Manager should consider program priorities and evaluate case needs and compliance impact when approving the use of OFA funds. Consideration will also be given to available in-house/Service expertise and the timeline for service delivery. In-house/Service expertise includes all qualified IRS experts including engineers, valuation specialists, and economists.

3. Territory Managers will be authorized to approve requests for an OFA where the estimated cost is less than $100,000; however, funding priorities are determined by the Chief, Estate and Gift Tax program, and funding of the approved requests will be determined by the Chief.

4. Requisitions with a total estimated cost of $50,000 or more should include a written recommendation from Counsel and/or local Engineering Management. This recommendation should explain why either or both of these stakeholders support the use of an outside expert rather than the use of in-house experts. Counsel and/or Engineering involvement and support for requisitions with a total cost of less than $50,000 are also recommended.

5. *The Estate and Gift Tax OFA Funding Application and Mandatory Feedback Form* (OFA Feedback Form) is required to provide uniformity and documentation of the factors considered in the requisition and approval process. Determination and documentation of whether qualified in-house expertise is being utilized is a minimum requirement for all requisitions. The OFA Feedback Form can be found on the Estate and Gift Website.

6. The preparation of the OFA form should be a team effort with Engineering and Counsel's involvement documented. The Examination Team should work closely with the Technical Advisor to the Chief in preparing the OFA form prior to submitting the OFA for approval. Copies of the OFA form relating to an approved request should be maintained by the appropriate Territory Manager as a matter of internal control and documentation. A copy of this form must be provided to the designated Policy Staff member prior to any RTS submission.

7. Once the OFA is approved, the Examination Team and the COR will work closely with the Technical Advisor to the Chief to ensure the proper statement of work is drafted, including Area Counsel's agreement to the description of the property rights being valued, the date of valuation, and any alternative property rights or valuation methods to consider.

8. Results must be captured on the OFA form and a complete copy of the form provided to the designated staff member no later than 30 days following case closure. This is necessary to provide essential information to management for analysis, to achieve effective utilization of OFA funds in the future and to justify additional funding, if warranted.

9. Estate and Gift Policy will monitor all expenditures and results and will maintain a contemporaneous decision point spreadsheet available at all time for use by Chief, Estate and Gift Tax Program, in making funding determinations. Analysis of the costs and benefits derived will be utilized in making future decisions to fund OFAs.

More Internal Revenue Manual