# EXHIBIT 1

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Petitioner,<br><br>   vs.<br><br>MICROSOFT CORPORATION, et al.,<br><br>              Respondents. | NO. 2:15-cv-00102 RSM<br><br>DECLARATION OF MICHAEL J. BERNARD |

I, Michael J. Bernard, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am U.S. Tax Counsel for Microsoft Corporation ("Microsoft") and have served in that capacity since the early 1990s. I hold a Bachelor of Science in Business Administration degree in finance and a Juris Doctor degree from Creighton University. I am an attorney.

2.     I have been directly involved in the following Internal Revenue Service ("IRS") audits of Microsoft's tax returns for the years ended June 30, 1990-1991, 1992-1994, 1995-1996, 1997-1999, 2000-2003, and 2004-2006. The 2004-2006 years are at issue in the summons enforcement actions pending before the Court.

DECLARATION OF MICHAEL J. BERNARD - 1

Case No.: 2:15-cv-00102 RSM

3. The 2004-2006 audit has focused on two cost sharing arrangements entered into with subsidiaries during the years under audit, and whether income reported by Microsoft under these arrangements reflect the arm's length consideration required under 26 U.S.C. § 482 and 26 C.F.R. § 1.482-7A(a)(2).

4. The IRS's audit of Microsoft's 2004-2006 taxable years began in January 2007, Although the statute of limitations on any tax liability is three years, Microsoft agreed to extend the statute on multiple occasions, ultimately until December 2014, eight years after the audit period began.

5. Between January 2007 and May 2011, the IRS issued seventy-seven Information Document Requests ("IDRs") relating to the Americas and APAC Cost Sharing Arrangements and transfer pricing. Microsoft voluntarily produced approximately 8,900 pages of documents and arranged eighteen consensual interviews. None of these interviews were taken under oath or subject to stenographic or audio recording.

6. On May 3, 2011, the IRS examination team issued to Microsoft a thirty-day letter, which transmitted (i) a Revenue Agent's Report (95 pages of which described the factual and legal support for the proposed Americas and APAC buy-in adjustments) and (ii) four expert reports (almost 400 pages of factual, economic, and legal analyses). Based on a discounted cash flow analysis (the so-called "Income Method"), the IRS determined that Microsoft's reported buy-ins were not arm's length under 26 U.S.C. § 482.

7. Throughout the 2004-2006 audit, the revenue agents and specialists conducting the examination at Microsoft's corporate headquarters in Redmond, Washington, have been field agents in the Large and Mid-Size Business Division ("LMSB") or the Large Business and International Division ("LB&I").

8. In October 2011, we learned that the IRS would not allow Microsoft's 2004-2006 dispute to proceed to the IRS Appeals Division. A new group within LB&I, Transfer

DECLARATION OF MICHAEL J. BERNARD - 2

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

1  Pricing Operations ("TPO"), intended to conduct additional audit field work for the purpose of
2  the TPO's presenting to the IRS Appeals Division a secondary or alternative buy-in valuation
3  based on the RPSM under 26 U.S.C. § 482.  The IRS subsequently issued a letter rescinding the
4  May 3, 2011 thirty-day letter.

5        9.     While continuing to rely on the primary valuation (*see* Paragraph 6 above), the
6  IRS also engaged many additional experts to develop an alternative valuation.  In a letter issued
7  on or about July 9, 2012, the IRS submitted a "Proposed Timeline," which called for the TPO
8  concluding the audit in mid-2013 and issuing a new thirty-day letter by July 1, 2013.  Attached
9  and marked as Exhibit A is a true and complete copy of the July 9, 2012 letter and Proposed
10 Timeline.

11       10.    Between November 17, 2011 and December 31, 2013, the TPO issued an
12 additional 63 Information Document Requests relating to the Americas Cost Sharing
13 Arrangement and transfer pricing.  In response, Microsoft voluntarily produced approximately
14 1.2 million pages of documents and arranged thirteen employee interviews.  None of these
15 interviews were taken under oath or subject to stenographic or audio recording.

16       11.    Microsoft, the IRS and their counsel met in Washington, D.C. on January 14,
17 2014.  At this meeting, the TPO made a formal presentation of the IRS's alternative valuation,
18 and the TPO urged Microsoft to enter into direct settlement negotiations.  After some
19 preliminary discussions, Microsoft and the IRS agreed to terminate settlement discussions on
20 March 27, 2014.  During that meeting, the IRS first revealed to me that it was considering
21 whether to "designate Microsoft's case for litigation."  By designating the case for litigation, the
22 IRS Appeals Division would be barred from settling the case on any basis other than a
23 complete concession by the taxpayer.  *See* Internal Revenue Manual Part 33.3.6.

DECLARATION OF MICHAEL J. BERNARD - 3

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

12. Between January 14, 2014 and May 31, 2014, the IRS TPO issued a total of only five Information Document Requests related to the cost sharing arrangements and transfer pricing. Microsoft timely responded to these requests with documents or information.

13. Unbeknownst to Microsoft at the time, the IRS engaged the civil litigation law firm of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") in this case pursuant to a government contract executed on May 19, 2014.

14. In July, 2014, the TPO issued twelve additional IDRs increasing the number of requested interviews. By mid-August, we identified a pool of over fifty potential interviewees, from which the TPO identified twenty-nine former or current employees for interviews during September/October, 2014. In the fall of 2014, Microsoft voluntarily produced 31,150 pages and submitted to 23 interviews.

15. In connection with these additional interviews, the TPO insisted that they be transcribed and taken under oath. This demand was unusual as the IRS and Microsoft had conducted over 130 informal interviews (*i.e.*, none of them were taken under oath nor subject to stenographic or audio recording) during the 2000-2003 and 2004-2006 audits of cost sharing arrangements under 26 U.S.C. § 482.

16. Attached and marked as Exhibit B is a true and complete copy of a letter from Eli Hoory, Special Projects Deputy, IRS Transfer Pricing Operations to me dated August 28, 2014. This letter itemizes the specific individuals whom the TPO intended to interview. The letter also states:

> To follow up on our discussion on August 28, in addition to representatives from the LB&I examination team and IRS counsel, we likely will have one or more contractors attend, participate and/or listen in to the interviews. In addition to our economist and industry experts, this may include **outside counsel** from Quinn Emanuel retained to assist LB&I in its evaluation and examination of this matter.

DECLARATION OF MICHAEL J. BERNARD - 4

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

1  Exhibit B (emphasis added).  This letter was the TPO's first disclosure to Microsoft that it had

2  engaged outside counsel.  The letter also advised that the TPO's experts and outside counsel

3  (collectively, the "Contractors") would "participate" in the interviews.

4      17.    Attached and marked at Exhibit C is a true and complete copy of my letter to

5  Mr. Hoory, dated September 3, 2014.  At page 2, I asked "whether Quinn Emanuel has been

6  engaged in an expert capacity or to represent the IRS as trial counsel if this matter proceeds to

7  litigation."  I also requested a "complete unredacted copy of the IRS engagement letter with

8  Quinn Emanuel."

9      18.    Attached and marked as Exhibit D is a true and complete copy of Mr. Hoory's

10 letter to me dated September 9, 2014.  At page 3, Mr. Hoory stated that "QE has not been

11 retained for litigation support.  Rather, QE's engagement is currently limited to examination

12 support."  At page 4, Mr. Hoory asserted that "[t]he IRS does not have an engagement letter

13 with QE."

14      19.    With the September 9, 2014 letter, I was aware of the IRS TPO's engagement of

15 the following external experts and outside counsel:

| Individual/Firm | Subject Matter Expertise |
|---|---|
| A. Michael Heimert, Ceteris | Economics/Valuation |
| Daniel J. Frisch, Horst Frisch LLP | Economics/Valuation |
| Chris F. Kemerer/Chris F. Kemerer LLC | Software Technology |
| Martin D. Kemp, et al/Elysium Digital LLC | Source Code Analysis |
| Dan Kusnetzky/Kusnetzky Group LLC | Software Industry |
| Peter Kuper/HypAdvisor LLC | Financial Analysis |
| Aaron Goldberg/Content4IT | Software Industry |
| Ove Haxthausen/Westside Group | Brand Valuation/Marketing Strategy |
| John Quinn/Quinn Emanuel | Civil Litigation |
| John Gordon/Quinn Emanuel | Civil Litigation |
| Jeremy Andersen/Quinn Emanuel | Civil Litigation |

DECLARATION OF MICHAEL J. BERNARD - 5

Case No.: 2:15-cv-00102 RSM

20. We subsequently reviewed the Office of Management & Budget database disclosing government contracts. That database disclosed Contract No. TIRNE-14-C-00013 as a contract between the IRS and Quinn Emanuel for "Professional Expert Witness" services. This contract was executed on May 19, 2014, and had a stated "Obligation Amount" of $2,185,500. Attached and marked as Exhibit E is a true and complete copy of my letter to Mr. Hoory, dated September 10, 2014, requesting a copy of Contract No. TIRNE-14-C-00013.

21. Attached and marked as Exhibit F is a true and complete copy of Mr. Hoory's letter to me, dated September 10, 2014, and Section C (the Performance Work Statement) from Contract No. TIRNE-14-C-00013. But for Section C, the IRS withheld the contract. Presumably because Section C refers to Quinn Emanuel's work as "Phase I" or "this phase," Mr. Hoory represented at page 1 of this letter that "Section C contains the fully and unredacted performance work statement/scope of work for all phases of the contract (the contract has one phase only)." This letter asked us to agree that the Contractors could "fully participate in the interviews including, but not limited to, asking questions," citing 26 C.F.R. § 301.7602-IT(b)(3) promulgated on June 17, 2014, as a temporary and proposed regulation under 26 U.S.C. § 7602.

22. During the audit, Microsoft would not agree that the Contractors could "participate fully" in the interviews.

23. Between the IRS's engagement of Quinn Emanuel on May 19, 2014 and December 31, 2014, the IRS TPO propounded 120 production requests and sought 36 interviews via IDRs and summonses.

24. On October 30, 2014, Agent Douglas O'Dell issued a summons to Microsoft, bearing the legend "THIS IS A DESIGNATED SUMMONS PURSUANT TO IRC 6503(j)." The IRS subsequently issued 18 "related" summons within the meaning of 26 U.S.C. § 6503(J)(1)(A)(ii).

DECLARATION OF MICHAEL J. BERNARD - 6

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

\* \* \*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of March, 2015.

                                              MICHAEL J. BERNARD

                                              By /s/ Michael J. Bernard
                                              Microsoft Corporation
                                              Tax Counsel

DECLARATION OF MICHAEL J. BERNARD - 7

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Amy Matchison, Jeremy N. Henson, Noreene C. Stehlik and the U.S. Department of Justice; Daniel A. Rosen, James M. O'Brien and Baker & McKenzie LLP; Robert B. Mitchell, Hugh Frederick Bangasser and K&L Gates LLP; George E. Greer and Orrick Herrington & Sutcliffe; Stephen M. Rummage and Davis Wright Tremaine, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A.

*s/ D. Yvette Chambers*
D. Yvette Chambers

DECLARATION OF MICHAEL J. BERNARD - 8

Case No.: 2:15-cv-00102 RSM

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, 44th FLOOR
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

# EXHIBIT A



**LARGE BUSINESS AND
INTERNATIONAL DIVISION**

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

Michael Bernard
Tax Counsel
Microsoft Corporation
Redmond, WA

Dear Mr. Bernard:

As you know, the Internal Revenue Service is examining aspects of the cost-sharing arrangements entered into by the Microsoft Corporation during the 2004 through 2006 tax years and the associated buy-in transactions. Among other issues, the Service is examining the methods and inputs used in the transfer pricing model that Microsoft adopted to value intangible property transferred in these arrangements.

As part of this evaluation, the Service is engaging an outside expert to consider attributes of the technology intangibles transferred. Similar to the question that was posed in the transfer pricing study that was used by Microsoft, the outside expert's evaluation is expected to consider the degree to which the source code of products persists from one version to the next. To enable the expert to perform this assessment, the Service will be making a request for source code to certain versions of Microsoft products.

Although the exact parameters of the request are still being determined, we wanted to give you advance notice of the request so that you could anticipate it and make preparations, as appropriate. On the same note, once we have confirmed the parameters of the source code request, we hope to dialogue with you and the substantive Microsoft experts to efficiently communicate the request and facilitate the response. Although the exact timing remains to be determined, we anticipate contacting you in the later half of July or early August to initiate this dialogue.

If you have any questions regarding the above, please contact the undersigned at (206) 220-5686.

Sincerely,

Alton S. White, III

915 2nd Avenue, Mail Stop W134
Seattle, WA  98174

## Proposed Timeline
### (For Discussion on July 12, 2012 Conference)

| Start (if Applicable) | Completion | Description |
|---|---|---|
| 7/2/2012 | 10/1/2012 | Outside Experts (O/E) begin work<br>Initial IDRs issued and responses collected<br>Fact Finding |
| 10/1/2012 | 11/30/2012 | O/E continue Fact Finding<br>Complete review of initial IDR responses<br>Issue follow-up IDRs<br>Interview requests / Interviews (if applicable) |
| 11/30/2012 | 12/31/2012 | Issue Final IDRs and Complete Fact Finding |
|  | 1/31/2013 | O/E completes draft evaluation and presents results of analysis to IRS |
|  | 3/8/2013 | O/E present final report to IRS |
|  | 4/5/2013 | IRS completes analysis and presents conclusions to Taxpayer |
| 4/5/2012 | 6/21/2013 | Dialogue with Taxpayer on Issues – Determine if Room for Resolution |
|  | 7/1/2013 | Resolution of Issue(s) or Issuance of 30-Day Letter |
|  | 10/30/2013 | Statute Extension Date |

Notes:

(1) This timeline is based on the expectation that throughout fact finding process information requests will be communicated to Taxpayer on a rolling basis and that responses to IDRs will be received within 2 weeks of the IDR in question being issued.

(2) For appropriate information requests (for example, nuanced requests for data sets), we would prefer to work proactively and openly with Taxpayer by engaging in direct communications with the appropriate day-to-day operational custodian(s) of the data to help facilitate more efficient and accurate information requests and responses on a real time basis.