# EXHIBIT 7



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

LARGE BUSINESS AND
INTERNATIONAL DIVISION

September 10, 2014

Microsoft Corporation and Subsidiaries
One Microsoft Way
Redmond, WA 98052
ATTN: Michael J. Bernard, U.S. Tax Counsel

SUBJECT: Scheduling of 200406-200606 Examination Interviews

Dear Mike:

This letter is in response to your letter of September 10, 2014, regarding scheduling of examination interviews and our communications thus far regarding procedures for those consensual interviews.

First, thank you for agreeing to arrange for conference call equipment in the interview room. In response to your request, in addition to being instructed not to ask interviewees questions over the phone, the experts participating remotely also will be instructed that they are not permitted to record the interviews so there is no doubt as to that point.

Second, my commitment to not having experts ask questions over the phone was and remains limited to persons who are listening remotely during the consensual interviews. In other words, all persons supporting the Service's examination (whether LB&I employees, Counsel or contractors) who are in the room during the consensual interviews may fully participate in the interviews including, but not limited to, asking questions. Once again, I invite you to see the temporary regulation to Section 7602.

In response to your concerns about Quinn Emanuel's engagement, I have enclosed a complete copy of Section C of the contract with QE. Section C contains the full and unredacted performance work statement/scope of work for all phases of the contract (the contract has one phase only). In addition to the QE attorneys whose names I have already provided to you (John Quinn, John Gordon and Jeremy Andersen), the only other QE attorneys expected to work on supporting the IRS's examination are Noah Helpern and Jack Baumann. What I can represent now is the same as I represented in the past; namely, that none of them are working on matters currently adverse to Microsoft, that they are bound by Section 6103, and that they are committed to not using in their support of the IRS's examination any confidential information that QE has

access to from other, unrelated matters in which QE is adverse to Microsoft.  As you indicated you have done already with the others, you are welcome to consult with your General Counsel to confirm that none of the QE attorneys supporting the IRS's examination have made an appearance adverse to Microsoft Corporation.

Per the schedule you shared yesterday, there are eight (8) interviews scheduled for next week (September 15-19).  We are hopeful that these will go forward and our team is planning to attend those interviews as scheduled.  Furthermore, no QE attorneys will attend these eight interviews in person or by phone and our remaining experts' attendance is anticipated to be limited to participation via phone.  Recognizing that these are among the consensual interviews on which I have offered commitments regarding remote participation and based on all of the concerns that you have shared to date, it appears that we are in full agreement that these interviews will go ahead as scheduled.  Please confirm whether you concur no later than tomorrow (September 11, 2014) at 11AM Pacific, and my colleagues and I look forward to seeing you on Monday.

For all other interviews (those scheduled on September 22 and later), I have in good faith provided you with robust responses on each of the concerns you have stated and provided you with a great deal of insight into the QE engagement, including providing a full copy of the scope of work, identifying all relevant QE attorneys, and commitments on the use of confidential information.  With that in mind, we are at a decision point now.  Without further qualifications other than those already offered in my letters, does Microsoft agree to proceed with the remaining consensual interviews as scheduled and with, at the IRS's option, QE attorneys and other IRS experts in attendance and/or participating (for those attending in-person)?  Please communicate your decision to me no later than tomorrow (September 11, 2014) at 2:00PM Pacific.  If you do not agree or do not respond, the Service will consider alternatives.

Given the effort that has been invested on both of our parts in working toward a reasonable framework for consensual interviews that responds to your stated concerns while still permitting the Service to have the support of its experts, I remain hopeful that we will be able to move forward with the interviews and I look forward to your response.  If you have any questions, please feel free to contact me at (202) 515-4315.

Sincerely,


Eli Hoory
Special Projects Deputy, Transfer Pricing Operations


cc:       Walter Choi, IE Team Manager
          Cheryl P. Claybough, Industry Director, CTM
          Sharon R. Porter, Director, IBC
          Kenneth Wood, Acting Director, TPO

Encl:     Section C of TIRNE-14-C-00013

2

# SECTION C

## PERFORMANCE WORK STATEMENT

**INTRODUCTION/ BACKGROUND**

The Internal Revenue Service (the "IRS" or the "Service") requires the services of a contractor who is an expert in commercial litigation (the "Contractor") to assist with the evaluation, analysis, presentation and defense of claims or adjustments related to the issues under examination.  The services to be rendered under this Contract include but are not limited to investigation, document review, and research so as to be able to consult with the Service and/or advise the Service.  The subject matter of the services required to be rendered under this Contract include but are not limited to transfer pricing issues relating to the license of intangible property rights in association with a cost sharing arrangement and related transactions.

The Contractor is a law firm and the Key Personnel (including "Contractor 1" and "Contractor 2," collectively the "Key Personnel") are highly skilled commercial litigation attorneys with extensive complex litigation experience evaluating, preparing and presenting cases dealing with multifaceted facts, complex economics and multiple legal issues.  The Key Personnel will perform the work describe below and will oversee and direct any other personnel of the Contractor who work on this project.  The Key Personnel will verbally report facts, conclusions and recommendations to the Service, and, if desired by the Service, the Key Personnel will prepare written reports and cause such reports to be sent or delivered to the Service.  If desired by the Service, the Contractor agrees that the Key Personnel will assist in preparing for and attend meetings, presentations and interviews.

The Service is analyzing a set of intercompany transactions (the "Transactions") between the taxpayer and its U.S. affiliates (together, the "Taxpayer") and Taxpayer's foreign affiliate.  As part of the Transactions, the Taxpayer and its foreign affiliate did the following: (1) effective July 2005, the Taxpayer licensed to its foreign affiliate rights to 'technology intangibles' embodied in certain software products sold by the Taxpayer to third-parties in the Americas geographic region; (2) the foreign affiliate made a buy-in payment (the "Buy-In Payment") to compensate the Taxpayer for the value of the rights that it received and assumed responsibility for funding future research and development associated with the technology intangibles; and (3) the Taxpayer and the affiliate established a transfer price (the "Transfer Price") to determine how to share revenues that are collected, after licensing of the technology intangibles to the foreign affiliate, on future sales of the software products in question to third-parties.

The Service is considering whether the Buy-In Payment and Transfer Price amounts determined by the Taxpayer reliably and accurately determine the arm's length transfer prices between the related entities.  Together, the Buy-In and the Transfer Price issues impact two currently open examination periods, the first examination period for Taxpayer's fiscal years ended June 30, 2004 through June 30, 2006 and the second for Taxpayer's fiscal years ended June 30, 2007 through June 30, 2009.  To the extent the Taxpayer continues to apply the Transfer Price proposed after fiscal year ended June 30, 2009, the issue may have continuing relevance, as well.

In addition to the Transactions, the Service is also analyzing other intercompany transactions by the Taxpayer that may raise similar transfer pricing issues or share overlapping facts.

**SCOPE**

The Contractor shall provide all management, supervision, labor, materials, supplies, and equipment (unless otherwise stated), and shall plan, schedule, coordinate, and assure effective performance of all services described herein.

The Contractor shall provide the services and deliver the outcomes described in Phase 1. Phase 1 will commence upon award of the Contract or as required by the Government based on its schedule.

This Phase for Evaluation & Case Support is non-severable and will not exceed the period during which fiscal year funds applied to this contract are available.

The Contractor is required to furnish all labor and materials associated with the requirements of the contract except where otherwise specified.

The Contractor shall be expected to perform travel as necessary to meet the requirements of the contract. Authorized travel and related expenses shall be reimbursed to the Contractor/Expert subject to the contract terms outlined herein.

The Contractor/Expert shall obtain written permission from the COR prior to making any "Third Party" investigative contacts. The Contractor/Expert shall provide the COR with details regarding "Third Party" contacts. The details of the "Third Party" contact shall be provided to the COR in writing within ten working days after the contact. The COR shall provide guidance as to what information is required to be reported regarding "Third Party" contacts by the Contractor/Expert.

The Contractor/Expert shall strictly protect the taxpayer's rights to privacy by adhering to Federal "Privacy" and "Non-Disclosure" of taxpayer information regulations and requirements outlined herein.

**I. PERFORMANCE REQUIREMENTS**

The Contractor is expected to perform according to the terms of this Contract, even if the time frames are delayed. The Contract is subject to termination and/or Contract payment deduction, if the performance standards are not met.

In the event the Contractor is not needed at any point, the Service will terminate services in accordance with Contract terms and payment will be made for that portion of work performed.

The Contractor is expected to perform according to the terms of this Contract, even if the time frames are delayed. The Contract is subject to termination and/or Contract payment deduction, if the performance standards are not met.

TIRNE-14-C-00013

Contract performance requirements are identified in Phase 1 and under the Monthly Status Report Section below.

**Phase 1 – Evaluation & Case Support**

**Required Service(s)**

For ease of reference, the required services in this phase are described in two categories: (A) "Evaluation" services and (B) "Case Support" services. In practice, the Evaluation and the Case Support services described below may overlap (e.g., distinct Evaluation and Case Support services may be performed in parallel/contemporaneously or the same service may simultaneously support both service categories).

Phase 1 Category A Services: Evaluation: The Contractor will review all of the key documents (including reports, position papers, IDR responses, etc., prepared by or on behalf of the Taxpayer or the Service) and all relevant legal authorities to build a thorough understanding of the factual and legal issues and the record to date. This will entail independent research, as appropriate, and attending meetings as requested by the POC or the COR. After completing a thorough review of the record at the time of contract award, the Key Personnel will deliver to the Service an in-person detailed briefing assessing the case based on the existing record and will give their recommendations.

It is anticipated that this phase will consist of but not be limited to the following steps:

**Step 1**: The Contractor shall have a preliminary meeting with the Service to obtain a clear understanding of the scope of the Contract requirements. The meeting will be held in person or by teleconference and is anticipated not to exceed one full day. Records identified by the Service as central to the assessment of the Transactions will be made available to the Contractor.

**Step 2**: Review initial package of documentation and request additional documentation. The Contractor will review an initial package of documentation provided by the Service. The Contractor will inform the POC if there are additional materials that the Contractor believes would be helpful and would like to review before completing the preliminary analyses described above and, if available, the Service will attempt to secure the requested records. However, it is possible that some of the additional materials requested, if any, may not exist or otherwise be unobtainable.

**Step 3**: As appropriate, subsequent ad hoc meetings or telephone calls will be scheduled and held with the Contractor to facilitate the assessment of the Transactions and to plan and begin executing follow-up steps that are appropriate to accomplish the goals of this phase. Travel may be required.

**Step 4**: The Key Personnel will present to the Service a detailed in-person verbal detailed briefing of the Key Personnel's findings, assessment, and recommendations with respect to the factual and legal state of the case, identifying strengths, weakness, and areas for further development. The Service may require the Key Personnel to travel. If requested by the Service, the Key Personnel may need to repeat the briefing or parts of the briefing via conference calls or via in-person meetings to other Service stakeholders.

<u>Phase 1 Category (B) Services: Case Support</u>: The Contractor will support continued development, analysis, evaluation, and preparation of the issues under examination.  The Contractor will assist the Service in preparing, organizing and presenting the factual record and legal analysis of the case.  The Contractor will work collaboratively with the Service to support the examination.  Contractor's assistance may include but not be limited to consulting on the analysis and theory of the case; identifying additional information deemed necessary to develop clearly defensible positions, including any necessary data, documents, or interviews; assisting with further factual development through document review, identifying and preparing new document requests, preparing for or participating in interviews; performing independent research; consulting on position papers/reports prepared by or on the behalf of the Service or the Taxpayer; preparing, consulting on or assisting with presentations; and reviewing and providing analysis and critique of Taxpayer's supplemental positions or responses, if any.  Travel may be required.

For both Category (A) and (B) services, the Contractor agrees to verbally report conclusions and findings to the Service.  After discussion with the Service, if desired by the Service, the Contractor will prepare a written summary or report on identified sub-issues and cause it to be presented or delivered to the Service

**Performance Standards:**

- Demonstrate effective verbal communication and interpersonal team skills.
- Perform independent research and analysis of all relevant legal authorities, demonstrating an in-depth understanding of all legal aspects of the case.
- Develop and demonstrate an in-depth and thorough understanding of the facts and economics of the Transactions and relevant aspects of the Taxpayer's business.
- Timely respond to the Service's oral or written inquiries.
- Timely request through the Service required information from the Taxpayer.
- Timely identify legal and factual issues relevant to evaluating the Taxpayer's and the Service's theory of the case.
- Timely notify the POC of the need for meetings or conference calls helpful to support of the case.
- Timely schedule and participate in conference calls and in-person meetings with the Service when requested by the POC or COR.
- Explain in a clear and professional manner the quality and thoroughness of facts and analyses relied on to form the assessment and recommendations presented in the detailed verbal briefing.
- If requested by the POC or the COR, prepare written analysis of clearly identified issues or sub-issues related to the case.
- Thoroughly document, as appropriate, factual development and due diligence.
- Develop and demonstrate thorough familiarity and understanding of all relevant legal authorities, including but not limited to tax, commercial, intellectual property, and procedural authorities.

**Additional Performance Standards:**

- As part of the Evaluation services, the Key Personnel shall verbally deliver the detailed briefing in-person to the Service at the time and place requested by the POC (and, if requested by POC, the Key Personnel shall repeat the detailed briefing or a sub-part of the briefing in-person or by conference call).
- As part of the Case Support services, the Key Personnel shall on an as-needed basis deliver oral recommendations in person or by conference call to the POC and other selected members of the Exam team.  The Key Personnel shall clearly and professionally present the Contractor's analysis, and clearly explain the quality and thoroughness of the facts and analyses relied on to form the Contractor's recommendations.

**Desired Outcomes**

The Contractor will perform a thorough initial factual, economic and legal assessment of the record and theory of the case.  Following completion of this initial assessment, the Key Personnel will present to the Service a detailed briefing presenting the Contractor's assessment of the case and giving the Contractor's recommendations.  During and after the initial assessment, the Contractor will consult with and support the Service on an as-needed basis to assist in assessing, preparing, organizing and presenting the issues under examination.  Required Contract services shall be provided in accordance with the Delivery Schedule **outlined below**.

**Monthly Status Report**

The Contractor shall include with the monthly invoices, a written status report to the COR. The status report shall, at a minimum, address the following items:

- Current target dates and progress for providing deliverable(s),
- Any problems or expected problems with delivery of services or products,
- Completed items,
- Outstanding issues,
- Report of direct labor hours expended for the month,
- Accounting of project cost by phase:
- Total amount invoiced and
- Total amount of delivered but not invoiced services.

The Contractor shall be required to promptly provide written notification to the COR and the POC when his or her efforts have reached:

- Respectively, 25%, 50% and 75% of the awarded amount of Phase 1.

**After reaching 50% of the awarded amount in Phase 1, the Contractor shall be required to receive written notification from the COR to proceed before performing additional services in Phase 1.  After reaching 75% the awarded amount in Phase 1, the Contractor shall be**

**required to receive written notification from the COR to proceed before performing additional services in Phase 1.**

**In no event may the Contractor's services exceed the awarded amount of said phase without the prior written authorization of the Contracting Officer.**

**Performance Standards:**

- Complete and accurate monthly status reports.
- Provide notification when the specified percentages of the awarded amounts for each phase are reached.
- Timely deliver the report to the COR.

## II. APPLICABLE DEFINITIONS, DIRECTIVES and/or DOCUMENTS

**Applicable Definitions, Directives and/or Documents**

**Definitions**

**Third Party Contacts Defined**

If the Contractor needs information from a third party, the Contractor shall first obtain permission for the IRS and the IRS will provide additional guidance as needed on a specific case-by-case basis.

Third party contacts are defined and explained in I.R.C. § 7602(c) and the IRS Restructuring and Reform Act of 1998, Pub. L. 105–206, § 3417. Third party contact definitions and requirements are described generally in the IRS's Internal Revenue Manual (IRM) Part 4.10.1.6.12 (available at www.irs.gov). For third-party information gathering, see I.R.C. § 7609 (providing special procedures for third-party summonses); and IRM Part 25.5.6 (summonses on third-party witnesses) (available at www.irs.gov).

For Directives about Third Party Contacts, see below.

**Disclosure and Privacy Act Requirements and Definitions**

Generally, I.R.C. § 6103 limits disclosure of taxpayers' returns and return information to third parties. Privacy Act (5 U.S.C. 552a) requirements are described in detail in IRM Part 11, and I.R.C. §§ 6103, 6104, 6110, 7213, 7213A, and 7431. Applicable clauses are incorporated herein. The IRM can be accessed at www.irs.gov.

**IRS Property and Records Defined**

Government property shall include all government equipment and records and documents, including Taxpayer records and documents, provided to the Contractor by the Government or by

the Taxpayer and shall include all Contractor generated work products and workpapers associated with the requirements of this Contract.  It is anticipated that the Service may, at its option, furnish secure electronic storage media or laptops which will have security software for data encryption.

**Reference Materials and Purchased Documents**

The Service's property shall include reference materials, books, documents and supplies purchased by the Contractor as necessary for performing the requirements of this Contract if the Contractor is reimbursed by the Service for such purchases on an actual cost basis documented with copies of receipts for the purchases.

**Directives**

**Contract Administration**

All contacts by the Contractor regarding the administration of technical details within the scope of this Contract shall be addressed to the COR for advice and coordination. All Contractor contacts with the Service's audit team and with the Taxpayer shall be coordinated through the POC.

Also see G.1 IR1052-96-019 Authority - Contracting Officer, Contractor Officer's Representative And Contractor's Project Manager.

**"Contractor" Is All Inclusive**

The requirements, responsibilities, liabilities and limitations of this Contract shall apply to the Contractor, employees of the Contractor, the Key Personnel, and any subcontractors of the Contractor.

**Third Party Contacts**

Generally, any investigative-type third party contacts will be made by the Service.  See, I.R.C. § 7602(c) (requiring the Service to notify the taxpayer about contact with third parties), I.R.C. § 7609 (providing special procedures for third-party summonses).  For procedures, see IRM Part 4.10.1.6.12 (third party contacts) and IRM Part 25.5.6 (summonses on third-party witnesses) (available at www.irs.gov).

The Contractor will obtain written permission from the POC or COR prior to making any Third Party Contacts related to performance of this Contract.  If the Service determines that the Contractor may make a particular Third Party Contact, the Contractor will provide the COR with details regarding the Third Party contact.  The Contract will provide details of the Third Party contact to the COR in writing within ten working days after the contact. The COR will provide guidance as to what information is required to be reported regarding Third Party contacts by the Contractor.

**Also see Section H – Disclosure, Safeguards and Security**. - Addressing I.R.C. § 6103 (stating that taxpayers' returns and return information are confidential and may not be disclosed to third parties).

**Materials to be Relied Upon**

The Contractor will examine publicly available information as well as documents and materials obtained by the POC or examination team.

**Comply With All Security Policies**

The contractor shall comply with all IRS security and safeguard policies and procedures as described in **Pub. 4812 – *Contractor Security Controls*** (and in **IRM 10.8.1, *Information Technology (IT) Security, Policy and* Guidance** if the contractor has access to, and/or uses or operates IRS information systems containing IRS information at facilities controlled by IRS). This shall include full cooperation with all government security and safeguard related requests and activities that are within the scope of these policies and procedures including but not necessarily limited to:
- Post-award conferences,
- Security self-assessments,
- Contractor and Contractor employee background investigations (see IRM 1.23.2, *Security Investigations, Contractor Investigations*),
- Training,
- On-site security reviews, and
- Preparing and implementing a "Plan of Action and Milestones" (POA&M) to adequately mitigate or otherwise address unacceptable risks identified by the Government.

**Basic Security and Safeguard Concepts**

The following basic concepts are applicable under the terms of this Contract, however it should be understood that this is not an all-inclusive listing of requirements that may apply.

The Contractor shall implement management, operational and technical controls to incorporate the following security and safeguard concepts in his/her business operations:
- ID Media/Card Keys/Keys
- Document Security
- Incident Reporting
- Security Awareness

Guidance is provided in **Pub. 4812 – *Contractor Security Controls*** (and in **IRM 10.8.1,** *Information Technology (IT) Security, Policy and Guidance* if the contractor has access to, and/or uses or operates IRS information systems containing IRS information at facilities controlled by IRS).

A copy of **Pub. 4812 –** *Contractor Security Controls* can be found on www.irs.gov by performing a search on "Procurement".

A copy of **IRM 10.8.1,** *Information Technology (IT) Security, Policy and Guidance* can be found on www.irs.gov by performing a search on "Internal Revenue Manual" followed by clicking on the Internal Revenue Manual link and then clicking on the "Part 10 – *Security, Privacy and Assurance*" link.

**Contractor Background Investigations**

The Service requires all persons with access to Taxpayer information to pass a background investigation. The investigation requires the individuals to provide significant information to the investigation team. It will also require each person to provide a set of fingerprints. This activity requires several hours of effort for each individual and this time is not chargeable to the Contract.

Unless other arrangements are made with the COR, the Contractor must complete and return the background investigation paperwork data to Contractor Security Management (CSM) within 5 calendar days of Contract award.
The Contractor personnel must receive either "interim approval" or a "final decision" for staff-like access before being provided with unescorted access to sensitive information.

**Contractor Training Requirements**

The Key Personnel and the Contractor's employees and, if applicable, sub-contractors shall be required to complete "Security" awareness training to be provided by the Service prior to being granted unescorted access to sensitive information.

Contractor personnel performing technical security roles requiring specialized training shall receive a minimum of twelve (12) hours of continuing professional education annually at the cost of the Contractor.

Contractor personnel performing non-technical security responsibilities requiring specialized training shall receive a minimum of eight (8) hours of continuing professional education annually at the cost of the Contractor.

**Contractor Security Self-Assessment**

The Service may, at its option, require the Contractor to perform a security self-assessment prior to being granted unescorted access to sensitive information. If requested, the security self-assessment must be completed and returned to the Contracting Officer's Representative (COR) within two weeks of the date of award of the Contract.

**See Section J - Exhibit 5 - Contractor Security Self-Assessment for an example of a security self-assessment check sheet.**

**Meetings**

Meetings involving the Contractor called or scheduled by the POC or COR and may be in the nature of conference telephone calls or on-site, face-to-face meetings, at the election of the POC or COR. The POC or COR shall provide reasonable advance notification to the Contractor regarding the location and expected duration of meetings, conference calls, etc.

**Records, Reports and Workpaper Maintenance and Organization**

Records, Reports and Workpapers shall be maintained and organized in accordance with the requirements set forth in IRM 4.46.6, *LB&I Guide for Quality Examinations, Workpapers and Reports Resources*. IRMs may be accessed at www.irs.gov.

**Return of Service Property**

All property of the Service in the possession of the Contractor in direct relation to the requirements of this Contract shall be returned to the Service prior to final payment for services rendered by the Contractor.

**Abbreviations and Acronyms**

    AQL = Acceptable Quality Level
    CFR = Code of Federal Regulations
    CO =   Contracting Officer
    COR = Contract Officer's Representative
    CSM = (IRS) Contractor Security Management (Formerly CSLP)
    CSLP = Contractor Security Lifecycle Program (Currently CSM)
    FAR = Federal Acquisition Regulations
    FIPS = Federal Information Processing Standard
    FISMA = Federal Information Security Management Act
    GSA = General Services Administration
    IP = Intellectual Property
    IT = Information Technology
    I.R.C. = Internal Revenue Code
    IRM = Internal Revenue Manual
    IRS or Service = Internal Revenue Service
    LB&I = Large Business and International Division of the IRS
    NIST = National Institute of Standards and Technology
    NBIC = National Background Investigation Center
    POC = Point of Contact
    PRST = Performance Requirements Summary Table
    PWS = Performance-based work statement
    QASP = Quality Assurance Surveillance Plan
    SBU = Sensitive but unclassified
    RRA98 = Revenue Reform Act of 1998
    TC = Team Coordinator
    USC = United States Code (also U.S.C.)

**Documents**

**Quality Assurance Surveillance Plan (QASP)**

A QASP may be utilized by the Service and sets forth guidelines that may be used in evaluating the technical performance of the Contractor. The procedures set forth in the QASP are not contractually binding on the Service or on the Contractor. The Contractor will be provided a copy of the QASP for informational purposes only – **See below - Section F2 Quality Assurance Surveillance Plan (QASP).**

**Surveillance Activity Checklist**

A "Surveillance Activity Checklist" may be used by the COR/Evaluator to document Contractor's performance – **See Section J, Exhibit 1 - Surveillance Activity Checklist**.

**Decision Table**

A "Decision Table" may be used by the COR/Evaluator in documenting symptoms and in identifying possible sources of performance problems as well as assisting in the determination of contributing factors – **See Section J, Exhibit 2 - Decision Table**.

**Performance Requirements Summary Table (PRST)**

A PRST may be utilized by the Government and describes to the Contractor how the Service will monitor the Contractor's performance. The weights found in the table represent the maximum of the contract value that the Government can deduct for nonperformance or unsatisfactory performance of a service requirement. The Government has the unilateral right to change the Method of Inspection found in the table without notice to the Contractor – **See Section J, Exhibit 3 - Performance Requirements Summary Table.**

**III. METHOD OF PAYMENT**

**Evaluation of Services (See Section F - Quality Assurance Surveillance Plan – QASP))**

The Contractor's services will be evaluated by the Internal Revenue Service upon completion of all services directed by the Service under this Contract.

**Holdback Provision:**

For purposes of FAR 52.232-7(a)(2), the amount withheld shall be 0% of the amount due.

**IV. GENERAL PROVISIONS**

**Disclosure Prohibitions**

The Contractor may, to the extent authorized by the Internal Revenue Code (I.R.C.) for tax administration purposes, and as necessary for the performance of his or her duties under this Contract, be given access to confidential tax returns and return information, as those terms are defined in I.R.C. § 6103(b)(1) and (2), respectively.  Unauthorized disclosures of tax returns or return information may subject the Contractor to personal liability for civil damages under I.R.C. § 7431(a)(2), criminal prosecution under I.R.C. § 7213, or both.

**Also see Section H – Disclosure, Safeguards and Security.**

**Limited Authority of the Contractor**

The Contractor shall not have the authority to perform inherently governmental functions as described in OFPP Policy Letter 11-01 including, but not necessarily limited to, any government policy-making, decision-making, portraying the Contractor as a representative of the government or performing governmental managerial responsibilities. (http://www.whitehouse.gov/omb/procurement_index_work_performance/)

**Also see G.1 IR1052-96-019 Authority - Contracting Officer, Contractor Officer's Representative and Contractor's Project Manager.**

**Relationship with Office of Chief Counsel for the IRS**

It is clearly understood that the Office of Chief Counsel for the Internal Revenue Service, the attorneys assigned to this matter, are the representatives of the Service and are not the legal representative of the Contractor and cannot provide legal advice to the Contractor.