UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Petitioner,<br>v.<br>MICROSOFT CORPORATION, et al.,<br>Respondents. | Case No. C15-00102RSM |
| UNITED STATES OF AMERICA,<br>Petitioner,<br>v.<br>CRAIG J. MUNDIE, et al.,<br>Respondents. | Case No. C15-00103RSM |

**ORDER GRANTING ENFORCEMENT OF SUMMONS**

## I. INTRODUCTION

This matter comes before the Court on the United States of America's Petitions to Enforce Internal Revenue Service Summons (Case No. 15-102, Dkt. #1; Case No. 15-103, Dkt. #1), and this Court's Orders to Show Cause why Respondents Microsoft Corporation, *et al.* ("Microsoft") should not be compelled to comply with the summonses served upon them (Case No. 15-102, Dkt. # 23; Case No. 15-103, Dkt. # 24). For the reasons stated herein, the Court

finds that Respondents have failed to meet their burden to demonstrate that enforcement of these summonses would result in an abuse of the Court's process.

## II. BACKGROUND

### A. Procedural Background

These summons enforcement proceedings arise out of an investigation by the Internal Revenue Service ("IRS") into Microsoft's 2004 – 2006 taxable years.  Case No. 15-102, Dkt. #37, ¶ 2.  The IRS audit, ongoing since 2007, focuses on two cost-sharing arrangements that Microsoft entered into with its affiliates in Puerto Rico and Asia during the subject time period. *Id.* at ¶¶ 3-4; Case No. 15-102, Dkt. #40, ¶ 5.  Through October 2014, the IRS examination team conducted fact gathering by issuing over 200 information documents requests ("IDRs") to Microsoft and conducting informal interviews with its employees. *Id.* at ¶¶ 26, 27, 71.

In furtherance of its investigation, the IRS issued a designated summons to Microsoft on October 30, 2014, pursuant to 26 U.S.C. §§ 7602 and 6503(j).  Case No. 102, Dkt. #37 at ¶ 24; Dkt. #1, ¶ 7.  Beginning December 11, 2014, the IRS filed a series of petitions with this Court to enforce this and related designated summonses, which this Court consolidated into the two above-captioned cases.  The Court determined that the IRS had made the requisite initial showing to obtain the Court's enforcement of the summonses and issued Orders to Show Cause why they should not be enforced.  Case No. 15-102, Dkt. # 23; Case No. 15-103, Dkt. #24.  Microsoft filed Motions seeking an evidentiary hearing in order to demonstrate that discovery into the IRS's alleged abuse of process was warranted prior to the Court's final enforcement determination.  Case No. 15-102, Dkt. # 34; Case No. 15-103, Dkt. #35.  A single consolidated hearing was granted and held on August 25, 2015.  Case No. 15-102, Dkt. ##56, 82; Case No. 15-103, Dkt. #57.  During that hearing, only a single witness was called by Microsoft—IRS

employee Eli Hoory. After hearing Mr. Hoory testify but before the Court could rule on whether to grant discovery in these matters, Microsoft filed a notice withdrawing its request for additional discovery.[1] *See* Case No. 15-102, Dkt. #86. The parties then filed briefing on the ultimate issue of enforcement of these summons. *See* Case No. 15-102, Dkt. ##93, 97, 100.[2] Oral argument was held on November 6, 2015. Case No. 15-102, Dkt. #103.

**B. Factual Background[3]**

During the IRS audit investigation at issue, Microsoft agreed to several extensions of the statute of limitations deadline for the IRS to end its investigation. *See* Dkt. #93 at 10; Dkt. #96. In November 2013, the IRS requested that Microsoft extend the statute of limitations from June 30, 2014, to December 31, 2014. Dkt. #96 at ¶ 13. Microsoft consented to this extension on February 28, 2014. *Id.* at ¶ 19. The IRS also sent Microsoft timelines consistent with the IRS' "Roadmap" for transfer pricing audits. Case No. 15-102, Dkt. #94 at ¶¶ 2-5; Dkt. ##94-1, 94-2, 94-3, 94-4. According to the final audit timeline given to Microsoft, the IRS planned to present its "conclusions" to Microsoft in November 2013, engage in "[d]ialogue with Taxpayer on Issues," and, if the parties could not reach agreement, move by April 2014 to "Resolution" or "Issuance of 30-Day Letter." Case No. 15-102, Dkt. #94-4.

*Quinn Emanuel Contract*

Microsoft's arguments against enforcement concern the IRS's engagement of the law firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), as a private contractor to

[1] In addition to these matters, Microsoft has sought related documents from the IRS by way of several Freedom of Information Act ("FOIA") requests. A first FOI action filed in the U.S. District Court for the District of Columbia was dismissed on stipulation of the parties on November 24, 2014 after the IRS agreed to produce of copy of the Quinn Emanuel contract and related documents. *See Microsoft Corp. v. IRS*, Case No. 14-cv-01982-RBW (D.D.C. Nov. 24, 2014). A second FOIA complaint is currently before this Court. *See Microsoft Corp. v. IRS*, No. 2:15-cv-00369-RSM (W.D. Wash.).

[2] The Court will cite to the Parties' briefing as Dkt. ##93, 97, 100 without reference to the 15-102 case number.

[3] The following factual background will be limited to the facts necessary for the Court to engage in its limited role of enforcing these summonses, consistent with Clarke, infra.

assist in the IRS's examination of Microsoft's 2004 to 2006 tax years.  In May of 2014, The IRS awarded Quinn Emanuel a contract for "Professional Expert Witness" services, agreeing to pay the firm $2,185,500 for its work investigating the Americas cost sharing arrangement. Case No. 102, Dkt. #37, ¶ 20; Case No. 102, Dkt. #40, ¶ 78; Case No. 15-102, Dkt. # 36-4 (contract), §§ B.2, C. Microsoft asserts that this contract represented the first time that the IRS had engaged private civil litigators in a U.S. income tax audit.  *Id.* at ¶ 6.

Although the contract states that it covers Quinn Emanuel's performance throughout four non-severable phases, only the first phase is actually detailed therein. *See* Case No. 15-102, Dkt. #36-4 at 7-8, 22.  Among services to be performed in the first phase, Quinn Emanuel is to "support continued development, analysis, and preparation of the issues under examination" by "identifying additional information deemed necessary to develop clearly defensible positions, including any necessary data, documents, or interviews; assisting with further factual development through document review, identifying and preparing new document requests, preparing for or participating in interviews[; etc.]." *Id.* at 8.

*Temporary Regulation*

On June 9, 2014, the Treasury Department and the IRS issued, without notice and comment, a "temporary regulation" providing for third-party contractors like Quinn Emanuel to participate in the summons process. *See* 26 C.F.R. § 301.7602-IT(b)(3); Case No. 102, Dkt. #36, ¶ 7. The regulation "make[s] clear" that third-party contractors "may receive books, papers, records, or other data summoned by the IRS and take testimony of a person who the IRS has summoned as a witness to provide testimony under oath." 79 Fed. Reg. 34,625 (June 18, 2014); 26 C.F.R. § 301.7602-IT(b)(3).

*Role of Quinn Emanuel in Audit*

The IRS attests that, owing to time spent completing procedural and administrative prerequisites, Quinn Emanuel did not begin its performance under the contract until July 15, 2014, over one month after the issuance of the temporary regulation. Case No. 102, Dkt. #40, ¶ 80. Nonetheless, the IRS did not disclose Microsoft's retention of counsel from Quinn Emanuel until informing Microsoft on August 28, 2014, that "outside counsel from Quinn Emanuel retained to assist" in the examination may be included in scheduled consensual interviews. Case No. 102, Dkt. #37, ¶ 16; Dkt. #37-2. Quinn Emanuel representatives subsequently attended Microsoft employee interviews held by the IRS during the weeks of September 22 and October 6, 2014, with their direct participation limited to asking follow-up questions. *Id.* at ¶ 84.

The IRS concedes that Quinn Emanuel reviewed documents and transcripts of the interviews and completed an independent assessment of the positions taken by the IRS and Microsoft with respect to the Americas cost sharing arrangement. *Id.* at ¶ 85. While the IRS attests that Quinn Emanuel did not prepare initial drafts of any of the summonses at issue here, it further concedes that Quinn Emanuel was given an advanced copy of a designated summons and that its comments were sought. *Id.* at ¶ 86.

## III. DISCUSSION

### A. Legal Standard

If a taxpayer neglects or refuses to obey a designated summons, the IRS may bring an enforcement action in United States district court. 26 U.S.C. § 7604(b); *see United States v. Clarke*, 134 S.Ct. 2361, 2365 (2014). In order to obtain the court's enforcement, the IRS must make an initial showing of "good faith" by establishing its compliance with the *Powell* factors: "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may

be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). The Court has already found that the IRS made this *prima facie* showing in this case. *See* Case No. 15-102, Dkt. # 23; Case No. 15-103, Dkt. # 24.

Once the IRS makes this initial showing, the burden shifts to the taxpayer to demonstrate that enforcement of summons would result in an abuse of the court's process. *Powell*, 379 U.S. at 58; *see also United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993). This adversarial enforcement proceeding exists to protect against abuse of the power vested in tax collectors. *See Clarke*, 134 S.Ct. at 2367. At the same time, enforcement proceedings are to be "summary in nature," and the court must eschew any broader role than determining whether the IRS issued the contested summons in good faith and without an improper purpose. *Clarke*, 134 S.Ct. at 2367 (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)).

A taxpayer "may challenge the summons on any appropriate grounds, including failure to satisfy the Powell requirements or abuse of the court's process." *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (citing *Reisman v. Caplin*, 375 U.S. 440, 449, 11 L. Ed. 2d 459, 84 S. Ct. 508 (1964)) (internal quotation marks omitted). "The taxpayer must allege specific facts and evidence to support his allegations of bad faith or improper purpose." *Id.* (citing *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985)) (internal quotation marks omitted). Although there is no definitive list of activities that can constitute an abuse of the court's process, *Powell* offers the examples of summons issued "to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58.

Importantly, "[e]ven the co-existence of an improper purpose would not prevent enforcement of the summons if the existence of a legitimate purpose was not rebutted by the taxpayer." *United States v. Stuckey*, 646 F.2d 1369, 1375 (9th Cir. 1981). The applicability of this holding is acknowledged by both parties. The Ninth Circuit, citing the Supreme Court, has stated that "[t]hose opposing enforcement of a summons… bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service…. Without a doubt, this burden is a heavy one." *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316, 57 L. Ed. 2d 221, 98 S. Ct. 2357 (1978)).

**B. The IRS' Evidence of a Legitimate Purpose**

The IRS argues that these summonses are being issued "to do exactly what Congress authorized it to do: make an accurate determination of Microsoft's tax liability." Dkt. #97 at 18. Or to put it more simply, the IRS has repeatedly argued that the goal of these summonses is to help the IRS "get to the right number." *See* Dkt #97 at 9; Dkt. #101 at 54:11; 57:18-20. The IRS further argues that these summonses are needed "to support those numbers with a record that will withstand an inevitable cascade of challenges from Microsoft." Dkt. #97 at 9. These assertions are not just argument, they are based on citations to evidence, specifically the testimony of the sole witness brought before the Court in this matter, IRS employee Eli Hoory. Mr. Hoory testified as follows:

> Q. Earlier today you were accused of asking for this information in these summonses to essentially prepare for tax court litigation. Is that why these summonses were prepared and the information sought?
>
> A. No. We certainly know there is a possibility that this will wind up in tax court. And, obviously, given the state of the exam, that likelihood is obviously higher than it might be in another case.

> However, the summons is, just like in any examination, they are supposed to help us get to the right number.
>
> ….Let me be clear. This case has not been designated for litigation yet. We are still seeking information to get to the right number.

Dkt. #94-29 (Transcript of August 25, 2015, Evidentiary Hearing) at 192-193.

**C. Microsoft's Evidence of an Improper Purpose**

Microsoft's evidence of the IRS' bad faith or improper purpose can be divided into four allegations: that the IRS deceived Microsoft into extending the statute of limitations, that enforcing the summonses would allow Quinn Emanuel contractors to "take testimony" contrary to 26 U.S.C. §7602, that enforcing the summons would allow Quinn Emanuel to impermissibly conduct tax examination functions, and that the hiring of Quinn Emanuel shows that the IRS was or is improperly preparing for tax court rather than conducting an audit.[4] *See* Dkt. #93 at 2-3. The Court will address each in turn.

**a. Statute of Limitations Extension**

Microsoft argues, in their "Statement of Facts," that "[a]s Microsoft cooperated and awaited a final determination, the IRS changed to a litigation posture, planning to extend the audit to allow trial lawyers from Quinn Emanuel to prepare their case for Tax Court." Dkt. #93 at 8. Microsoft argues, "[w]hat Microsoft did not know was that the IRS intended to use the extension of the limitations period to hire trial counsel from Quinn Emanuel and to use the agency's broad examination power to begin trial preparation." *Id.* at 9. As evidence for this

---

[4] Microsoft appears to raise an additional allegation in its Reply, arguing that the IRS intends to obtain legal advice from Quinn Emanuel, and that such legal advice is "contrary to Section 7803(b)'s requirement that legal advice to the IRS be provided by the Office of Chief Counsel." Dkt. #100 at 19. This issue was not raised in Microsoft's initial brief—the closest Microsoft comes to raising this issue is a single sentence at the end of a paragraph, "Congress has also explicitly reserved the role of providing legal advice to the IRS Office of Chief Counsel" Dkt. #93 at 33 (citing 26 U.S.C. § 7803(b)). The Court finds that this argument was not properly raised in Microsoft's initial brief, thus depriving the IRS of the opportunity to properly respond, and it will not be addressed.

assertion, Microsoft merely points to the *timing* of the two events: the IRS hired Quinn Emanuel; the IRS contacted Microsoft to extend the limitations period. *See id.*

In Response, the IRS points out that it "had no duty or reason to disclose to Microsoft, in February 2014, a *potential* contract for legal advice and audit support." Dkt. # 97 at 22 (emphasis in original). The IRS also argues that "disputes over statutes of limitations fall outside of the scope of the limited purpose served by summons enforcement proceedings, citing *United States v. Lask*, 703 F.2d 293, 300 (8th Cir. 1983); *United States v. McHenry*, 552 F. Supp.2d 571, 574-75 (E.D. Va. 2008).

On Reply, Microsoft points to no legal authority requiring the IRS to disclose the hiring or potential hiring of Quinn Emanuel before seeking an extension of the statute of limitations. At oral argument, Microsoft reiterated their position that "the summonses were the result of the IRS asking and obtaining statute of limitations extensions from Microsoft, while they were hiding the fact that they were engaging Quinn Emanuel." Dkt. #104 at 36. In the end, Microsoft frames this issue as one of public policy—that the IRS should be honest with taxpayers. *Id.* at 36-37. When asked at oral argument if there was "some law, rule or regulation that would have required the IRS to disclose its plan to use Quinn Emanuel," Microsoft responded in the negative. *Id.* at 38. When asked if the IRS "hiding the ball" constituted "bad faith," Microsoft again responded in the negative, insisting instead that the IRS's actions constituted a lack of candor. *Id.* The Court finds that Microsoft has presented insufficient facts and legal authority to connect its statute of limitations extension claim to the kind of improper purpose or bad faith required to prevent the enforcement of these summonses.

//

//

**b. "Taking Testimony"**

Microsoft argues that these summonses are unenforceable because they will allow the IRS to use Quinn Emanuel contractors to "unlawfully take testimony." Dkt. #93 at 16. Microsoft argues that the IRS has already admitted in briefing that it plans to have Quinn Emanuel contractors ask questions of the summoned individuals under oath. *Id.* (citing Case No. 15-102, Dkt. #39 at 15 & n.9). Microsoft argues that allowing Quinn Emanuel and other outside contractors to ask questions of summoned individuals under oath "would violate the Internal Revenue Code, which provides that only the Secretary of the Treasury and specified delegates, not outside contractors, can take summoned testimony," citing 26 U.S.C. §7602. *Id.* Microsoft also argues that the temporary regulation promulgated by the IRS related to this issue is invalid because: "(1) it is inconsistent with the unambiguous text of the Internal Revenue Code; (2) it is not the product of reasoned decisionmaking; and (3) it was unlawfully issued without notice and comment." *Id.* Microsoft connects the potential violation of §7602 with these summonses by citing to *In re Grand Jury Proceedings*, 450 F.2d 199, 209 (3d. Cir. 1977) for the proposition that, "[i]t seems beyond question that a district court may not compel the violation of an express congressional prohibition." Dkt. #93 at 16-17; Dkt. #100 at 6.

The Court will first address the §7602 issue, i.e. whether the IRS can delegate the asking of questions to a contractor under this statute. Microsoft argues that this Section authorizes only the "Secretary" to take summoned testimony in support of tax examinations, and that "Secretary" is defined as "the Secretary of the Treasury or his delegate" under §7701(a)(11)(B), and that "delegate" is further defined as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority," citing §7701(a)(12)(A)(i). Dkt. #93 at 17.

Microsoft further points to "congressional sensitivity" as to who conducts sworn interviews. *See id.* at 18. Microsoft acknowledges that contractors can, in fact, assist in the taking of testimony by "suggesting questions for the IRS to ask." *Id.* at 19 (citing *United States Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 566 (D.C. Cir. 2004)).

In Response, the IRS argues that §7602 does not place limits or restrictions on how the Secretary delegates its authority to gather information. The IRS argues that "[t]he power to 'take testimony' is inherently governmental, but asking questions of a witness (gathering facts) is not…. Contrary to Microsoft's argument, the statute does not require that 'the Secretary' 'take testimony.' In fact, the statute does not require or limit the Secretary to do anything. It grants him authority." Dkt. #97 at 26 (emphasis in original). The IRS argues that Congress has not dictated procedures to be followed in an interview with IRS lawyers and a contractor, and cites to *Euge v. United States*, 444 U.S. 707, 711-12 (1980) for the proposition that: "…if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies." Dkt. #97 at 26.

At Oral Argument, Microsoft provided the following clarification of their argument:

> THE COURT: All right. Well, let me ask you this. Looking at that section [§7602] right there that you've got, and you've got it on the screen, broken down into three separate pieces; right?
> MS. EAKES: Right.
> THE COURT: Can a third-party contractor examine any books, papers, records, or other data?
> MS. EAKES: Yes. But they can do that under 6110 -- oh, 6103….
> THE COURT: Here, can they do the same thing with Quinn Emanuel, let them examine books, papers, records, or other data of Microsoft?
> MS. EAKES: They can let them under -- well, if the Court means "examine" in terms of conduct the audit, is what we're saying, can they look at the documents as a contractor, under 6103? Yes, as long as, again, they comply with everything under that statute. But

> what they can't do is examine, meaning they can't perform the audit themselves. That's what we say they're doing.
> THE COURT: Can they suggest questions for the IRS to ask?
> MS. EAKES: Yes, they can suggest questions.
> THE COURT: Can they be in the same room when that examination is taking place?
> MS. EAKES: Yes.
> THE COURT: So --
> MS. EAKES: They just can't ask the questions.
> THE COURT: So if you've got a lawyer for the IRS, right, that's one of the delegates of the Secretary in the room, you've got Quinn Emanuel lawyers reviewing all the data, all the documents, they're listening to the testimony, and they've got a notepad, and they write down the questions, and they hand it over to the IRS lawyer, then it would be fine?
> MS. EAKES: Yes. And let me explain why, because you're looking at me skeptically. And I think that the important difference, Your Honor, is that suggesting questions -- the important check there is that you still have the IRS lawyer there who is the person who has to exercise their discretion and judgment as to whether or not to ask that question. And that's the difference between helping and suggesting….

Dkt. #104 at 31-33.

Microsoft thus admits that the Quinn Emanuel is permitted under law to examine Microsoft's books and records, formulate questions to ask witnesses under oath, attend those interviews, and even ask questions via notepad so long as it is the IRS lawyer who speaks the words. However, there is nothing in §7602 that prevents the IRS from taking this a step further and having the contractor ask a question while an IRS lawyer continues to run the interview.

The Court is troubled by Quinn Emanuel's level of involvement in this audit. The idea that the IRS can "farm out" legal assistance to a private law firm is by no means established by prior practice, and this case may lead to further scrutiny by Congress. However, Microsoft has failed to convince the Court that §7602, which empowers the Secretary to take certain actions, actually limits the IRS' ability to delegate the asking of certain questions to contractors like Quinn Emanuel attorneys. Microsoft points to no other legal authority that definitively

prevents the IRS from so delegating. The Court finds that Microsoft's §7602 arguments fail to support its burden of proving that these summonses are in bad faith or for an improper purpose. Because Microsoft has failed to prove that the IRS lacked this authority under statute, the validity or invalidity of the temporary regulation is moot and need not be addressed.

**c. Quinn Emanuel Conducting Tax Examination Functions**

Microsoft argues that the IRS' intended use of Quinn Emanuel would constitute a contractor engaging an inherently-governmental function. *See* Dkt. #93 at 33-34. The parties appear to agree that "a contractor cannot perform an inherently governmental function," but Microsoft goes on to argue that "[t]axation is one such inherently governmental function," and that the IRS is delegating "the audit function" to Quinn Emanuel, and that "Quinn Emanuel's role almost completely overlaps the IRS's own designated role." *Id.* at 34.

In Response, the IRS argues that its intended use of Quinn Emanuel does not constitute engaging in an inherently-governmental function, and that Microsoft's narrative is contrary to the testimony of Mr. Hoory. *See* Dkt. #97 at 23 (citing Dkt. #94-29 at 74-75; 189-191). The IRS cites to 31 U.S.C. § 501 for the definition of an inherently governmental function as "a function that is so intimately related to the public interest as to mandate performance by Government employees," and for the proposition that an inherently governmental function does not normally include "gathering information for or providing advice, opinions, recommendations, or ideas to Federal Government officials." *Id.* at 23.

The Court finds that Microsoft's characterization of the role of Quinn Emanuel greatly exceeds what is evident in the record—Microsoft has no factual basis for the grand assertion that Quinn Emanuel was or will be engaging in taxation or conducting the audit of Microsoft. Rather, the facts appear to indicate that Quinn Emanuel will be gathering limited information

for the IRS under the direct supervision of the IRS. Further, Microsoft cites to no legal authority indicating that asking questions in an interview is an inherently-governmental function. The Court finds that Microsoft's limited argument on this subject fails to meet or support its heavy burden of proving the summonses are in bad faith or for an improper purpose.

**d. Preparing for Tax Court**

More so than Microsoft's other arguments, this claim directly attacks the IRS' claim of a legitimate purpose for these summonses. Microsoft begins by citing *Stuckey, supra* ("where a summons has a proper purpose along with an improper one, it may still be enforced"), acknowledges the IRS' position that its audit is incomplete, i.e. it is still trying to get to "the right number," but argues that "the trajectory of the audit and the timing of the summonses tell a different story – the IRS was almost done with its audit until Quinn Emanuel came along." Dkt. #93 at 32. Microsoft argues that "[t]he summonses themselves, therefore, have a solely improper purpose, which makes them unenforceable." *Id.* Microsoft goes on to acknowledge the holding in *United States v. Richey*, 632 F.3d 559 (9th Cir. 2011), "that summonses issued during an audit may be enforced even after the case progresses beyond the audit stage." *Id.*

Microsoft argues that Quinn Emanuel was "hired as trial counsel to prepare for Tax Court." Dkt. #93 at 28. As evidence for this argument, Microsoft cites Quinn Emanuel's webpage, *see id.* at 28 ("The firm's website and marketing materials tout their expertise as 'trial lawyers'"), *id.* at 33 ("[Quinn Emanuel] focused on 'winning' in a 'zero sum' game… *See*… Quinn Emanuel 'About Us' webpage"). The Court finds this evidence entirely speculative and unhelpful for determining the specific scope of work of Quinn Emanuel contractors. Microsoft next points to the number of "phases" of Quinn Emanuel's contract with the IRS and that the contract "commits the firm's lawyers to resolving conflicts that would prevent their

appointment as 'special government employees,' as would be necessary to represent the IRS in Tax Court." *Id.* at 28-29. On Reply, Microsoft sums up their position on this topic thusly: "[i]n an audit this complex, the IRS can always point to some document or interview it does not have. But, in light of the history of this audit, the IRS's own documents, and the timing of hiring QE, the best explanation for these summonses is that they exist solely to facilitate QE's preparation 'in anticipation of litigation.'" Dkt. #100 at 17.

In its Response, the IRS argues that Microsoft offers only "coincidence and speculation" and that all of this is directly contradicted by Mr. Hoory's testimony. Dkt. #97 at 19-20. The IRS points to the testimony of Mr. Hoory that the Quinn Emanuel contract was, in fact, for one phase, and that any language mentioning multiple phases was *pro forma* language leftover as a drafting error. *See* Dkt. #94-29 at 137-140 ("Let me be very clear. There was only one phase awarded."). The IRS points to Mr. Hoory's testimony that the "special government employee" language in the contract was only included to preserve the availability of Quinn Emanuel attorneys, *if* the matter later ended up in Tax Court. *Id.* at 140-142 ("…we might get to tax court; and if we did, we might want Quinn Emanuel to assist. If that did happen, it would have to be subject to a new contract.").

The Court agrees with the IRS—Microsoft relies solely on speculation and *post hoc* arguments. This can be seen clearly in the first two sentences of its briefing: "After auditing Microsoft for over seven years, the IRS retained Quinn Emanauel, a private law firm specializing in trying commercial cases. Only then did the IRS issue summonses seeking documents and testimony." Dkt. #93 at 8.[5] The record does not contain any direct evidence that these summonses were issued to circumvent the discovery procedures of tax court. Nor is

[5] Microsoft's briefing begins with a Table of Contents and Table of Authorities, which, together with the caption, occupy the first seven pages of its brief. *See* Dkt. #93.

there any direct evidence that they were issued by, because of, or at the behest of Quinn Emanuel. It is inaccurate, under any interpretation of the facts, for Microsoft to argue that these summonses were issued solely to facilitate Quinn Emanuel's preparation for litigation—as if Quinn Emanuel were running the audit. While there is significant evidence that Quinn Emanuel was hired for its expertise in litigation, there is still uncontroverted testimony that these summonses were issued to help the IRS "get to the right number." The Court's role in this matter is not to pass judgment on the IRS' contracting practices, but to enforce or not enforce the summonses.

For further authority to issue these summonses while simultaneously contemplating litigation, the IRS cites to *PAA Mgmt., Ltd. v. United States*, 962 F.2d 212, 219 (2nd Cir. 1992), where the Second Circuit stated "we cannot agree with the suggestion that the prospect of an eventual court challenge by a taxpayer or similar entity to an IRS determination, and the likelihood that otherwise legitimate and relevant information sought by the IRS might eventually be discovered in that proceeding, deprives the IRS of its authority to summons the information at an earlier point in time in the process." The IRS also cites to *Sterling Trading, LLC v. United States*, 553 F. Supp. 2d 1152, 1159-1160 (C.D. Cal. 2008), where that district court concluded that the taxpayer failed to carry its "heavy burden" on a similar claim that the IRS was using summonses as a "pre-litigation discovery tool." The Court finds these cases instructive.

Weighing the testimony of Mr. Hoory against the speculations of Microsoft, and acknowledging that Microsoft has the "heavy" burden of proof in this matter, *see United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997), the Court finds that Microsoft has entirely failed to meet its burden of proof necessary to prevent the enforcement of these summonses.

Finally, it is worth noting that because the Court finds that the IRS had at least one legitimate purpose for these summonses—to get to "the right number" for the audit, even *if* Microsoft had convinced the Court that these summonses were *also* issued in bad faith, e.g. by deceptively obtaining a statute of limitations extension, or issued for an *additional* improper purpose, e.g. at the nefarious behest of Quinn Emanuel, such "co-existence of an improper purpose would not prevent enforcement of the summons if the existence of a legitimate purpose was not rebutted by the taxpayer." *Stuckey*, 646 F.2d at 1375.

**IV. CONCLUSION**

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby FINDS and ORDERS that the United States of America's Petitions to Enforce Internal Revenue Service Summons (Case No. 15-102, Dkt. # 1; Case No. 15-103, Dkt. # 1), are GRANTED.

DATED this 20 day of November 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE