

KPMG LLP
Suite 900
801 Second Avenue
Seattle, WA 98104

Telephone 206 913 4000
Fax 206 913 4444
Internet www.us.kpmg.com

August 31, 2004

**PRIVATE**
Mr. Glenn Cogswell
International Tax Director
Microsoft Corporation
One Microsoft Way, Bldg. 4
Redmond, WA 98052-6399

Dear Glenn:

We are pleased you have engaged us to provide tax consulting services regarding an Intangible Holding Company (IHCo) structure for Microsoft Corporation's ("MSFT") operations in Puerto Rico. This letter confirms the scope and related terms of your engagement of KPMG LLP (KPMG).

With MSFT's assistance, KPMG will approach this process in three phases: Feasibility, Design, and Implementation. The scope of this engagement is limited to the Feasibility phase. After completion of the Feasibility phase, you will be in a position to decide whether to proceed with an IHCo structure and we will have a more detailed understanding of what will be required to assist you in designing and implementing an effective structure that is tailored to your business. This may allow us to identify opportunities for your review and approval to save time, internal expense and overall implementation fees. Upon completion of the Feasibility phase, if you wish to proceed, we will provide you with a separate engagement letter for the subsequent phases of the IHCo structure based on the specific outcome of the Feasibility phase.

We understand that you will require an understanding of the fees, issues and time required to implement and maintain an IHCo structure before deciding whether to engage us to assist you with the Feasibility phase. For this purpose, this letter provides you with a high-level overview of the Design, Implementation, and Post-Implementation phases, anticipated fee range for those subsequent phases, and project deliverables. The information related to the post-Feasibility phases is provided to assist you in your decision making process. These phases are not within the scope of this engagement.

**Scope of Services—Feasibility Phase**

Feasibility is Phase I of a three-stage process to create the IHCo structure for MSFT. Feasibility primarily involves information gathering and the modeling of tax benefits. At the end of Phase I, we will provide you with a summary of cost vs. benefits as well as a summary

KPMG LLP, a U.S. limited liability partnership, is the U.S. member firm of KPMG International, a Swiss cooperative.

**Government Exhibit 13**



Page 2
Mr. Glenn Cogswell
Microsoft Corporation
August 31, 2004

of the structure, product flow and business processes upon which our cost-benefit analysis will be based.[1] We will also address tax risks associated with the overall strategy.

*Feasibility Phase Deliverables*

The purpose of Phase I is to allow you to develop the information necessary to decide whether moving forward with an IHCo structure at this time is an advisable business decision. At the conclusion of this phase, we will provide you with the following project deliverables:

> ***Tax Model***—We will assist you in modeling the anticipated benefits of the IHCo structure over a ten-year period. The model is structured as a "with-and-without" analysis that will estimate the impact of the IHCo structure on the following factors:
>
> - Effect on MSFT's effective tax rate for financial reporting purposes[2]
> - Effect on earnings per share
> - Worldwide tax savings
> - Breakeven analysis on tax savings
> - Cash flow related to tax costs and savings
>
> ***Structure Outline***—A report summarizing the corporate and transactional structure in which the IHCo structure would operate as considered for purposes of the Tax Model.

## Requirements and Commitments of MSFT—Feasibility Phase

The Feasibility phase is dependent upon your involvement. Our fees and project timeline is based upon the modeling of a cost-sharing arrangement with a Puerto Rican CFC under the following alternatives:

- Buy-in to and cost-share the technology intangibles for all Windows and Office products sold in the Americas in the Retail channel
- Buy-in to and cost-share the technology intangible for all software products sold in the Americas in the Retail channel

---

[1] As discussed with you, the modeling will be based on the assumption that we utilize a Puerto Rico CFC with an effective tax rate determined by you. We will also assume a 2 percent withholding tax on outbound royalty payments unless otherwise directed. Please note that these are merely initial assumptions as outlined in the scope of this engagement. Other assumptions may be modeled where appropriate and as requested by you.
[2] For this purpose we will assume application of APB 23, application of FAS 23 and inclusion of equity-based compensation in the cost-sharing pool valued using the intrinsic value method.



Page 3
Mr. Glenn Cogswell
Microsoft Corporation
August 31, 2004

Furthermore our fees are based upon MSFT's timely assistance and provision of information as summarized in the Initial Information Request document dated August 9, 2004. To the extent the information requested is not provided in a timely manner or information is subsequently revised by you, our fees and/or timeline for project delivery are subject to change.

## Subsequent Project Phases

The following phases of the IHCo implementation are outside the scope of this engagement. However, the following summary information regarding Phase II and III is provided for your information.

*Design and Implementation*

After Feasibility is completed, we will approach the project in two additional phases: Design and Implementation.

During the Design phase, we will work closely with MSFT's personnel to review operational and tax issues identified during the Feasibility phase. During this phase, the preliminary IHCo structure will be evaluated and modified by management to accommodate operational constraints in the development of a final structure. At the end of the Design phase, a complete outline of the plan, and of the related projected tax benefits, will be presented for management's review and approval. MSFT should consult with legal counsel to review the design of the IHCo strategy to determine any potential legal issues that may arise in connection with its implementation.

When management agrees to a final plan and determines to move forward, we will prepare an implementation workplan for your review and approval. This workplan will include a detailed listing of all steps required during implementation, including assignment of responsibilities and target completion dates.

The steps will be executed during the Implementation phase. At the completion of the Implementation phase, KPMG will provide a manual of documentation supporting the IHCo structure for your review and approval. The manual will include documentation of recommended tax filing positions and an economic analysis. Please note that frequent consultation and meetings with MSFT's team will be necessary to complete the required implementation steps and to confirm that the tax strategies outlined in the Design phase are consistent with MSFT's business plan and operations. KPMG will provide MSFT's legal counsel with tax-related advice that is deemed necessary by MSFT's legal counsel to draft such documents and/or agreements.



*Project Phasing and Deliverables*

The following is a breakdown of the post-Feasibility phases by tasks and deliverables.

### Phase II – Design

Tasks
- Integrate business plan with the tax strategy – help with analysis of tradeoffs between operating and tax objectives
- Provide IHCo jurisdiction analysis
- Assist with design of structure to minimize U.S. income tax exposure
- Review the relevant intercompany agreements and operations of foreign subsidiaries
- Assist with economic analysis for buy-in/cost sharing

Deliverables
- Technical research paper outlining the relevant U.S. and foreign income tax issues associated with the tax structure
- Economic analysis with respect to the buy-in and cost sharing (the equivalent of a valuation of the transferred intangible property)

### Phase III – Implementation

Advice and assistance relative to:
- Establishing IHCo
- Establishing and/or transferring certain subsidiaries
- Intercompany agreements
- Assistance in obtaining foreign country tax rulings if necessary

Deliverables
- Formal report including technical documentation - U.S. tax issues, foreign permanent establishment memoranda, and IHCo structure organizational charts
- Tax-related advice that is deemed necessary by MSFT's legal counsel to draft such documents and/or agreements.

### Phase II and III Fee Range

Fees for the post-Feasibility phases are dependent upon the corporate and operational structure adopted by the company for its IHCo structure, the level of KPMG personnel involved in the project, and the level of involvement of MSFT personnel. Upon the completion of the Feasibility phase and at your request, we will provide you with a fee estimate and engagement letter for Phases II and III.

CONFIDENTIAL

4

KPMG_MS IRS 0002801



Page 5
Mr. Glenn Cogswell
Microsoft Corporation
August 31, 2004

ENGAGEMENT TEAM

I will be the project partner and will personally oversee and coordinate KPMG's participants in the project. I will be directly involved in the project and will attend all key meetings with MSFT personnel. Greg George, Senior Manager, will be assisting me with the coordination of the information-gathering tasks, as well as with the design and implementation phases of the engagement. Steve Lainoff and Manal Corwin of our Washington National Tax practice will serve as the key technical advisors and Steve Kadenacy and Dr. Anne Welsh, Director, and leader of our Economics Consulting Services practice will take the lead on transfer pricing and valuation matters related to the project. Rolando Lopez will be responsible for all Puerto Rico tax issues and potential ruling requests and as appropriate, additional KPMG professionals will be added to the support team.

The services will be provided under the direction of KPMG LLP, the U.S. member firm of KPMG International, and will include the participation of other member firms of KPMG International ("KPMG member firms"), as appropriate. KPMG LLP is a separate legal entity from other member firms of KPMG International. Advice relative to tax matters outside the United States will be based on tax advice provided by the KPMG member firm in the particular country and on the relevant tax authorities in that country. In rendering such advice, we may also consider U.S. tax treaties, their technical explanations, and judicial and administrative interpretations thereof.

In certain countries, a KPMG member firm is authorized to provide legal services within its jurisdiction. This engagement letter encompasses only tax services provided by KPMG member firms and does not encompass any legal services a KPMG member firm may be authorized to provide. Should the provision of such services not be proscribed by applicable independence rules and should MSFT choose to retain a KPMG member firm to provide legal services, including drafting of documents, in a particular country, MSFT and the KPMG member firm will enter into a separate fee arrangement and engagement letter for the provision of such legal services.

Fees

Our fees for this engagement (Feasibility phase only) will be $ 87–120 thousand based on our negotiated hourly rates for FY 2005 (see attached schedule). This fee estimate is based on the assumption that we will use client provided data to determine technology related profits and does not include the preparation of a profit-split analysis or functional interviews of relevant personnel by our Economics team. If you request us to prepare additional versions of the Tax Model outside the scope of this engagement or to do any other work outside the scope of this engagement, we will inform you of the fees for such additional work at the time of your request and will begin such additional services only upon your approval to do so. Our fees for



additional services will be invoiced based on our negotiated hourly rates for FY 2005. Out-of-pocket expenses will be invoiced separately. Our fees will be invoiced monthly and are payable per our standard billing arrangement.

## Timetable

We are prepared to begin the Feasibility phase immediately upon your acceptance of this engagement. Upon receipt of the information requested in the Initial Information Request document, we anticipate the completion of Phase I within 4-6 weeks.

## Other Matters

The attached Standard Terms and Conditions and approved modifications are made a part of this engagement letter. Please sign the enclosed copy of this letter to confirm our engagement and return it to us within 30 days.

We look forward to helping you integrate the IHCo strategy with your day-to-day operations and growth plans. We are pleased about this opportunity to work with MSFT. If you have any questions, please call me.

Very truly yours,

KPMG LLP

Brett A. Weaver
*Partner*

BAW:er

Enclosure

cc: Bill Sample, Microsoft
   Steve Lainof, KPMG
   Manal Corwin, KPMG
   Rolando Lopez, KPMG
   Steve Kadenacy KPMG
   Anne Welsh, KPMG
   Greg George, KPMG



Page 7
Mr. Glenn Cogswell
Microsoft Corporation
August 31, 2004


ACCEPTED:

**Microsoft Corporation**

_____
Authorized Signature

_____
Title

_____
Date



## Attachment A

## MICROSOFT-KPMG TAX FEE ARRANGEMENT
## MS FYE 6/30/2005

This schedule summarizes the global fee discount as agreed with Microsoft for the various categories of services outlined below.

**U.S. Office Routine Consultation** -- This includes services performed by KPMG LLP professionals that are not otherwise negotiated by separate arrangement as an Excluded Project/Consultation, described below. Flat rates for U.S. personnel under this category are as follows:

| | |
|---|---|
| Partner | $460 |
| Sr. Mgr | 435 |
| Manager | 325 |
| Exp. Staff | 240 |
| Staff | 185 |

**World Wide non-U.S. Office Consultation** – This includes services performed by KPMG affiliated offices other than KPMG LLP, with discounts determined according to the type of work—except for services otherwise negotiated by separate engagement as an Excluded Project, described below:

*Tax Compliance* – 75% realization - This could include income tax, VAT, trade tax, payroll tax and other compliance type projects. This could include elements of transfer pricing documentation.

*Routine Tax Consultation* – 84% realization - This could include a wide range of projects (income tax, compensation, some elements of transfer pricing and so on) which can usually be handled or supervised below the partner level with some, but generally modest partner involvement, related to issues that are not high risk issues.

*Routine tax audit or defense work* – 88% realization - This could include meeting with tax authorities related to routine tax issues. Clerical type work related to responding to information requests would usually be included as a compliance type project or routine tax consultation project.

**Excluded Projects/Consultations** – Fees to be negotiated –Included in the work to be separately negotiated as an Excluded Project would be projects where KPMG has an alliance partner, opinion letters and projects that have substantial opportunity for the company or significant tax risk to the company. This type of project includes solutions offered only to select KPMG clients with the expectation of providing significant value to participating clients. Similarly, Excluded Consultations include work by individual professionals whose rates for specific consultations would be separately negotiated to reflect a high level of experience and value to the Company.



## KPMG LLP
## Standard Terms and Conditions
## Tax Services

1. **Services.** It is understood and agreed that KPMG's services (the "Engagement") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached (the "Engagement Letter"). Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the Internal Revenue Service (IRS) or other tax or revenue authorities.

2. **Payment of Invoices.** Client agrees to pay properly submitted invoices within thirty (30) days of the invoice date, or such other due date as may be indicated in the Engagement Letter. KPMG shall have the right to halt or terminate entirely its services under the Engagement Letter until payment is received on past due invoices. All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Term.** Unless terminated sooner in accordance with its terms, the Engagement shall terminate on the completion of KPMG's services thereunder. In addition, either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination. In the event of such notification, Client agrees to pay KPMG for time charges at standard hourly rates and expenses incurred to the date of notification to the extent the amount so computed exceeds payments previously made by Client for the Engagement.

4. **Ownership.**

   (a) **KPMG Property.** KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques, models, templates, software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "KPMG Property"). KPMG retains all ownership rights in the KPMG Property. Client shall acquire no right or interest in such property, except for the license expressly granted in the next paragraph. In addition, KPMG shall be free to provide services of any kind to any other party as KPMG deems appropriate, and may use the KPMG Property to do so. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

   (b) **Ownership of Deliverables.** Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client, a royalty-free paid-up non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables.

5. **Limitation on Warranties.** THIS IS A SERVICES ENGAGEMENT. KPMG WARRANTS THAT IT WILL PERFORM SERVICES UNDER THE ENGAGEMENT LETTER IN GOOD FAITH, WITH QUALIFIED PERSONNEL, IN A COMPETENT AND WORKMANLIKE MANNER. KPMG DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6. **Limitation on Damages.** Except for each party's indemnification obligations as set forth below, neither Client nor KPMG shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to KPMG for services rendered by KPMG under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort or otherwise.

7. **Infringement.**

   (a) KPMG hereby agrees to indemnify, hold harmless and defend Client from and against all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by any third party

Page 1 of 4

Revised 11/1/03



**KPMG LLP**
**Standard Terms and Conditions**
**Tax Services**

against Client to the extent such Liabilities result from the infringement by the Deliverables of any third party's patents issued as of the date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification provision shall not apply to any infringement arising out of the following:

   (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than in accordance with Paragraph 8(a) below;

   (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or

   (iii) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, in any such suit to constitute infringement, KPMG may, within a reasonable time, at its option either:

   (i) secure for Client the right to continue the use of such infringing item; or

   (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing.

In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in (i) or (ii) above, Client shall return the Deliverable to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8  **Reliance on Advice and Disclosure.**

(a) Except as otherwise required by law, as permitted by the Engagement Letter, or as provided in Paragraph 8(b) below with respect to any proposed or completed transaction, Client acknowledges and agrees that any advice, recommendations, information or work product provided to Client by KPMG in connection with this Engagement is for the confidential use of Client, may not be relied upon by any third party and Client will not disclose or permit access to such advice, recommendations, information or work product to any third party or summarize or refer to such advice, recommendations, information or work product or to KPMG's Engagement without, in each case, KPMG's prior written consent.

(b) No provision in these terms or the Engagement Letter is or is intended to be construed as a condition of confidentiality under Internal Revenue Code (IRC) sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this Engagement that reduces or defers federal tax and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. If a state or other jurisdiction adopts provisions that are similar or analogous to those in IRC sections 6011, 6111, or 6112 or the regulations thereunder, the authorization to disclose in the preceding sentence also shall apply to any transaction within the scope of this Engagement that is subject to such provisions of that state or other jurisdiction.

9  **Indemnification.**

(a) Each party agrees to indemnify, hold harmless and defend the other party from and against any and all Liabilities for physical injury to, or illness or death of, any person or persons regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur to the extent such Liabilities result from the negligence or willful misconduct of the indemnifying party.

(b) In furtherance of the provisions of Paragraph 8(a) above, Client will indemnify, defend and hold harmless KPMG from and against any and all Liabilities suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG's advice, recommendations, information or work product as a result of Client's use or disclosure of such advice, recommendations, information or work product other than as permitted by Paragraph 8(b) above.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for

Page 2 of 4

Revised 11/1/03

CONFIDENTIAL



**KPMG LLP**
**Standard Terms and Conditions**
**Tax Services**

which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

10. **Cooperation; Use of Information**

   (a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide KPMG with timely access to and use of Client's personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional obligations of Client in connection with the Engagement. Client acknowledges that Client's failure to assign Client personnel having skills commensurate with their role with respect to this Engagement could adversely affect KPMG's ability to provide the services under the Engagement Letter.

   (b) KPMG will base its conclusions on the facts and assumptions that Client submits and will not independently verify this information. Inaccuracy or incompleteness of the information the Client provides could have a material effect on KPMG's conclusions. In rendering its advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and ERISA, as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of KPMG's advice. KPMG will not update its advice for subsequent changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, unless Client separately engages KPMG to do so in writing after such changes or modifications.

   (c) If the Engagement involves tax planning matters the potential benefits of which are no longer possible to achieve because of legislative, regulatory, or other administrative change or judicial decision, Client's sole remedy is the right to terminate the Engagement in accordance with Paragraph 3 above.

   (d) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions. Client agrees to use its best efforts to promptly inform KPMG of any transaction covered by this Engagement that is required to be disclosed as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. Treasury regulations under IRC section 6112 provide that KPMG must retain lists of investors in reportable and registerable transactions if we are a material advisor with respect to the transactions and states or other jurisdictions may adopt similar or analogous provisions. Therefore, if KPMG determines that Client has participated in a reportable or registerable transaction, KPMG may place Client's name and information on a list. This list may later be requested by the IRS or other tax authority and KPMG ultimately may be required to provide it, however, KPMG will advise Client if KPMG provides Client's information to the IRS or other tax authority.

   (e) Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority. Should such an authority seek disclosure from KPMG of written or oral communications relating to such advice, KPMG will discuss with Client opportunities for asserting the privilege. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards.

11. **Force Majeure.** Neither Client nor KPMG shall be liable for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

12. **Limitation on Actions.** No action, regardless of form, arising out of or relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the date of the last payment due to such party under the Engagement Letter.

Page 3 of 4

Revised 11/1/03

CONFIDENTIAL

11
KPMG_MS IRS 0002808



**KPMG LLP**
**Standard Terms and Conditions**
**Tax Services**

13. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

14. **Survival.** The provisions of Paragraphs 1, 2, 4, 6, 7, 8, 9, 10, 12, 16, 17, 18, and 20 hereof shall survive the expiration or termination of this engagement.

15. **Assignment.** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.

16. **Member Firms and Consent to Share Information.** To the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services, including any applicable tax advice, may be performed by the member firm of KPMG International practicing in such jurisdiction. Client consents to KPMG's disclosure to a member firm and such member firm's use of information, including tax return information, received from Client for the purpose of preparing, assisting in preparing, or obtaining or providing services in connection with preparing, any tax return of Client or rendering other tax or accounting services to Client.

17. **Severability.** In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

18. **Governing Law.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of laws provisions thereof.

19. **Miscellaneous**

    (a) Client should consult with legal counsel for the purpose of advising on non-tax legal aspects of matters on which KPMG provides tax advice and drafting any legal documents or agreements that may be required in connection therewith. KPMG will provide Client's legal counsel with tax-related advice that is deemed necessary by Client's legal counsel to draft such documents or agreements. To the extent services of legal counsel or other professional service providers are required, Client is responsible for engaging and paying such service providers.

    (b) KPMG may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this Engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Client.

    (c) For engagements performed in California or where the services provided by KPMG fall under the jurisdiction of California law, rule or regulation, Client acknowledges that certain of KPMG's personnel who have an ownership interest in the partnership and who may provide services in connection with this engagement may not be licensed as certified public accountants under the laws of any of the various states.

20. **Entire Agreement.** These terms, and the Engagement Letter including Exhibits, constitute the entire agreement between KPMG and Client with respect to this engagement and supersede all other oral and written representations, understandings or agreements relating to this Engagement.

CONFIDENTIAL



## Attachment B

### STANDARD TERMS AND CONDITIONS MODIFICATION/WAIVER FORM-TAX ENGAGEMENTS

*Revisions to Standard Terms and Conditions*
**Paragraph 2. Payment of Invoices:**

    Substitute 60 days for 30 days.

**Paragraph 3. Term:**

    i. The first sentence is modified to read as follows:

    Unless terminated sooner in accordance with *the Engagement Letter*, the Engagement shall terminate on the completion of KPMG's services thereunder.

    ii. The word "written" is removed from the second sentence.

    iii. The third sentence is modified to read as follows:

    In the event of such notification, Client agrees to pay KPMG for time charges at *the agreed* hourly rates and expenses, *as specified in the Microsoft-KPMG Tax Fee Arrangement in effect during the period of the Engagement*, incurred to the date of notification to the extent the amount so computed exceeds payments previously made by Client for the Engagement.

**Paragraph 9. Indemnification** – the first sentence of part (c) is modified to read as follows:

    The party entitled to indemnification (the "Indemnified Party") shall promptly notify, **in writing**, the party obligated to provide such indemnification (the "Indemnified Party") of any claim for which the Indemnified Party seeks indemnification.

**Paragraph 10. Cooperation; Use of Information** – the last sentence of part (d) is modified to read as follows:

    This list may later be requested by the IRS or other tax authority and KPMG ultimately may be required to provide it; however, KPMG **shall promptly, in writing, notify** Client if KPMG provides Client's information to the IRS or other tax authority.

**Paragraph 18. Governing law**

    "The State of *Washington*" replaces "the State of New York".

CONFIDENTIAL

KPMG_MS IRS 0002810



## Attachment B

**Paragraph 20. Entire Agreement** – the sentence is modified to read as follows:

These terms, and the Engagement Letter including Exhibits, constitute the entire agreement between KPMG and Client with respect to the engagement and supersede all other oral and written representations, understandings or agreements relating to the engagement.

2

CONFIDENTIAL

KPMG_MS IRS 0002811