UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>MICROSOFT CORPORATION, et al.,<br><br>Respondents. | CASE NO. C15-102RSM<br><br>ORDER FOR IN CAMERA REVIEW OF DOCUMENTS STILL IN DISPUTE |

## **I. INTRODUCTION**

This matter comes before the Court upon Respondent Microsoft Corporation's ("Microsoft") Brief Regarding Privileged Documents Still in Dispute. Dkt. #140. For the reasons discussed herein, the Court ORDERS Microsoft to submit the majority of the documents still in dispute to the Court for *in camera* review.

## **II. BACKGROUND**

The Court previously set forth the procedural and factual background to this action and incorporates it by reference herein. *See* Dkt. #107 at 2-5.

In summary, in December 2014 the government filed a petition with the Court requesting an order to enforce Microsoft's compliance with a designated summons served by the Internal Revenue Service ("IRS") on October 30, 2014. Dkt. #1 at 1. The designated summons was served as part of the IRS's examination of Microsoft's federal income tax liabilities for the taxable periods ending on June 30, 2004, June 30, 2005, and June 30, 2006. *Id*. ¶ 4. On November 17, 2014, the IRS also served KPMG LLP ("KPMG"), an accounting firm, with a third-party summons. *See* Case No. 2:14-mc-136-RSM, Dkt. #1 ¶¶ 7-8. During the tax years in question, Microsoft hired KPMG to assist in restructuring Microsoft's related foreign entity in Puerto Rico. *See* Dkts. #144 ¶ 10, #140 at 13, and #145 at 6-10. The government alleges that with KPMG's help, Microsoft designed and implemented a cost sharing arrangement with its newly structured Puerto Rican entity. *See* Dkt. #145 at 6-14. On November 19 and 20, 2014, the IRS served Microsoft with two additional, related summonses. *See* Case Nos. 2:14-mc-133-RSM, Dkt. #1, and 2:14-mc-143-RSM, Dkt. #1. These summonses are all related to the IRS's examination of cost sharing agreements Microsoft entered into with its Puerto Rican affiliate, and with its Asian affiliate. [1] *See* Dkt. #1 ¶ 10. The IRS is examining these cost sharing arrangements to determine the accuracy of Microsoft's federal income tax obligations for the tax years in question. *Id*. ¶¶ 21-22.

On November 20, 2015, the Court granted the government's petitions to enforce the IRS's summonses. Dkt. #107 at 17. Soon after, the parties stipulated that "notwithstanding the Court's denial of Microsoft's common defenses to enforcement of the document summonses, specific document production requests remain in dispute." Dkt. #110 at 2. Microsoft was thus "afforded an opportunity to brief specific objections tailored to specific document production

---

[1] The four petitions for enforcement of the designated summonses were consolidated on January 16, 2015. Dkt. #21

requests[.]" *Id*. Microsoft now objects to disclosing a number of documents responsive to the IRS's summonses. *See* Dkt. #140.

### III. DISCUSSION

Microsoft is withholding 174 documents from production. *Id*. at 7. Microsoft is withholding the majority of the documents in dispute based on the federally authorized tax practitioner privilege and/or the work production protection. *See* Dkt. #141, Exs. A-D. The attorney-client privilege is asserted for twelve documents. *Id*. ¶¶ 9-11. To support these assertions, Microsoft has produced four privilege logs. Dkt. #141, Exs. A-D. Each privilege log lists the documents withheld from production for each of the four summonses served by the IRS. *See id*. (privilege logs titled "Designated Summons Privilege Log," "KPMG Central Files Privilege Log," "KPMG Personal Files Privilege Log," and "Related Summonses 2 and 3 Privilege Log"). The government disputes the applicability of the privileges and protection asserted by Microsoft, and requests production of the documents withheld. *See* Dkt. #145. In the alternative, the government requests that the Court conduct an *in camera* review of the disputed documents to determine if the asserted privileges actually apply. *Id*. 16-17.

The Court addresses the propriety of the asserted privileges and the work product doctrine in turn.

**A. Federally Authorized Tax Practitioner Privilege[2]**

Section 7525 of Title 26 of the United States Code effectively extends the attorney-client privilege to "federal authorized tax practitioner[s]." A "federally authorized tax practitioner" is "any individual who is authorized under Federal law to practice before the Internal Revenue Service if such practice is subject to Federal regulation under section 330 of title 31, United

---

[2] Documents Bates stamped PMSTP0000027-28 and MSTP9007983-MSTP9007995 are considered separately, in section **III.C.** because these documents also assert the attorney-client privilege

States Code." 26 U.S.C. § 7525(a)(3)(A). Communications between a taxpayer and a "federally authorized tax practitioner," are protected "to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney." *Id*. § 7525(a)(1). This limited privilege does not extend to anything other than a lawyers' work. *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003) ("[T]he § 7525 privilege is no broader than that of the attorney-client privilege . . . ."); *United States v. Frederick*, 182 F.3d 496, 502 (7th Cir. 1999). This privilege is thus limited to the scope of the attorney-client privilege, and courts "look to the body of common law interpreting the attorney-client privilege to interpret the § 7525 privilege." *BDO Seidman*, 337 F.3d at 810; *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009) ("This privilege is no broader than the existing attorney-client privilege."). The tax practitioner privilege applies to communications made in confidence and "the confidences [must] constitute information that is not intended to be disclosed by the [tax practitioner]." *BDO Seidman*, 337 F.3d at 811. Accordingly, "the success of a claim of [the tax practitioner] privilege depends on whether the advice given [is] general accounting advice or legal advice." *Valero*, 569 F.3d at 630. An exception to the tax practitioner privilege does not protect written communications connected to the promotion of participation in tax shelters. 26 U.S.C. § 7525(b).

Microsoft contends the tax practitioner privilege applies to 164 documents withheld because each of these documents purportedly reflects a confidential communication between Microsoft and its tax advisors for the purpose of seeking tax advice. Dkt. #140 at 15-21. To support this assertion, Microsoft argues it has made a *prima facie* showing of the propriety of this privilege through its submission of four privilege logs. *Id*. at 18. Microsoft argues these privilege logs comport with the requirements found to satisfy a *prima facie* showing of the

attorney-client privilege in the Ninth Circuit. *Id*. at 18 (citing and quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)). Microsoft further contends the documents asserting this privilege all "reflect core tax advice," not business or non-legal advice. Dkt. #140 at 19-20.

The government disagrees with Microsoft's assertion of the tax-practitioner privilege, and argues that Microsoft's privilege logs "are deficient in several respects" and fail to satisfy Microsoft's *prima facie* burden. Dkt. #145 at 15-16. However, even if this burden is satisfied, the government argues Microsoft cannot establish the tax-practitioner privilege applies because the accountants hired by Microsoft provided business instead of tax advice. To support this argument, the government cites to documents produced in response to its summonses which appear to indicate that at least one accounting firm, KPMG, was not providing Microsoft with legal advice. *Id*. at 17-19 (quoting Dkt. #146, Exs. 13 and 27). However, if the Court finds the tax-practitioner privilege applies to the 164 documents withheld, the government argues the tax shelter exception to the tax-practitioner privilege nonetheless warrants disclosure of the documents withheld. *Id*. at 19-20.

Microsoft has met its *prima facie* burden of establishing the applicability of the tax-practitioner privilege. In the Ninth Circuit, privilege logs may establish applicability of the attorney-client privilege, and thereby the tax-practitioner privilege, as long as the log identifies the following information:

> "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated."

*In re Grand Jury*, 974 F.2d at 1071 (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)). A privilege log with this information, accompanied by affidavits that speak to the

confidential nature of the documents withheld, can establish the withholding party's *prima facie* burden. *Id*. ("Whatever questions the Corporation's log might leave open with regard to whom the documents were shown or were intended to be shown are answered to our satisfaction by the affidavits of the attorneys responsible for preparing the documents."). Here, the privilege log entries asserting the tax-practitioner privilege include information from each of these categories. *See* Dkt. #141, Exs. A-D. In addition to its privilege logs, Microsoft has also submitted declarations from William J. Sample, Microsoft's Vice President Tax, Michael Boyle, Microsoft's former Corporate Vice President of Finance and Tax Counsel, and Brett Weaver, a partner at KPMG. *See* Dkts. #142-144. These declarations assert KPMG was hired to provide privileged tax-practitioner advice, and Mr. Sample and Mr. Boyle each declare the tax practitioner privilege was not waived, the documents in dispute were stored securely, and the documents were not "disseminated beyond those in the Tax Department or counsel with a need to know." Dkts. #142 ¶ 3 and #143 ¶ 27. Microsoft's privilege logs, accompanied with the submitted declarations, satisfy Microsoft's *prima facie* burden of demonstrating the tax-practitioner privilege applies.

Notwithstanding Microsoft's satisfied burden, the government has met the minimal burden necessary to establish that *in camera* inspection of documents asserting the tax-practitioner privilege is warranted. District courts may conduct an *in camera* review to determine whether an asserted privilege applies as long as the party seeking this review "show[s] a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury*, 974 F.2d at 1074-75. Although Microsoft contends KPMG was hired to provide tax advice, the government has submitted documents, produced to the government by Microsoft and KPMG,

which indicate KPMG may have been involved with the provision of business, not tax, advice. *See, e.g.*, Dkt. #146, Exs. 8 (slideshow, prepared by KPMG, proposing alternate structures for Microsoft's foreign entities) and 13 (KPMG engagement letter outlining the different phases, including a design and implementation phase, of KPMG's work with Microsoft). That KPMG may have been engaged in something other than lawyers' work is highlighted by KPMG's own engagement letters to Microsoft. *See* Dkt. #146, Exs. 13 and 25. In one letter, dated August 31, 2004, KPMG urges Microsoft to "consult with legal counsel to review the design of the IHCo strategy to determine any potential legal issues that may arise in connection with its implementation." *Id*. Ex. 13 at 3. In another, dated April 29, 2005, KPMG outlines its role in helping Microsoft implement the cost share agreement KPMG helped design in the first phase of KPMG's engagement. Dkt. #136, Ex. 25 at 2. Communications made primarily to assist in implementing a business transaction are not protected by the tax practitioner privilege. *See United States v. ChevronTexaco*, 241 F. Supp. 2d 1065, 1076-78 (finding that attorney-client privilege does not apply to communications reflecting information used to implement a transaction and not legal advice). Here, KPMG's letter stresses that its role "does not encompass any legal services a KPMG member firm may be authorized to provide." Dkt. #136, Ex. 25 at 2.

The exhibits submitted by the government, when compared to the timing of some of the documents withheld by Microsoft, *see* Dkt. #141, Exs. A-C, call into question the applicability of the tax-practitioner privilege. The Court thus agrees that *in camera* review of the documents asserting the tax-practitioner privilege is warranted.[3]

---

[3] Although the task of reviewing 164 documents is not light, given the importance of assuring the accurate assessment of federal income tax liabilities by the IRS, the Court will exercise its discretion to conduct an *in camera* review of the documents asserting the tax practitioner privilege. Additionally, because the Court will conduct an *in camera* review of these documents, the Court will not consider the government's tax shelter exception argument at this point in time.

## B. Work Product Doctrine[4]

Microsoft also asserts the work product doctrine protects disclosure of 170 documents sought by the government. The work product doctrine protects documents and tangible things from discovery if they are prepared in anticipation of litigation by a party, or a party's representative. Fed. R. Civ. P. 26(b)(3). Assertions of work product protection are governed by federal law. *Schreib v. American Family Mut. Ins. Co.*, 304 F.R.D. 282, 285 (W.D. Wash. 2014); *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007). The main purpose of the work product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989)).

To determine if the documents sought by the government are protected from disclosure under the work product doctrine, the Court must first determine whether the documents were created or obtained "in anticipation of litigation or for trial." *See United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). However, even if Microsoft anticipated litigation, for documents that serve a dual purpose (documents not created exclusively for litigation – such as documents also created in the ordinary course of business), Microsoft must demonstrate these documents were created "because of" litigation. *E.g.*, *id*. at 567-68.

Microsoft advances three main arguments to demonstrate the documents it seeks to withhold were created in anticipation of litigation. Dkt. #140 at 22-25. Microsoft first contends it had "good reason" to anticipate litigation over its cost sharing arrangements given the IRS's aggressive stance on transfer pricing issues. *Id*. at 24. Aside from noting that audits and litigation about transfer pricing issues were "prevalent" when KPMG was hired in 2004,

---

[4] Documents Bates stamped PMSTP0000027-28, PMSTP0000015-16, MSTP9010845-924, MSTP9001268-80, MSTP9000904-916, MSTP9013961-3963, MSTP9014965-5024, and MSTP9007983-MSTP9007995 are considered separately, in section **III.C.,** because these documents also assert the attorney-client privilege.

Microsoft also explains that its own relationship with the IRS prompted it to anticipate litigation. *Id*. Microsoft cites to its continual state of audit and its "long history of disputes with the IRS" as proof it anticipated litigation over the cost share agreements now being investigated by the IRS. *Id*. Finally, given the size of these transactions, along with the complexity of Section 482 of the Internal Revenue Code, Microsoft contends it anticipated its cost share arrangements would "inevitably draw intense scrutiny by the IRS and result in an adversarial dispute and litigation with the IRS." *Id*. at 25.

The government disagrees with Microsoft's assertion of the work product protection, and instead argues that allowing Microsoft to make these "sweeping claims" would in effect "shield[] all business planning documents from disclosure." Dkt. #145 at 21. The government argues that even if Microsoft anticipated litigation, the documents now withheld cannot be said to have been created "because of" anticipated litigation. *Id*. To support these arguments, the government highlights deficiencies with Microsoft's privilege logs. *Id*. at 24-26. Regarding Microsoft's Designated Summons Privilege Log, the government points out that the document descriptions do not allow it to determine whether the emails listed were created in anticipation of litigation. *Id*.; Dkt. #141, Ex. A. With respect to the privilege logs listing documents responsive to KPMG's summonses, the government contends these documents may contain non-legal accounting and business advice since KPMG was retained in part to design and implement Microsoft's cost sharing arrangements. Dkts. #145 at 25 and #141, Exs. B and C. Finally, the government argues that the documents in Microsoft's Related Summonses 2 and 3 privilege log list dual purpose documents not created "because of" litigation. Dkt. #145 at 25; *see* Dkt. #141, Ex. D.

1    Microsoft has demonstrated that it reasonably anticipated litigation when it consulted
2    with accountants regarding its transfer pricing agreements. Microsoft's prior tax disputes with
3    the IRS, the size of Microsoft's cost sharing agreements, the complexity of the law that applies to
4    cost sharing agreements, along with the IRS's treatment of transfer pricing issues all support the
5    Court's conclusion. However the government has raised a sufficient factual basis to question
6    whether the documents on Microsoft's four privilege logs are dual-purpose documents not
7    created "because of" anticipated litigation.

8    If the documents asserting the work product protection served both a litigation and a
9    business purpose, the Court must determine whether these documents "appear to reflect or [are]
10   borne out of reasoning about strategies or analyses for litigation," in which case the work
11   production protection would apply. *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1084. On the
12   other hand, if the documents "appear only to reflect the logistics or mechanics of implementing
13   business concepts," then the work product doctrine will most likely not apply as these documents
14   "would have been created in essentially similar form irrespective of the litigation." *Id*. In
15   *camera* review of the documents asserting the work product protection will allow the Court to
16   make this determination.

17   **C. Attorney Client Privilege**

18   Finally, Microsoft asserts the attorney-client privilege with respect to twelve documents.[5]
19   *See* Dkt. #141, Exs. A and D. The attorney-client privilege is intended to prevent disclosure of
20   confidential communications "made by a client to an attorney in order to obtain legal advice." *In
21   re Grand Jury*, 974 F.2d at 1070 (quoting *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493,
22   496 (9th Cir. 1986)). The privilege also protects an attorney's advice in response to a client's

---
[5] Documents Bates stamped PMSTP0000027-28, PMSTP0000015-16, MSTP9011488-90, MSTP9010845-924, MSTP9001268-80, MSTP9000904-916, MSTP9009093-9106, MSTP9009065-9078, MSTP9009051-9064, MSTP9013961-3963, MSTP9014965-5024, and MSTP9007983 all assert the attorney-client privilege.

confidential disclosures. *Id*. However, if a client seeks non-legal advice, for instance business advice, the privilege does not apply. *Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Additionally, the voluntary disclosure of a privileged communication results in the waiver of the privilege for any other communications concerning the same subject. *Id*. The party asserting the attorney-client privilege must "make a *prima facie* showing that the privilege protects the information the party intends to withhold." *In re Grand Jury*, 974 F.2d at 1071. This *prima facie* showing can be made through a privilege log and accompanying declarations attesting to the confidential nature of the documents withheld. *Id*.

Microsoft has made a *prima facie* showing that these twelve documents are protected by the attorney-client privilege. Microsoft lists the twelve documents for which the attorney client privilege is asserted on two privilege logs. *See* Dkt. #141, Exs. A and D. Two of the emails claiming the privilege are listed on Microsoft's Designated Summons Privilege Log; the entries for those two emails list the date, custodian, author, recipients, and a short description of the contents of the email. *Id*. Ex. A. These emails were sent in May 2015 and February 2016. *Id*. The remaining ten documents claiming attorney-client privilege are listed on Microsoft's Related Summonses 2 and 3 Privilege Log. *Id.* Ex. B. All ten documents are emails, four only claim the attorney-client privilege, and the remaining six also claim the tax-practitioner privilege and/or the work product protection. *Id*. For each email, Microsoft lists dates, the name of the email's author, the recipients of the email, and a short description of the asserted privilege. *Id*. Besides these privilege logs, the declarations of Mr. Sample and Mr. Boyle also indicate these documents were intended to remain confidential, they were stored securely, and the attorney-client privilege was not waived. *See* Dkts. #142 ¶ 3 and #143 ¶ 27. Considering the information provided by these twelve privilege log entries, along with Mr. Sample's and Mr. Boyle's declarations, the

Court finds Microsoft has made a *prima facie* showing that these twelve documents are protected by the attorney-client privilege.

The government's challenges to the contrary are not persuasive. The government claims Microsoft has not met is *prima facie* burden because Microsoft's privilege log descriptions are too vague, there are instances where no attorney is identified on the privilege log, and several documents are email chains. Dkt. #145 at 15-16. Although some of these privilege log entries include no attorney as a recipient or author, all twelve identify the person whose legal advice is being discussed, as well as the subject matter of that legal advice. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077 ("The privilege might protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by such counsel."); *see* Dkt. #141 at Exs. A at 8 and D at 22, 23, 25-27. However, the Court agrees that emails in an email chain that do not reflect legal advice are not protected by the privilege and must be disclosed by Microsoft. *Id*. at 1077-78 (ordering party to produce portions of email reflecting "purely business matters").

While Microsoft has met its *prima facie* burden of establishing applicability of the attorney-client privilege, the government has "show[n] a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged," with respect to eight entries. *In re Grand Jury*, 974 F.2d at 1074-75. The two emails claiming attorney-client privilege in the Designated Summons Privilege Log, and six emails claiming this privilege in the Related Summonses 2 and 3 Log, all reflect either internal communications between Microsoft's in-house attorneys, internal communications between Microsoft's in-house attorneys and nonlegal employees, or internal

communications between non-legal employees.[6]  *See* Dkt. #141, Exs. A and D.  Whether the attorney-client privilege applies to these emails depends on the role Microsoft's attorneys played in these communications.  This is the case given that "unlike outside counsel, in-house attorneys can serve multiple functions within the corporation."  *ChevronTexaco*, 241 F. Supp. 2d at 1076.

Here, the eight in-house communications all indicate that Microsoft's in-house attorneys rendered legal advice about a "transaction structure" or a "restructuring."  *See* Dkt. #141, Exs. A and D.  While the Court acknowledges that advice pertaining to the tax consequences of a transaction "is rooted virtually entirely in the law," this must be balanced with the knowledge that in-house attorneys often serve more than just a legal role.  *ChevronTexaco*, 241 F. Supp. 2d at 1076.  Consequently, the Court "cannot simply assume that every communication involving in-house counsel that related to this transaction was made primarily for the purpose of securing [or providing] legal advice."  *Id*.  Because the Court cannot determine the extent to which Microsoft's counsel acted in a legal, as opposed to a business, capacity in advising Microsoft on its transaction structures, the Court finds that *in camera* review of eight internal communications withheld based on the attorney-client privilege is warranted.

However, regarding the emails Bates Stamped MSTP9010845-MSTP9010924, MSTP9009093-MSTP9009106, MSTP9009065-MSTP9009078, and MSTP9009051-MSTP9009064, which reflect legal advice from outside law firms, the government has not "show[n] a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged."  *In re Grand Jury*, 974 F.2d at 1074-75.  Consequently the Court will not conduct an *in camera* review of those emails, and Microsoft need not disclose them to the government.

---

[6] *See* Documents Bates stamped PMSTP0000027-28, PMSTP0000015-16, MSTP9011488-90, MSTP9001268-80, MSTP9000904-916, MSTP9013961-3963, MSTP9014965-5024, and MSTP9007983-MSTP9007995.

## IV. CONCLUSION

The Court, having reviewed Microsoft's Brief (Dkt. #140), the government's Response (Dkt. #145), Microsoft's Reply (Dkt. #177, Ex. 1), the declarations and exhibits attached to each, and the remainder of the record, hereby finds and ORDERS[7]:

(1) Microsoft is ORDERED to produce the documents listed in Privilege Logs A, B, C, and D, except for Documents Bates Stamped MSTP9010845-MSTP9010924, MSTP9009093-MSTP9009106, MSTP9009065-MSTP9009078, and MSTP9009051-MSTP9009064, to the Court within **ten (10) days** of the filing of this Order;

(2) To the extent the email chains in Documents Bates Stamped MSTP9010845-MSTP9010924, MSTP9009093-MSTP9009106, MSTP9009065-MSTP9009078, and MSTP9009051-MSTP9009064, do not reflect legal advice, Microsoft is ordered to produce those emails to the government; and

(3) The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.

DATED this 5th day of May 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that Microsoft does not object to an *in camera* review of the disputed documents. Dkt. #177, Ex. 1 at 6. However, Microsoft requests an opportunity to provide the Court additional evidence and argument in support of the privileges and protection it asserts. *Id*. At this point in time, the Court declines to allow additional argument. If the Court determines it does not have enough information to evaluate a claim of privilege, it will decide at that time whether to conduct an *ex parte* hearing or propound written questions, filed under seal, to Microsoft. *See Valero*, 569 F.3d at 631 (finding district court did not abuse its discretion in denying company opportunity to bolster its privilege claims where documents themselves allowed court to determine propriety of privilege asserted).